1          IN THE UNITED STATES DISTRICT COURT

2             EASTERN DISTRICT OF ARKANSAS

3                   CENTRAL DIVISION

4

5  UNITED STATES OF AMERICA,
                                    No. 4:17-CR-00293-BSM-27
6                    Plaintiff,

7      v.                          November 12, 2020

8  JEFFREY KNOX,
                                   Little Rock, Arkansas
9                    Defendant.

10
                **TRANSCRIPT OF CHANGE OF PLEA**
11          BEFORE THE HONORABLE BRIAN S. MILLER,
                 UNITED STATES DISTRICT JUDGE
12

13  **ALL APPEARANCES REMOTELY VIA SKYPE:**

14      HONORABLE BRIAN S. MILLER

15      DEFENDANT JEFFREY KNOX

16  On Behalf of the Government:

17      MARIANNE SHELVEY, Assistant Deputy Attorney General
            U. S. Department of Justice
18          1301 New York Avenue, N.W., Suite 700
            Washington, DC 20005
19

20  On Behalf of the Defendant:

21      NICKI NICOLO, Attorney at Law
            Law Office of Nicki Nicolo
22          424 W 4th Street, Suite A
            North Little Rock, Arkansas 72114
23

24      Proceedings reported by machine stenography and displayed
    in realtime; transcript prepared utilizing computer-aided
25  transcription.

1      (Proceedings commenced with everyone remotely via Skype.)

2           THE COURT:  Let's get started.

3           Mr. Knox, you have the phone in your right hand.  But

4  would you put it in your left hand and raise your right hand so

5  I can swear you in.

6           Do you swear to tell the truth, the whole truth, and

7  nothing but the truth so help you God or under penalty of

8  perjury?

9           THE DEFENDANT:  Yes, sir.

10           THE COURT:  All right.  You can put your hand down.

11  Now, Mr. -- you can put your hand down, Mr. Knox.

12           Mr. Knox, we are doing this remotely, because of

13  COVID-19.  If you -- if at any point during the course of this

14  hearing you don't hear one of us or if I ask somebody to speak

15  and you don't hear anybody talking, let me know, and I would

16  also say that to the lawyers, so all of us can hear what the

17  other one is saying.

18           Mr. Knox, this is your plea hearing.  It's my

19  understanding you want to enter a plea of guilty --

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  -- to the second superseding indictment.

22  First, I want to say, as you can tell, we are all in separate

23  locations.  We are not all together.  And I want to make sure

24  that you consent to doing this plea remotely.

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  And is it your best interest to go
2    on and enter your plea and find out what's going to happen to
3    you, to get that ball rolling?
4          THE DEFENDANT:  Could you repeat that, sir?
5          THE COURT:  Okay.  I was just asking do you believe
6    it's in your best interest to --
7          THE DEFENDANT:  Yes, sir.
8          THE COURT:  -- have this hearing today so that you
9    can find out at some point what's going to happen?
10          THE DEFENDANT:  Yes, sir.
11          THE COURT:  All right.  And, Ms. Nicolo, do you have
12    any objection to your client appearing by video -- and all of
13    us appearing by video for this hearing?
14          MS. NICOLO:  No, Your Honor, I don't.  And I filed
15    his consent in writing on the record.
16          THE COURT:  Okay.  And so I find it's in the best
17    interest -- or the public interest is served by us having this
18    hearing today.
19          Mr. Knox, it's my understanding that you want to
20    withdraw your previous plea of not guilty and enter a plea of
21    guilty to Counts 1 and 10 of the second superseding indictment
22    of September 3, 2019; is that true?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  Now, I'm going to read parts of Counts 1
25    and 10.  I'm not going to read the whole counts because they're

1   very long.

2          Ms. Nicolo, do you have your second superseding

3   indictment in front of you?

4          MS. NICOLO:  Oh, I don't know if I actually have the

5   second superseding indictment in front of me.  You can go

6   ahead -- do you want to read it?  Yeah, I know.

7          THE COURT:  I was going to read parts of it.  I was

8   only going to read those portions that specifically refer to

9   Mr. Knox.  And I will tell you what paragraphs I am reading as

10  I read those.  Okay?

11         And, Ms. Shelvey, same thing for you.  I'm only going

12  to read those sections that specifically refer to Mr. Knox.  So

13  if either one of you wants to add something, of course, you

14  can.

15         Let me ask you this, Ms. Nicolo:  Would it be helpful

16  if I had one of my clerks e-mail that second superseding

17  indictment to you so you have it sitting in front of you?

18         MS. NICOLO:  It doesn't -- I can walk over to the

19  rest of his file and get it.

20         THE COURT:  Okay.  So you have it.  Okay.

21         MS. NICOLO:  Yes.

22         THE COURT:  Just making sure.

23         All right.  We're going to start, Mr. Knox, with

24  Page 12, Paragraph 21.  And this paragraph states that,

25  beginning in or around 2014 and continuing to on or about the

date of the second superseding indictment, in the Eastern

District of Arkansas and elsewhere, Marcus Millsap, Wesley

Gullet, Jeffrey Knox, James Oliver, Timothy Ferguson, Kevin

Long, April Howell, Shannon Ferguson, and Paula Enos,

collectively the defendants, and other persons known and

unknown to the grand jury, each being a person employed by and

associated with the New Aryan Empire criminal enterprise

described above, in the activities of which affect interstate

or foreign commerce, did knowingly and intentionally conspire

and agree together and with each other to violate Title 18

Section 1962(c), that is, to conduct and participate directly

and indirectly in the conduct of the affairs of the enterprise

through a pattern of racketeering activity.

And then it goes on to list a number of things.  And,

A, it has murder; and, Paragraph B, kidnapping; C, tampering

with a witness and a victim or informant; and, D, retaliate.

Then let's skip over to Page 14, and it gets into overt

acts, and those are the acts that it says you committed.  And

let's go to Paragraph 15 -- I mean, Page 15, Paragraph 32.  And

it states in this paragraph that, on the date -- "On a date

unknown but beginning no earlier than in or around 2015 and

ending no later than January 4, 2016, Gullet" and Knox -- no.

"Gullet offered Knox a thousand dollars and prescription pills

to assist Gullet in the murder of Bruce Wayne Hurley."

And then in Paragraph 34 it states:  "Between in or

1   around August 2015 and January 4, 2016, Gullet asked Knox to

2   introduce Gullet to Bruce Wayne Hurley in order for Gullet to

3   kill Hurley in retaliation for Hurley providing information to

4   law enforcement relating to Millsap's involvement in the sale

5   and distribution of methamphetamine."

6           Then in Paragraph 39 it states:  "On January the 4th

7   of 2016, Gullet and Knox attempted to kill Bruce Wayne Hurley

8   by pointing a loaded firearm at Hurley and pulling the

9   trigger."  And it says, "The gun misfired."

10          And then over on Paragraph 51, it states:  "From in

11  or around August 2016 through in or around October 2016, Gullet

12  and Knox, along with Kathrine Ross and Christopher Helms,

13  possessed with intent to distribute approximately 1,360 grams

14  of a mixture and substance containing a detectable amount of

15  methamphetamine."

16          Then in Paragraph 55, it states that "During in or

17  around November 2016, Knox, Kathrine Ross, and Britanny Connor

18  possessed with intent to distribute approximately 907 grams of

19  a mixture or substance containing a detectable amount of

20  methamphetamine."

21          Then -- hold on just one second.  Then it goes over

22  to Page 21, sentencing factors.  In Paragraph 70 it says,

23  "Between in or around 2014 and continuing through on or about

24  the date of this second superseding indictment, in the Eastern

25  District of Arkansas and elsewhere, Millsap, Gullet, Knox,

1  Oliver, Ferguson, Long, Howell, Ferguson, and Enos conspired
2  and agreed with each other and others known and unknown to the
3  grand jury to knowingly and intentionally distribute and
4  possess with intent to distribute 500 grams or more of a
5  mixture and substance containing a detectable amount of
6  methamphetamine and 50 grams or more of methamphetamine
7  actual."  And that's Count 1.
8        Count 10 states that "Beginning in or around 2014 and
9  continuing through the date of this second superseding
10 indictment, the defendants" -- and it lists all the defendants
11 in this case, including Jeffrey Knox -- "voluntarily and
12 intentionally conspired with each other, Daniel Adame, Britanny
13 Connor, James George, and with others known and unknown to the
14 grand jury to knowingly and intentionally distribute and
15 possess with intent to distribute methamphetamine actual and a
16 mixture and substance containing a detectable amount of
17 methamphetamine."
18       And it states that with regard to -- hold on.  With
19 regard to Knox -- I'm missing this now.  I thought I had it.
20 Hold on.  Give me just one second.  Yeah, with regard to
21 Jeffrey Knox, the amount of methamphetamine involved in the
22 conspiracy attributable to him as a result of his own conduct
23 and the conduct of other co-conspirators reasonably foreseeable
24 to him, is 500 grams or more of a mixture and substance
25 containing a detectable amount of methamphetamine.

1          And if I'm not mistaken, Ms. Shelvey, those are
2   all -- and, Ms. Nicolo, those are all the allegations in
3   paragraphs -- I mean, in Counts 1 and 10 regarding Mr. Knox.
4          Have I missed anything?
5          MS. SHELVEY:  Your Honor, when you were reading the
6   racketeering activity, under Section 5 for the racketeering
7   conspiracy, you enumerated all of the federal charges, murder,
8   kidnapping, et cetera, but we would also add that the narcotics
9   offenses 846, 841(a)(1) and (b)(1)(A) are also included as part
10  of that activity.
11         THE COURT:  Okay.  And, Ms. Nicolo, did you
12  understand that to be the case?
13         MS. NICOLO:  That is correct, Your Honor.
14         THE COURT:  Okay.  Now, Mr. Knox, I am sure
15  Ms. Nicolo -- and I'll tell you.  I had Ms. Nicolo in trial a
16  few months ago, and she won.  And so I know that Ms. Nicolo is
17  very thorough, and that she --
18         THE DEFENDANT:  Yes.
19         THE COURT:  -- and that she went over all of this
20  with you, and that she's worked very hard for you.
21         But have you had a chance to go over this -- I just
22  want to make a record.  Have you had a chance to go over all of
23  this with her?
24         THE DEFENDANT:  Yes, sir.  Yes, we have.
25         THE COURT:  And did you understand what I just read

1   to you in Count 1 -- Counts 1 and 10 that those were the

2   allegations against you?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  And those are the allegations that you

5   are appearing to enter pleas of guilty to; is that true?

6                THE DEFENDANT:  Yes, sir.

7                THE COURT:  Okay.  Now, Mr. Knox, I'm going to go

8   over all of your rights with you.  Like I said, I know that

9   Ms. Nicolo has gone over this with you, but I have to go back

10   over it with you again just to make sure we have a record that

11   you understand what your rights are.

12                Let me start by saying how old are you?

13                THE DEFENDANT:  45.

14                THE COURT:  And I'm just going to get a little

15   background information from you first.  How much education do

16   you have?

17                THE DEFENDANT:  I have a GED now.

18                THE COURT:  Have you had any drugs or alcohol in the

19   last 24 hours or medication in the last 24 hours that would

20   make it difficult --

21                THE DEFENDANT:  No, sir.

22                THE COURT:  -- for you to understand what we're

23   doing?

24                THE DEFENDANT:  No, sir.

25                THE COURT:  Okay.  And do you fully understand why

1   you're appearing in court today?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  And you're being represented by

4   Ms. Nicolo.  I think I asked you this earlier, but I'll ask you

5   again.  Are you satisfied with the legal representation she's

6   given you so far?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Okay.  And, Ms. Nicolo, have you had a

9   chance to communicate thoroughly with Mr. Knox?

10           MS. NICOLO:  Yes, I have, Your Honor.  I've been to

11   the jail many times recently.

12           THE COURT:  Is there anything about Mr. Knox that

13   would lead you to believe he is not competent to go forward

14   with this plea?

15           MS. NICOLO:  No, Your Honor.

16           THE COURT:  All right.  I find the defendant,

17   Mr. Knox, is competent to go forward with the plea.

18           Now, we've already gone over the charges in Counts 1

19   and 2 [sic] against you, Mr. Knox.  Now, I'm going to go over

20   your rights with you.

21           You understand that you are not required to enter a

22   plea of guilty, don't you?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Okay.  And you understand that you have a

25   right to a jury trial.  And if you were --

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  -- if you were to choose to go to trial,

3    you would have a right to be represented by a lawyer.  And if

4    you could not afford one, we would appoint one to represent

5    you.

6          You would enter the courtroom with the presumption of

7    innocence, which means you don't have to prove or disprove

8    anything at trial.  The government has to prove the case

9    against you.  And they would have to prove it beyond a

10   reasonable doubt.

11         Now, in a case like this, you would have the right to

12   be free from self-incrimination, which means you have the right

13   not to testify.  You would have a right not to call any

14   witnesses at all if you don't want to, because the government

15   has to prove the case against you.

16         Now, Ms. Shelvey, who is appearing on behalf of the

17   Department of Justice, to prove her case against you, would

18   come in and put on testimony of witnesses.  The types of

19   witnesses we would probably hear from are the victim involved

20   in the case.  We would probably hear from law enforcement who

21   investigated the case.  We would probably hear from people who

22   bought or sold to the conspiracy.  We have a number of

23   defendants in this case, many of whom have already entered

24   pleas of guilty.  What typically happens is a lot of times

25   people enter pleas of guilty and then come into court and

1   testify against the other people who were involved.  We would

2   probably also hear from law enforcement, like I said.  We would

3   probably also hear from an expert who would explain to us what

4   methamphetamine is and, you know, how it affects the body and

5   the weight and value of the methamphetamine that you guys were

6   dealing with.  That's the type of -- those are the types of

7   witnesses we would hear from.

8           You would have a right to confront those witnesses

9   against you, and the way you would do that is Ms. Nicolo would

10  cross-examine them to make sure that the testimony they are

11  giving is truthful and accurate.

12          Also, the government would probably come in and

13  introduce physical evidence.  So if the government had photos

14  of the various crime scenes, if the government had wiretaps,

15  which I understand there were quite a few wiretaps in this

16  case -- so there could either be phone calls between the people

17  involved or text messages between the people involved.  The

18  government would probably come in here and put on that type of

19  evidence so that the jury could hear and see the communications

20  among the various people involved.  And you would have a right

21  to object to all of that evidence coming in.  And then I would

22  have to decide whether the evidence properly comes in.

23          Now, the government -- once the government puts on

24  its case, then you have a right to call a case yourself, to

25  call witnesses to testify for you, if there are witnesses out

1    there who can testify for you.

2           So just understand that, if you were to testify or if

3    you called witnesses to testify against you, then the

4    government would have the right to cross-examine you and your

5    witnesses.

6           Do you understand that?

7           THE DEFENDANT:  (Inaudible.)

8           THE DEFENDANT:  I can't hear you, Mr. Knox.

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Okay.  And so you don't have to call

11   witnesses, you don't have to testify, but if you choose to, you

12   can.  Just understand that the government would have a right to

13   cross-examine you and your witnesses.

14          Now, once all the evidence is in, the jury will go to

15   the jury room and determine if the government proved the case

16   against you beyond a reasonable doubt.  If the jury determines

17   that the government did prove the case against you beyond a

18   reasonable doubt, the jury will find you guilty.  If the jury

19   determines that the government did not prove the case against

20   you beyond a reasonable doubt, the jury will find you not

21   guilty.  If you are found not guilty, Mr. Knox, then the

22   government cannot bring this case against you again based on

23   these facts.

24          If the jury finds you guilty, then you have a right

25   to an appeal.  On appeal, your case would go to three judges

1   sitting in St. Louis.  And those judges would just read the
2   transcript of the trial and would read the brief of your lawyer
3   and the brief of the government, and what they would try to do
4   is determine if I made mistakes during the course of your trial
5   that caused you to lose.
6           If the Court of Appeals determines that I did not
7   make mistakes that caused you to lose, it will affirm the
8   jury's verdict.  If the Court of Appeals determines that I did
9   make mistakes during the course of your trial that caused you
10  to lose, it will reverse the jury's verdict and send the case
11  back down here, and we would try your case again.
12          Do you understand that?
13          THE DEFENDANT:  Yes, sir.
14          THE COURT:  Do you also understand that the jury has
15  to be unanimous.  So all 12 jurors have to agree on a verdict.
16  So if we had 11 jurors going one way and one juror going the
17  opposite way, we could not have a verdict.  I would have to
18  declare a mistrial, and then it would be up to the government
19  to decide whether it wants to bring your case back to trial.
20          Do you understand that?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  Now, Mr. Knox, I don't know your
23  background.  Do you have any felony convictions in your
24  background?
25          THE DEFENDANT:  Yes, sir.  I had --

```
 1              THE COURT:  Okay.
 2              THE DEFENDANT:  -- some DWs.
 3              THE COURT:  And I'm not asking you that to embarrass
 4    you in any way.  I was just asking you because, if you had not
 5    been found guilty of a felony in the past, you still would have
 6    the right to vote, the right to own a firearm, and all of those
 7    things.  But I won't go into all of that now because you
 8    already have a felony background, so there is no reason to get
 9    into it.
10              Now, do you understand that we don't have an
11    expungement law in the federal system?  So this will go on your
12    record, and I don't have a way of ever removing it from your
13    record.
14              THE DEFENDANT:  (Inaudible.)
15              THE COURT:  Is that a "Yes"?
16              THE DEFENDANT:  Yes, sir.  Yes, sir.
17              THE COURT:  I need you to speak audibly, Mr. Knox, --
18              THE DEFENDANT:  Yes, sir.
19              THE COURT:  -- because I have a court reporter here
20    who is typing up everything, and I need to make sure we pick up
21    your voice.
22              All right.  Have you had a chance to talk to
23    Ms. Nicolo about the possible sentence you could receive?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  So she's probably explained to you that
```

1    in the federal system we have our law that tells me what the
2    minimum and maximum sentences are I can give you.  I have to
3    give you a sentence within the range provided by the law.  In
4    addition to the law, we have sentencing guidelines to help me
5    determine what an appropriate sentence is.
6            I'm not required to give you a sentence within the
7    range provided by the guidelines as long as I give you a
8    sentence within the range provided by the law.
9            Do you understand that?
10           THE DEFENDANT:  Yes, sir.
11           THE COURT:  Now, I can't tell you, Mr. Knox, what
12   your guidelines range is going to be today.  What will happen
13   is probation will go out and perform an investigation and will
14   prepare a report.  And your guidelines range will be in that
15   report.  But I don't have that with me today so I can't tell
16   you what your guidelines range is.
17           What I can tell you is that, based on the law, the
18   penalty for Count 1, the RICO conspiracy charge, is from zero
19   to life in prison.  So I can give you anywhere from no time,
20   all the way up to life, a fine of not more than $250,000, not
21   more than five years of supervised release, and a $100 special
22   assessment.
23           Do you understand that?
24           THE DEFENDANT:  Yes, sir.
25           THE COURT:  And for Count 10, which is the narcotics

1  conspiracy, the sentencing range, based on the law, is from ten
2  years to life of imprisonment.  So I can -- I have to give you
3  at least ten years but up to life in prison, a fine of not more
4  than $10 million, not less than five years of supervised
5  release, which means as far as supervised release is concerned,
6  I can give you anywhere from five years to life, and a $100
7  special assessment.
8           Do you understand that?
9           THE DEFENDANT:  Yes, sir.
10          THE COURT:  Okay.  And do you understand that -- you
11 know, you have a mandatory minimum of ten years on the
12 narcotics conspiracy.  So if I give you -- well, I will have to
13 give you a prison sentence, but you understand we don't have
14 parole in the federal system.  And so you will not go -- like
15 in a state system, you know, on a ten-year sentence, you can go
16 before a parole board in 18 months.  But we don't have a parole
17 board in the federal system.  So you'll end up doing all of
18 your time minus any good time you earn.
19          Do you understand that?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  Also, if I were to give you a sentence
22 longer than what you expect, you can't withdraw your plea of
23 guilty.
24          Do you understand that?
25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  And I understand there is a plea

2    agreement, Ms. Nicolo; is that true?

3          MS. NICOLO:  That is correct, Your Honor.

4          THE COURT:  Ms. Shelvey, will you state for the

5    record what the terms of the plea agreement are?

6          MS. SHELVEY:  Yes, Your Honor.

7          The defendant will enter pleas of guilty to RICO

8    conspiracy as set forth in Count 1 of the second superseding

9    indictment and conspiracy to distribute and possess with intent

10   to distribute at least 500 or more grams of a mixture or

11   substance containing a detectable amount of methamphetamine as

12   set forth in Count 10 of the second superseding indictment.

13   The United States agrees to move for dismissal of the remaining

14   counts and/or underlying indictments against the defendant upon

15   the acceptance of the guilty plea.

16         The elements of the crime, as alleged in Count 1 and

17   Count 10 of the indictment, are as follows:  RICO conspiracy:

18   In order to convict the defendant of RICO conspiracy, the

19   government must prove the following elements:  One, the charged

20   enterprise was or would be established; two, the enterprise was

21   or would engage in or its activities affect or would affect

22   interstate or foreign commerce; three, the defendant knowingly

23   agreed that a conspirator would be associated with or employed

24   by the enterprise; four, the defendant knowingly agreed that a

25   conspirator would conduct or participate either directly or

1    indirectly in the conduct of the enterprise affairs through a
2    pattern of racketeering activity; and, five, the defendant
3    knowingly agreed the conspirator would commit at least two acts
4    of racketeering activity.
5            Count 10, narcotics conspiracy:  In order to convict
6    the defendant of narcotics conspiracy, the government must
7    prove the following elements:  Beginning in or around 2014 and
8    continuing through September 3rd of 2019, two or more persons
9    reached an agreement or came to an understanding to commit an
10   offense, namely possession with intent to distribute and/or
11   distribution of a mixture and substance containing a detectable
12   amount of methamphetamine; two, the defendant voluntarily and
13   intentionally joined in the agreement or understanding either
14   at the time it was first reached or at some time later while it
15   was still in effect; three, at the time the defendant joined in
16   the agreement or understanding, he knew the purpose of the
17   agreement or understanding; and, four, the agreement or
18   understanding involved 500 grams or more of a mixture or
19   substance containing a detectable amount of methamphetamine.
20           The defendant agrees that he is guilty of the offense
21   as charged and that each of these elements is true.
22           Waivers:  The defendant acknowledges that he has been
23   advised of and fully understands the nature of the charges to
24   which the plea is offered, the minimum mandatory penalty
25   provided by law, as well as the maximum penalty provided by

law.  The defendant further understands that, by entering into this agreement, he is waiving certain constitutional rights including the right to appeal or collaterally attack all nonjurisdictional issues, except that the defendant reserves the right to appeal claims of prosecutorial misconduct.  And the defendant reserves the right to appeal the sentence if the defendant makes a contemporaneous objection because the sentence imposed is above the guideline range established at sentencing.

He expressly acknowledges and agree the United States reserves its right to appeal the defendant's sentence under 18 USC 3742(b) and United States versus Booker; the right to collaterally attack the conviction and sentence in any post-conviction proceeding, except for the claims based on ineffective assistance of Counsel or prosecutorial misconduct; the right to have the sentence modified, pursuant to 18 USC 3582(c)(2); the right to appeal the Court's determination of the amount of restitution and subsequent revocation order; and the right to appeal the Court's determination of any forfeiture issues and any subsequent forfeiture orders if any.

The United States and the defendant stipulate to the following:  The parties agree that the base offense level for the conviction in Count 1 of the second superseding indictment is determined by the United States Sentencing Guidelines 2E1.1(a)(2).

1           The parties agree and stipulate that the relevant

2   racketeering activity attributed -- attributable to the

3   defendant include acts involving murder; tampering with a

4   witness, victim, or informant; retaliation against witness,

5   victim, or informant; and narcotics conspiracy.

6           The parties further stipulate the following

7   calculations apply.  First, as relating to the conspiracy or

8   solicitation to commit murder, three acts:  Between in or

9   around 2015, January 4th of 2016, in or around December of

10  2015, and in or around August of 2016.  For each act, the

11  parties agree and stipulate that the base offense level is a

12  33, pursuant to sentencing guidelines.  A four-level increase

13  is applied because the events involved the offer or receipt of

14  anything of pecuniary value for the undertaking of the murder.

15          As it relates to the January 4th attempted murder,

16  the parties agree and stipulate that the base offense level is

17  a 33 pursuant to the sentencing guidelines; a four-level

18  increase pursuant because the offense involved the offer or the

19  receipt of anything of pecuniary value for the undertaking of

20  the murder.

21          Narcotics conspiracy, the parties agree and stipulate

22  that the quantities of drugs involved in the offense and

23  reasonably foreseeable to the defendant, including relevant

24  conduct, is at least five kilograms but less than 15 kilograms

25  of a mixture and substance containing a detectable amount of

methamphetamine rendering a base offense level of 34 under the sentencing guidelines.  However, nothing in this plea agreement shall prevent the base offense level and/or the defendant's criminal history category from being calculated under the career offender if found to apply.

The parties agree and stipulate that the defendant will receive a two-level increase in the total offense level for Count 1 for obstructing or impeding the administration of justice pursuant to the sentencing guidelines.

The parties agree that the base offense level for the conviction under Count 10 of the second superseding indictment is determined by the quantity of the controlled substance involved in the offense.  The parties agree and stipulate the quantity of drugs involved in the offense and reasonably foreseeable to the defendant, including relevant conduct, is at least five kilograms but less than 15 kilograms of a mixture and substance containing a detectable amount of methamphetamine.  The base offense of that offense being 34 under the sentencing guidelines.

Again, nothing in this plea agreement shall prevent the base offense level for the defendant's criminal history category from being calculated under a career offender applicability if found to apply.

The parties agree that the total offense level could increase as a result of the application of grouping and a

1   multi-count load adjustment set forth in the sentencing

2   guidelines.  The parties agree and stipulate, pursuant to

3   sentencing guidelines, that the defendant is eligible for a

4   two-level reduction for acceptance of responsibility, unless

5   the defendant takes any action between the entry of this plea

6   and the imposition of sentence that is inconsistent with that

7   acceptance of responsibility.

8          The parties stipulate that no other enhancements or

9   reductions under the guidelines apply.  The parties understand

10  that the Court is not bound by these stipulations.  The

11  defendant further understands that, if the Court does not

12  accept this plea agreement, the defendant is not entitled to

13  withdraw guilty pleas or otherwise be released from defendant's

14  obligations under this agreement and addendum.

15         And, finally, the parties also state that, if

16  restitution is applicable, the amount will be litigated at

17  sentencing.  The remainder of the documents contain standard

18  terms and conditions of the plea agreement.

19         THE COURT:  Ms. Nicolo, do you have any other terms

20  you want to put on the record?

21         MS. NICOLO:  No, Your Honor.

22         THE COURT:  All right.  And, Mr. Knox, you know, that

23  was a lot to go through, but did you listen to all of the terms

24  that Ms. Shelvey put on the record?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Were those terms that she just went

2   through the terms that you understood were contained in your

3   plea agreement?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Okay.  Now, having discussed all of your

6   rights with you, do you still want to enter a plea of guilty?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Have any threats or promises been made to

9   you to get you to plead guilty?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Are you entering a plea of guilty

12   voluntarily?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  Now, Ms. Nicolo, you know, at this

15   point, typically, we would have the U. S. Attorney read all of

16   the facts that the U. S. Attorney would attempt to prove up at

17   trial.  And what we've been doing in this case, because, you

18   know, the statements are very long, is that the U. S. Attorney

19   had been submitting its statement of fact to defense counsel

20   and defense counsel reads it and goes over it with the client.

21   And many times we'll have the defendant and defense counsel

22   sign off on it.  I'll receive the document into the record and

23   file it under seal.

24          Do you have a copy of the statement of facts?

25   Ms. Nicolo, do you have a copy of the statement of facts?

 1              MS. SHELVEY:  Your Honor --

 2              THE COURT:  It looks like she's frozen.  Okay.  I'm

 3     sorry, can you hear us, Ms. Nicolo?

 4              MS. NICOLO:  Okay.  Okay.  It was jumbling up your

 5     words, Your Honor.

 6              THE COURT:  Okay.

 7              MS. NICOLO:  But I have a copy of the stipulated

 8     facts.  My client and I have both initialed each page of it so

 9     we do not have to read those out loud, Your Honor.

10              THE COURT:  Okay.  And that was what I was just

11     making sure, that we had a record of that.

12              MS. NICOLO:  Yes, sir.

13              THE COURT:  And so have you sent that over to my

14     courtroom deputy?

15              MS. NICOLO:  Yes.  The prosecution -- yes, the

16     prosecution did, Your Honor.

17              THE COURT:  Okay.  Great.  Great.  I mean, have you

18     sent over the signed version?

19              MS. NICOLO:  (Shook head up and down.)

20              THE COURT:  Okay.  I don't have that in front of me

21     here in Helena, so I was just making sure.

22              MS. NICOLO:  Yes.

23              THE COURT:  Mr. Knox, did you sign off on the

24     statement of facts?

25              THE DEFENDANT:  I did, sir.

1    THE COURT:  Were there any facts that were listed in
2  that statement that you have any objections to, that you want
3  to make a record on now?
4    THE DEFENDANT:  No, sir.
5    THE COURT:  Okay.  All right.
6    THE DEFENDANT:  No, sir.
7    THE COURT:  Is the statement of facts accurate?
8    THE DEFENDANT:  Sir?
9    THE COURT:  Mr. Knox, is the statement of facts that
10 you were given accurate, that you signed off on?
11   THE DEFENDANT:  Yes, sir, yes.
12   THE COURT:  Okay.  Do you understand the nature of
13 the charge against you and the maximum penalties you face?
14   THE DEFENDANT:  Yes, sir.
15   THE COURT:  And how do you plead to Count 1 of the
16 superseding information or the second superseding information
17 of September 3, 2019?
18   THE DEFENDANT:  Guilty.
19   MS. SHELVEY:  Your Honor, the second superseding
20 indictment.
21   THE COURT:  Ah, okay.  Thank you, Ms. Shelvey.
22   Let me restate that, Mr. Knox, just so we're clear.
23 How do you plead to Count 1 of the second superseding
24 indictment of September 3, 2019?
25   THE DEFENDANT:  Guilty.

1          THE COURT:  And how do you plead to Count 10 of the
2     second superseding indictment of September 3, 2019?
3          THE DEFENDANT:  Guilty.
4          THE COURT:  Did you, in fact, commit the offenses as
5     charged in Counts 1 and 10 of that second superseding
6     indictment?
7          THE DEFENDANT:  Sir?
8          THE COURT:  Did you, in fact, commit the offenses as
9     charged in Counts 1 and 10 of that superseding indictment?
10          THE DEFENDANT:  They're talking over this loudspeaker
11    again.
12          THE COURT:  I'm sorry?
13          THE DEFENDANT:  One more time, please.
14          THE COURT:  Okay.  Mr. Knox, and let me take one at a
15    time.  Did you actually commit the offense as charged in
16    Count 1?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  And did you actually commit the offense
19    as charged in Count 10 of that second superseding indictment?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  Okay.  And, Ms. Nicolo, do you have any
22    objections or do you know of any reason to object to your
23    client entering a plea of guilty?
24          MS. NICOLO:  No, Your Honor.
25          THE COURT:  Do you know of any reason why I should

1  not accept the plea of guilty?

2          MS. NICOLO:  No, Your Honor.

3          THE COURT:  All right.  Mr. Knox, I find that the

4  offenses, as charged in Counts 1 and 10 of the second

5  superseding indictment of September 3, 2019, were committed by

6  you.  I also find that you are entering this plea of guilty

7  voluntarily, with full knowledge of the facts, your rights, and

8  the consequences that you face.  And for those reasons, I

9  accept your guilty plea.

10          Now, Ms. Shelvey, do we have any other counts against

11  Mr. Knox?

12          MS. SHELVEY:  We do, Your Honor.  At this time the

13  United States would move to dismiss any remaining counts in the

14  second superseding indictment as well as any other indictments

15  relating to this case.

16          THE COURT:  And that's granted.

17          Now, Mr. Knox, what we'll do at this point -- and I

18  think we talked about it just a little bit earlier.  Probation

19  is going to come out and perform an investigation, a

20  presentence investigation, and probation will prepare a report.

21  A copy of that report will go to Ms. Nicolo, and a copy will go

22  to the government.  When Ms. Nicolo gets her copy, she'll sit

23  down with you and go over it.

24          And what I'd ask you to do is to look at it very

25  closely to make sure that the information contained in that

1   report is accurate, because that is going to be the information

2   I use to determine what an appropriate sentence is for you.  So

3   if there is anything in that report that is not accurate, you

4   let Ms. Nicolo know, and she'll file an objection for you.

5          And, normally, those objections can be worked out.

6   But if we can't work it out, then we'll have to have a hearing

7   to determine what the truth is.  And once we get all of that

8   worked out, we'll bring you back in, and we'll sentence you.

9   Okay?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  Ms. Nicolo and Ms. Shelvey,

12   is there anything else we need to take up on this case?

13          MS. NICOLO:  No, Your Honor.

14          MS. SHELVEY:  No, Your Honor.

15          THE COURT:  All right.  Let's recess until 2:30.

16          MS. SHELVEY:  Thank you, Your Honor.

17          THE COURT:  All right.  Thank you.

18          (Adjourned at 1:29 p.m.)

19                            -oOo-

20

21

22

23

24

25

```
 1                      REPORTER'S CERTIFICATE

 2

 3

 4       I certify that the foregoing is a correct transcript of

 5  proceedings in the above-entitled matter.

 6

 7  /s/ Suzanne M. McKennon, CSR, CRR, RMR
    _____      Date:  01/28/2021
 8  United States Court Reporter

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```