1        IN THE UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF ARKANSAS

3                 CENTRAL DIVISION

4

5   UNITED STATES OF AMERICA,

6                     Plaintiff,      No. 4:17-CR-00293-BSM-24

7       V.
                                      May 27, 2021; 10:30 a.m.
8   RALPH A. ROSS,
                                      Little Rock, Arkansas
9                     Defendant.

10

11

12                 TRANSCRIPT OF SENTENCING
             BEFORE THE HONORABLE BRIAN S. MILLER,
13               UNITED STATES DISTRICT JUDGE

14

15  APPEARANCES:

16  On Behalf of the Government:

17      STEPHANIE MAZZANTI, Assistant United States Attorney
            U. S. Attorney's Office
18          P.O. Box 1229
            Little Rock, Arkansas 72203-1229
19

20  On Behalf of the Defendant:

21      LEE DEKEN SHORT, Attorney at Law
            Short Law Firm
22          425 W Broadway, Suite A
            North Little Rock, Arkansas 72214
23

24
        Proceedings reported by machine stenography; transcript
25  prepared utilizing computer-aided transcription.

```
 1                              INDEX

 2


 3

 4    EXHIBITS RECEIVED AND UNDER SEAL:

 5    Government's Exhibit 1 . . . . . . . . . . . . . . p. 13

 6    Government's Exhibit 2 . . . . . . . . . . . . . . p. 13

 7    Government's Exhibit 3 . . . . . . . . . . . . . . p. 13

 8    Government's Exhibit 4 . . . . . . . . . . . . . . p. 13

 9    Government's Exhibit 5 . . . . . . . . . . . . . . p. 13

10    Government's Exhibit 6 . . . . . . . . . . . . . . p. 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings commencing in open court at 10:43 a.m.)

2           THE COURT:  All right.  I have some exhibits here

3  from the government.  Are these the -- these are exhibits

4  apparently.  I saw some other criminal conduct in the

5  presentence report.  Are these the documents to support those?

6           MS. MAZZANTI:  Yes, Your Honor.  And the first three,

7  I think, we actually already kind of went through those at --

8  whenever you were considering bond.  Those relate to the

9  assault, the aggravated assault, on a family or household

10  member that is currently pending up in Carroll County.  So

11  those were kind of previously discussed.

12      And then the other three I was uncertain whether defense

13  counsel would be in a position to acknowledge that those

14  statements were actually made.  I understand that the defendant

15  denies the conduct itself, but I just wanted to make a record

16  that the statements were, in fact, made.  And so I request the

17  Exhibits 4 through 6 be filed under seal, just for purposes of

18  establishing background for the PSR.

19           THE COURT:  Any objection to these?

20           MR. SHORT:  And, Your Honor, do I keep my mask on?

21           THE COURT:  You can take it off.

22           MR. SHORT:  Okay.  And, Your Honor, I apologize for

23  this request.  I was able to visit with my client for a while

24  in lockup.  He does not believe he's in the right mental frame

25  of mind to proceed with sentencing and would -- and asked that

1  I request that this Court postpone his sentencing to a later

2  date.

3          THE COURT:  Okay.  I'm not really sure what "not in a

4  right mental frame of mind" means.  Is it just he doesn't feel

5  well today, or, I mean, what is it?

6          MR. SHORT:  Your Honor, I think it's a combination of

7  things.  I think, as the Court recognizes from the presentence

8  report, he does have mental health concerns.  I would argue

9  they're fairly substantial.  And in addition, because -- and I

10  cannot thank the Court enough and the Court staff for doing

11  exactly what we requested which is to expedite both the

12  presentence report and to expedite having this sentencing.

13      And because of it being expedited and it was set two days

14  ago, I did not inform him and apparent -- and that caused him

15  great concern to wake up this morning not being aware of

16  exactly why he was being transported here.

17      Again, I spoke with him at length this morning, and he

18  asked that I make that request.

19          THE COURT:  What's the government's position?  Well,

20  before you say anything, let me say this:  I know I had the

21  marshals go over to Conway -- I think it was Conway; right?

22  Where was he being held?

23          MR. SHORT:  Clinton, Your Honor.  I apologize.

24          THE COURT:  That's fine.

25          THE DEFENDANT:  Van Buren County.

1              THE COURT:  Van Buren County and bring him over.  I

2     mean, as far as I'm concerned, I don't mind.  But I started

3     thinking about, you know, we knew this date was coming and the

4     exposure is four years total.  The guidelines range is -- was

5     it three years or four years?

6              MR. SHORT:  Three years, Your Honor.  And the

7     guideline is two to two and a half.

8              THE COURT:  Up to two and a half years.  And so if I

9     were to max him out, it would be three years, which would be

10    six months above the guidelines range.  Not saying that that's

11    whether he has a right to be in the right frame of mind or not,

12    but I'm not sure -- I am just not sure what that means.

13        I understand having bipolar disorder and some other things

14    could affect him wanting to be in the courtroom, but I'm not

15    sure that ultimately there is a whole lot of difference in what

16    happens.

17             MR. SHORT:  And, Your Honor, I will state for the

18    record I don't have -- I don't have any information to make me

19    believe that it's -- that he's struggling with any sort of

20    medication issue or issue with any kind of narcotics.  I think

21    it's -- so just to put that on the record that it's not one of

22    those issues.

23        And I think it most relates to he's going to want to make

24    a statement to the Court, and I think the emotional toll of

25    making that statement -- and if the Court is not going to

1    indulge a continuance, potentially just indulging him working

2    through what are some pretty strong emotions when he makes that

3    statement, Your Honor.

4            THE COURT:  I think I would be willing to do that.

5    But as far as sending him back and then bringing him back, I

6    don't think that would be appropriate.  If we were looking at

7    one of those cases -- and I hate to say that the time involved

8    makes a difference, but it does.

9        If we were looking at a case where he was facing life

10   imprisonment or he was facing 20 years or 10 years or, you

11   know, in that range, then I might say, "Okay.  Let's stand

12   down."  But the maximum I can give him is 36 months, and the

13   guidelines range, I think, is, like you said, from 24 to

14   30 months.  And so even if I went above the guidelines range --

15   I am not sure the government is asking for it by providing me

16   with these documents she's provided me with, but if I gave him

17   the maximum, it would be 36 months.

18       And so I don't think it warrants standing down, sending

19   him back, transporting him back, and bringing him back at some

20   future day.  Now, if you want to take 10 minutes or so and

21   stand down and let him calm down and let him get himself

22   together, that would be fine.  Or when he gets ready to make

23   his statement, if what you're asking me to do is just calm him

24   down and allow him just to work through his thoughts, of

25   course, I'll do that.

1        MR. SHORT:  And, Your Honor, I think for this time

2  right now, I think he's fine.  I think that understanding the

3  Court's ruling, I think that that would be appropriate if the

4  Court would just let him work through his statement to the

5  Court with some indulgence for any emotions.  And I'm not

6  excusing -- he's not prepared to use foul language or anything

7  like that, but he is quite emotional, just by nature.  And I

8  think it may be part of the mental health concerns.  And so if

9  the Court will just bear with him getting through that, I think

10  that would be helpful.

11        THE COURT:  We'll do that.  We'll do that.

12     Now, did the government have a position?  I mean, you

13  don't have to say anything if you don't want to.

14        MS. MAZZANTI:  As long as he -- as long as the Court

15  confirms that he's competent to proceed, Your Honor, I think it

16  is appropriate to proceed.

17        THE COURT:  Well, I guess the problem there is I

18  don't think we've gotten a mental evaluation for Mr. Ross, have

19  we?  I don't think we did.

20        MR. SHORT:  No, Your Honor.

21        THE COURT:  And other than sending him off to have a

22  mental evaluation at this point, which by the time he gets

23  back, he would probably have served all of his time, I don't

24  know how I determine that he's competent other than to ask him

25  and see how he's feeling.  But judging from, you know, what

1  Mr. Short is saying, he's saying that he's not really ready to
2  go forward.  I'll ask him, and I'll see what we can do.
3            MS. MAZZANTI:  That's all.  Normal, typical
4  introductory questions to determine competence that the Court
5  does before every hearing.  I was not suggesting a mental
6  evaluation.
7        And I think as long as Mr. Short can represent, you know,
8  he appears to be competent to proceed and the Court is
9  comfortable with that, then I am comfortable with it, Your
10  Honor.
11            THE COURT:  Okay.
12            MR. SHORT:  And I know the Court is going to ask him
13  questions, and I don't mean to short-circuit that, but I do
14  certainly want to represent he does understand what is
15  happening, he knows why we're here, and he is able to
16  communicate with me about what is happening.
17            THE COURT:  Okay.  Here, well, let's do this.
18  Typically, in a sentencing hearing, I would not place the
19  defendant under oath.  However, since we have this issue, I
20  will today.
21        Let me call the case first.  This is the case of United
22  States of America versus Ralph Ross.  The case number is
23  17-CR-293.  Mr. Ross is in the courtroom with his lawyer Lee
24  Short; the United States is being represented by Stephanie
25  Mazzanti.

1       Mr. Ross, would you raise your right hand, and I'll swear
2   you in?
3       Do you swear to tell the truth, the whole truth, and
4   nothing but the truth so help you God or under penalty of
5   perjury?
6               THE DEFENDANT:  Yes, I do.
7               THE COURT:  Okay.  Now, pull that microphone close to
8   you, Mr. Ross.  And you've been sitting here listening to the
9   conversation we're having.  And you understand that Mr. Short
10  has asked that we recess this hearing and bring you back at
11  another time when you've had a chance to kind of calm your
12  nerves a little bit.
13      Can you tell me what the state of your anxiety is right
14  now so we can kind of figure out what's going on?
15              THE DEFENDANT:  I suffer from anxiety and PSTD [sic],
16  and I get emotional.  It's my life.  Accusations have been made
17  that aren't true.
18              THE COURT:  Say it again now.
19              THE DEFENDANT:  Accusations that aren't even close to
20  being true.  You know we -- and there are other things that the
21  government has done that I can't talk about.  They screwed my
22  life.  I've lost so much.
23              THE COURT:  Okay.  And you understand that you have
24  already pled guilty --
25              THE DEFENDANT:  Yes, yes, Your Honor, I do.

1        THE COURT:  -- to the crime in this specific case?

2        THE DEFENDANT:  Yes, I do, sir.

3        THE COURT:  And that you are here now to be sentenced

4  for that particular case.  And I think when we had your hearing

5  earlier, you said, "Yeah, I did that.  I plead guilty to this

6  specific offense, and I did it."

7      Is it your position that that's not the case now?

8        THE DEFENDANT:  No, Your Honor.  Okay.  I'm guilty of

9  what I did.  But it was my daughter, not a codefendant, on

10  Christmas who was on the side of the road that I sent money to.

11  It wasn't for no reason but that I love her and don't want her

12  in trouble.

13        THE COURT:  Okay.  And your daughter, who is the

14  codefendant in this case; right?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Okay.

17        THE DEFENDANT:  It's just not some average Joe Blow.

18  I knew about something going on with my kid.

19        THE COURT:  Okay.  All right.  Now, with regard to

20  your ability to understand what we're doing today, you

21  understand what's happening today; right?

22        THE DEFENDANT:  Yeah, pretty much.

23        THE COURT:  Okay.

24        MR. SHORT:  Yes, sir.

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  That's fine.  I understand he's doing the
2     best he can.
3          And Mr. Short has asked us to come back another day.  You
4     understand I've told him that I disagree with that.  I think we
5     need to proceed today and take care and wrap this up today.
6          Do you want to make a statement about that before we
7     proceed?
8          THE DEFENDANT:  Whatever you think is right Mr. --
9     Judge Miller.
10          THE COURT:  Okay.
11          THE DEFENDANT:  Your Honor, I --
12          THE COURT:  Okay.  All right.  Well, let's proceed,
13     and we'll go through everything.  And I'm sure that Mr. Short
14     has gone over all of this information with you, but I'm going
15     to go back over it with you today again.  Okay?
16          THE DEFENDANT:  Yeah.  Certainly.
17          THE COURT:  Okay.  Now, the information -- first, do
18     the lawyers -- do we need to approach?  Are there any issues we
19     need to take up in a sealed hearing?
20          MS. MAZZANTI:  It will probably be best just to make
21     a record, Your Honor.
22          THE COURT:  Okay.
23          MR. SHORT:  Yes, Your Honor.
24          THE COURT:  Come forward, Mr. Short.
25          MR. SHORT:  May I approach with Mr. Ross?

1          THE COURT:  Yes.

2      (whereupon the proceedings were held under seal.)

3          THE COURT:  Okay.  Let's proceed with the hearing.

4  Mr. Ross, I note that you entered a plea of guilty on March the

5  19th of 2021 to Count 1 of a superseding information that

6  charged with you with misprism of a felony.  And at that

7  hearing, you were represented by Mr. Short, and you've been

8  represented by him all the way from the beginning.

9      Are you satisfied with the legal representation he's given

10  you so far?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  And I know that at that

13  hearing I would have told you that probation was going to go

14  out and perform a presentence investigation and that probation

15  would prepare a report that would have all of your background

16  information in it.  I have a report that's dated April the 30th

17  of 2021, and it looks like it was revised on May the 14th of

18  2021.

19      Have you had a chance to take a look at that report?

20          THE DEFENDANT:  Me and Mr. Short went over it.

21          THE COURT:  Okay.  And, Mr. Short, do you have any

22  objections to the report?

23          MR. SHORT:  Your Honor, and I don't believe they're

24  necessarily styled as true objections.  I submitted the

25  objections to Ms. Burleson, and she incorporated them as

1  denials.  So I think the Court will notice there is numerous

2  paragraphs in there where it states --

3              THE COURT:  He denies.

4              MR. SHORT:  -- he denies.  Our position would be that

5  those things did not occur, and for a few of them, they're not

6  relevant.

7       I think in one section -- and, again, I apologize for

8  making this a longer speaking objection, but I wanted to be

9  clear.  The Court -- on paragraphs 47 through 49, the

10  government asked that the probation officer include those items

11  in there.

12       They are not part of relevant conduct.  They are not part

13  of his offense whatsoever.  And so we would argue they're not

14  relevant, numbers 47 through 49.  But it should also be noted

15  that there is a denial at the end of each one of those, that he

16  denies those allegations.

17       I do admit, based on the prosecutor's reports that were

18  provided to the Court, that those statements were made by

19  someone.  I deny that those statements are accurate.

20              THE COURT:  Okay.  All right.  To the extent that you

21  require me to overrule the objection, which I don't think

22  you're making a formal objection but we can for the record show

23  that it is a formal objection, I'll overrule the objection.

24       Typically, these paragraphs, or paragraphs like this, we

25  see these in presentence reports from time to time.  And what

1   they do is they help me determine what an appropriate sentence
2   is.  I can take them into consideration in determining whether
3   I want to vary upwards or downwards and that type of thing.  So
4   for those reasons, I'll overrule the objection.
5        Does the government have any objections to the report?
6            MS. MAZZANTI:  We do not, Your Honor.  We would just
7   request Government's 1 through 6 be made part of the record.
8            THE COURT:  I will adopt the presentence report as
9   written.
10       Does the defendant have any objections to receiving
11  Government's object -- I mean, Government's Exhibits 1 through
12  6 into the record?
13           MR. SHORT:  No, Your Honor.
14           THE COURT:  Okay.  And I'll receive those.
15       (Government's Exhibits 1 through 6 were received and filed
16       under seal.)
17           MS. MAZZANTI:  And, Your Honor, because of the --
18  based on the nature of some of the submissions as well as the
19  identifiers contained, we would request those be filed under
20  seal.
21           THE COURT:  Okay.  File those under seal.
22       All right.  And, Mr. Ross, when you came in to enter your
23  plea of guilty, it was probably explained to you in the federal
24  system it's a little different than the state system.  And I
25  see the history you do have is in the state system.

In the federal system, we have our law that tells me what the minimum and maximum sentences are that I can give you.  I have to give you a sentence within the range provided by the law.  In addition to the law, we have sentencing guidelines that help me determine what an appropriate sentence is for you. I am not required to give you a sentence within the range provided by the guidelines as long as I give you a sentence within the range provided by the law.

Now, the law provides for a sentencing range of zero to three years of imprisonment, a fine of up to $250,000, and not more than one year of supervised release, with $100 special assessment for misprism of a felony.  And that's what you've entered a plea of guilty to.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And with regard to the guidelines, the information I have in front of me indicates that this has a base offense level of 15, and you received a two-level reduction for acceptance of responsibility, which brings us to a total offense level of 13.  You have 9 criminal history points, which puts you in criminal history category of IV.

Someone having a total offense level of 13, with a criminal history category of IV, has a sentencing range of 24 to 30 months of imprisonment, a fine of between $5,500 to $55,000, the guideline range for supervised release is up to

1    one year, probation is not authorized by the guidelines, and

2    there is a special assessment of $100, which is mandatory.

3        Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Okay.  And, Mr. Short, do you want to

6    make any departure or variance argument?

7            MR. SHORT:  And, Your Honor, I would make an argument

8    for variance --

9            THE COURT:  Okay.

10           MR. SHORT:  -- if the Court would permit.

11       I know that departures are specifically prohibited by our

12   plea agreement -- but, Your Honor, would the Court prefer if I

13   do it here or there?

14           THE COURT:  Either place is fine.

15           MR. SHORT:  Okay.  Thank you, Your Honor.

16       Just three points that I think are really critical for a

17   request for variance, and the truth is I would ask for time

18   served, probation, or as low a sentence as the Court is willing

19   to go.  To begin -- and this is the first thing this Court said

20   when we started with Mr. Ross today is -- and it was one of

21   Mr. Ross's points as well.  He wants to be sentenced for what

22   he's done here.  I think that that is what this Court said is

23   this offense, "We're talking about offense.  Are you taking

24   back your plea of what you did here?"

25       And he's not taking back that.  He's taken responsibility.

1   And I think that in the plea agreement we make it very clear

2   what those facts are that make him guilty of misprism, which is

3   aiding someone else.

4        And although it doesn't have the name in here, the truth

5   is that the person that he assisted was his daughter.  And

6   there is two acts that the plea agreement alleges; one, that he

7   knew that there was large quantities of methamphetamine being

8   stored at his residence and he fully permitted that, and that

9   would be his daughter that was storing the methamphetamine at

10  his residence; the second act is that, when his daughter went

11  to California to obtain methamphetamine, her car broke down.

12  And he sent her money to make sure that she got back, and that

13  certainly assisted her in not being caught.

14       I think if you're broke down with a bunch of meth, that is

15  probably going to get you caught.  So, I mean, I am not

16  disputing that that's an offense, but that is what he did.  So

17  those are -- that's the offense he pled guilty to is allowing

18  her to store the meth at his residence and then sending her

19  money, and those are both his daughter.  So that's the offense.

20       The second thing I want to talk about is the things he's

21  not going to get credit for.  I think the presentence report

22  notes that he went to rehabilitation multiple times.  He

23  completed a program through RCA, and he's certainly not going

24  to get credit for those.  I mean, those are not going to be

25  given via jail credit or anything else, but he's been under the

1    thumb of some form of supervision and significant requirements
2    throughout this longstanding indictment, which it is a '17
3    indictment.  And so for all of these years, he's been under
4    supervision of probation.  He's been to rehab multiple times,
5    and he's been under the thumb, so to speak, of law enforcement
6    for approximately four years of his life.  And he's not going
7    to get credit.  And I would ask the Court to take that into
8    consideration when setting the sentence as a four-year,
9    essentially, somewhat of a probationary period with
10   rehabilitation required.
11       And the final thing that I think is really critical is,
12   based on some things that have been discussed, he's going to
13   suffer long-term mental, physical, and financial distress that
14   is not going to end in a year.  It's not going to end in two
15   years.  It's not going to end in three years.
16       He was -- he's going to suffer from PTSD for sure from
17   being shot at close range with a shotgun, in addition to his
18   house being burned down, which are just things that take a toll
19   on a person's life.  I mean, he's got to live the rest of his
20   life after that happens.  And the financial and physical
21   toll -- he was in the hospital for months after this.
22       And all of this occurred during the pendency of this case.
23   And so when we're talking about punishment, I mean, this is a
24   man that's suffered a -- that is certainly worse than any
25   imprisonment; that is certainly something to teach someone a

1    lesson is the mental, physical, and financial stresses that
2    he's going to suffer as he leaves this indictment in this
3    Court.
4         And so we're faced with a three-year sentence potentially,
5    a 24- to 30-month guideline.  What I'm asking this Court is to
6    take those things into consideration and recognize that, you
7    know, if this Court gives him even 30 months, is that going to
8    teach him a bigger lesson than what he suffered through this
9    indictment for four years and what he's going to be walking out
10   of it?  And he served several months in the county jail.  I
11   think he's got about six months of credit throughout the four
12   years.  And I appreciate this Court being willing to place him
13   in federal custody for the last two so that -- to make sure he
14   gets credit for that.
15        But based on those reasons, I would ask the Court to
16   consider a probationary period.  I will note finally in
17   addition to completing rehab, he did not fail drug tests, and I
18   know that there is going to be a lot to be made about the
19   conduct -- some of his conduct while on pretrial release.  He's
20   actually done remarkably well and passed his drug screens.  So
21   while people may make statements -- and there are statements in
22   the presentence report to the contrary -- he has not failed his
23   drug tests.  And I think that is significant for someone, as
24   this Court can recognize, who has a longstanding issue with
25   drugs and methamphetamine, in particular, and he's passed his

1  drug screens.

2      And so I think that he's taken advantage of the

3  opportunities that have been afforded to him, and I hope this

4  Court affords him more opportunities to continue to progress

5  and deal with the physical, mental, and financial issues that

6  he'll be facing for the rest of his life.

7          THE COURT:  Typically, I would hear from the

8  government now and then come back to Mr. Ross, or the

9  defendant, to speak, but I want to hear what Mr. Ross has to

10 say before I give the government a chance to speak.

11     Mr. Ross, do you want to make a statement?

12         THE DEFENDANT:  Yes, sir.  I made a lot of mistakes

13 in my life.  2016, I walk my daughter to drug court, and then

14 three months later, she gets busted with dope.  You know what I

15 mean?

16         THE COURT:  Hold on now.  I didn't pick up on that.

17 Now three months later what happened?

18         THE DEFENDANT:  She got busted from the state for

19 69 grams and three firearms and at some house she lived at.

20 And I allowed her to move in my house when she got bailed out

21 because she didn't have nowhere to go.  You know what I mean?

22 That makes me guilty of helping her store.  You know what I

23 mean?

24     But I've lost a lot.  My mental state, it's not as strong

25 at all.  You know what I mean?  I want to throw myself on the

mercy of this Court.  Let me go out on probation.  Put me on
20 years of probation.  I will never flunk a piss test or get
out of line, you know.

I taught classes at Newman Center, at Freedom House on
drug addiction.  I can help the young people because I know
what addiction is like.  I know what I went through and what
I've lost, you know.

Getting shot -- I got shot three times with a shotgun
14 inches from me.  I've got 13 bullets still in me all around
my spine.

You know, I am limited.  I can't write.  You know, I ain't
making no excuses, Your Honor.  You know what I mean?  Just
have mercy on my old ass.  Thank you.

THE COURT:  Ms. Mazzanti, do you want to make a
response?

MS. MAZZANTI:  Your Honor, the government's position
is that at a minimum the high end of the guideline range is
appropriate, but the Court would be well within its discretion
to impose the statutory maximum in this case of 36 months based
on all of the conduct the defendant engaged in as well as his
history and characteristics as set forth in the presentence
report.

I would start out by noting on pretrial release his --
that he was arrested for beating up his girlfriend at the time.
The government submitted, as Government's 1 through 3,

1    documentation relating to those allegations.

2        Prior to the last hearing we had, I attempted to contact

3    the victim.  My understanding is she -- based on the jail

4    messages, that she moved out of state.  All the numbers that I

5    tried for her I was unsuccessful in contacting her to

6    participate in any sort of hearing.

7        But I did submit her written statement where she details

8    the incident, as well as the color photographs in Government's

9    Exhibit 1, that show the injuries that she sustained.  There is

10   bruising on her eye, bruising on her neck.

11       In addition, Your Honor, I submitted some of the jail

12   messages that the defendant had with the victim as well as

13   others while he was incarcerated.  Some of those acknowledge

14   some of the things that we've been talking about that defense

15   referenced in terms of his drug use as well as the incident

16   with the domestic battery victim.

17       For example, on Page 68 of 151 of Exhibit 2, the

18   defendant's e-mail states, "And if I get out, I'm gonna put in

19   fall of staying clean like I have for the most part except pain

20   pills, which I haven't had any except black market because I

21   can't see a doctor."  And so he's acknowledging in that taking

22   black market pain pills.

23       There is also various references to other drugs herein.

24   There is also, on Page 114 of 151, for example, the victim of

25   the domestic battery stated quote, "You mistreat me and beat my

1   ass."

2       And in response the defendant states, "I love you and made

3   some mistakes," which reads as if it's an admission to the

4   government.

5       And then later on talks about how the victim started

6   screaming at 2:00 a.m.  He freaked out.  And so he claims it

7   was an accident at that point.

8       And so the government requests that the Court consider his

9   pretrial conduct in engaging in the domestic battery with the

10  victim in that case and imposing an appropriate sentence in

11  this case.

12      There is also the other statements, Government's 4 through

13  6, that are referenced and detail in the presentence

14  investigation report as to Mr. Ross.  I was present during

15  those interviews.  I think that the Court can consider -- and

16  it is relevant -- the defendant's conduct and how his actions

17  contributed to his daughter's participation in this offense.

18      I hear him saying it's all her fault, essentially.  But

19  whenever you consider the fact that that's her father and that

20  she states that he got her on meth as a 14-year-old child, I

21  think that that is something the Court can take into account.

22  According to her, her father gave her methamphetamine at

23  14 years old.  And so he can cast blame all he wants, but

24  parents have certain responsibilities to their children as

25  well.  She's responsible for what she did.  He's responsible

1    for what he did.

2         There is also in paragraph 48 and 49 you know, 48 more so,

3    there are -- that is more related to this offense in terms of

4    the allegations that were lodged that Mr. Ross made against

5    another defendant in this case.  And so I think that the Court

6    can take all of those things into account understanding that

7    Mr. Ross denies that they happened, but the government submits

8    that the Court can take into account those statements in

9    imposing an appropriate sentence in this case.

10        The defendant is not a young individual compared to some

11   other people in this case.  He's 56 years old.  He has -- I

12   acknowledge that he doesn't have the worst criminal history

13   I've ever seen, but he does have a criminal history that spans

14   since he was 28 years old and largely they involved theft for

15   methamphetamine.  So clearly he's had a problem for a long

16   time.  Nobody disputes that.

17        But some of those convictions actually lend some credence

18   to other allegations that were made by codefendants about the

19   thefts and things like that.  So I think, whenever you consider

20   Mr. Ross as a person as a whole, you consider the benefits he

21   already received by virtue of the plea agreement.  The

22   government's position is that he -- that a guideline sentence

23   in this case is appropriate or an upward variance to -- and a

24   high-end guideline sentence is appropriate considering his

25   history and characteristics.  In the alternative, the Court

1   would be well within its discretion to impose the statutory

2   maximum of 36 months.

3         THE COURT:  All right.  Let me say this:  When I

4   looked at the record, before I came out, my point of view, just

5   looking at the record -- and I know, Ms. Mazzanti, you make the

6   statement that paragraph 48 is more closely related than

7   paragraph 47.

8         And I don't have the daughter here to testify, so I don't

9   know who's telling the truth there.  But the idea that she says

10  that "He gave me methamphetamine at the age of 14 and that's

11  what started me down this path" is almost unforgivable; it's

12  reprehensible.  And I don't know if that is true.  We don't

13  know.  But that's kind of difficult to get over.

14        Now, so looking at the record before I came out -- and I

15  say this to you, Mr. Ross -- my thought was that, given your

16  history and given paragraphs -- and these are paragraphs that

17  were objected to by your lawyer but the paragraphs dealing with

18  other conduct and just given your history, an alleged history,

19  36 months seems reasonable to me.

20        Now, I came on out, and, you know, Mr. Short at the bench

21  started explaining to me all of the things that Mr. Ross has

22  gone through since the case started.  And so, of course, when

23  you're over here, it starts bringing you back a little bit

24  towards the middle or towards maybe a guideline range sentence.

25        But when I look at it -- and I asked a question at the

1    bench:  What Was the original underlying charge?  And I guess

2    it was Count 1.  That was a conspiracy count.  And Mr. Ross,

3    through the work of his lawyer, Mr. Short, was able to get a

4    superseding information that allowed you to plead to a

5    misprism, which carries with it a maximum of 36 months

6    imprisonment.

7         Compared to what you were looking at, Mr. Ross, Mr. Short

8    did a great job for you.  And what he did was limited the

9    amount of time that you could get.  And I think limiting it to

10   36 months is probably the best I can do given your history and

11   given this case.

12        So I'm not going to lie to you.  Looking at what you've

13   gone through being shot, having your house burned down, it's

14   like it makes my heart break.  But then I look at it and I

15   think, given the nature of this case, given the nature of your

16   involvement with it, given the nature of your criminal history,

17   I think three years is appropriate, Mr. Short.

18        And I'll let you make another argument.  You can argue and

19   make an objection to it.

20            MR. SHORT:  Your Honor, and certainly, for the

21   record, I object to a variance upward.  I will say -- and

22   this -- I know how the Court views it.  I know how the Court

23   reviews here's what the indictment is, and here's what you pled

24   to as if that's the benefit.

25        And the truth of the matter is there is a giant benefit to

1   the government that he's not walking out of here found not

2   guilty.  So I am --

3          THE COURT:  And I'll add to that.  There is a giant

4   benefit that, when they go to trial with the people they're

5   taking to trial, that they don't have one extra body sitting

6   over there defending it at trial, too.  That's a benefit, too.

7          MR. SHORT:  And I will -- because as this Court can

8   see from the docket, we persisted in our "not guilty" plea for

9   well over three years.  And because at no point was Mr. Ross

10  ever going to acknowledge, nor should he, that he was a part of

11  a conspiracy.  I mean, that's just --

12         THE COURT:  Okay.

13         MR. SHORT:  So the idea that he was ever going to be

14  found guilty -- I know they disagree.  I understand that.

15  That's why they indicted him for conspiracy.  But at no point

16  in his mind, or mine, was he about to be found guilty of a

17  conspiracy.

18         So the benefit of a misprism, while it is a compromise, it

19  is not a benefit to Mr. Ross any more than it is a benefit to

20  the government that he didn't walk out of here not guilty.

21         And I understand how the Court always looks at it, and the

22  Court is looking on paper, and it does look like a benefit, but

23  it's a two-way benefit.  And there is not -- the facts -- he's

24  not -- he was not part of a conspiracy, and he -- that was

25  always our contention for over three years.  I think he was in

the final six individuals, and we had numerous -- we had
conference calls about how he was going to be tried.

I asked for a severance so he could be tried alone.  I
mean, there were multiple -- we filed motions to suppress
because he intended on going to trial on the conspiracy count.
It wasn't until late that the compromise was reached for a
misprism.

And I am not trying -- and I certainly acknowledge that
the government feels differently, I mean, or they wouldn't have
indicted him.  But to suggest -- and that's my thing.  I
recognize it seems so little, 36 months on a misprism.  I
recognize that.  But that not -- he didn't get a benefit by
getting out of a conspiracy he wasn't ever going to be
convicted of in our minds.

THE COURT:  Your position is that this is actually
what he did?

MR. SHORT:  This is exactly what he did.

THE COURT:  You know, he pled guilty to this because
this is what he did, not because he's getting a benefit from
the plea?

MR. SHORT:  Exactly.  And that's why I'm --

THE COURT:  Let me hear from Ms. Mazzanti.

Ms. Mazzanti, I know the government sees it differently.
But that is somewhat of a compelling point is that, look, he
pled guilty to this, and we worked this out because that is

actually what he did, and so he shouldn't be held -- okay.  We shouldn't start it where he was charged.  We should start at where he pled guilty and work from there.

And what Mr. Short is accusing me of -- I'm not saying accusing me.  What he's saying I am doing is is that I am overlooking the fact that he pled guilty to one crime and I am starting from the crime for which he was charged initially.  And that's where my holdup is is that I'm still over there at conspiracy, and I'm believing he got this great deal when the truth is what he did was misprism.

And if you listen to Mr. Ross's statement about it was his daughter, he was trying to help her, and, yes, he shouldn't have -- and I think Mr. Ross -- Mr. Short made the same argument, that she's out there stuck on the highway with drugs in the car.  Yeah, he did help her.  But he was not attempting to be involved in some grand conspiracy.  He was just helping his daughter out, and he didn't turn her in when he found out about it.

Now, what says you?

MS. MAZZANTI:  Your Honor, the grand jury indicted this defendant for a drug conspiracy, and the evidence was more than sufficient to support that.

Mr. Short's seen the discovery where we have multiple individuals acknowledging their dealings with Mr. Ross.  We have multiple individuals discussing Mr. Ross actually

1    distributing drugs.

2         Now, as I previously acknowledged in all candor, he was a

3    gram to 8-ball dealer, and that's why I was comfortable with

4    this plea, because he is not some sort of kingpin.  Okay?

5    And that is part of the consideration for giving him the

6    misprism.  But make no mistake, the evidence was more than

7    sufficient to demonstrate his culpability in a drug conspiracy

8    including, as was previously litigated, Mr. Ross did confess to

9    distributing drugs.  Now, he tried to suppress it.  The Court

10   denied the suppression motion.

11        But that was part of the government's proof -- was his own

12   statement acknowledging distribution as well as multiple

13   codefendants and others who would be willing to testify that

14   he, in fact, was engaged in the conspiracy.  He is caught on

15   the wiretap in this case discussing with his daughter, trying

16   to get her home.

17        Those actions, while they are -- could constitute misprism

18   as well, could also constitute his involvement in the

19   conspiracy, especially considering his acknowledgment that he

20   allowed large quantities of drugs to be stored at his home.

21   That alternatively has been couched as misprism, but that is

22   also evidence of the conspiracy and his involvement in it.

23        So the government's position remains the same, that he did

24   get the benefit of a misprism in this case.  And I think that

25   the Court's free to take into account the undisputed facts from

1  his change of plea that would support that.

2          THE COURT:  Okay.  I'm going to go on and pronounce

3  sentence, Mr. Short.  I think you've made your record on it.

4  And you are objecting to a variance upward.  You have the right

5  to appeal the sentence.  And I would imagine you could get the

6  case to the Court of Appeals pretty quickly and get them to

7  rule on it fairly quickly.

8          You know, I just got like -- what? -- three or four

9  opinions handed down the last few days.  So they're kind of

10  moving them out right now.

11          Here's what I'm going to do.  Like I said, I'm going to

12  stick with my original or initial thoughts about this.  And I'm

13  going to vary upward to a term of 36 months of imprisonment.

14  I'm going to recommend that Mr. Ross receive residential

15  substance abuse treatment while he's in mental health

16  counseling, while he's in prison.  I'm going to order him to

17  one year of supervised release upon his release.

18          I'm going to order that he participate in a substance

19  abuse treatment program, that may include drug and alcohol

20  testing and outpatient counseling.  I'm going to order him to

21  abstain from the use of alcohol during the course of treatment.

22  I am going to order him to pay a $10 copay based on his ability

23  to pay.

24          I'm also going to order him to participate in mental

25  health treatment while he's on supervised release or as a

1   condition of supervised release.

2        And I'm going to order him to pay a copay of $10 per

3   session based on his ability to pay.  And, Mr. Ross, if you

4   cannot afford to pay those copays, they will be waived.  The

5   main thing is go to your classes and receive the treatment.

6        I'm going to order him to cooperate in the collection of

7   DNA, and I am not going to order him to pay a fine, but I am

8   going to order him to pay a $100 special assessment.

9        Now, Mr. Ross you have 14 days from the day that I enter

10  the judgment to appeal.  If you cannot afford the cost of the

11  appeal, you can ask for leave to appeal in forma pauperis.  And

12  if it's determined you cannot afford it, you'll be allowed to

13  file your appeal without paying the filing fee, or you'll be

14  allowed to pay it in installments.  If you cannot afford a

15  lawyer on appeal, we'll appoint one to represent you.

16        Now as to where he serves his sentence, any

17  recommendations for that?

18             MR. SHORT:  Your Honor, I do have three

19  recommendations.

20             THE COURT:  Okay.

21             MR. SHORT:  The first one being that he not be

22  housed -- and I think it will happen, but that he not be housed

23  with any codefendants.  And so I anticipate the bureau,

24  obviously, and the prosecutors have a way to deal that.  I just

25  want to be -- make sure that I've said it again.

1          THE COURT:  I understand that.

2          MR. SHORT:  And the second one would be certainly a

3    place that can deal with his physical and mental health needs.

4    Obviously, the Court has made recommendations that those be

5    addressed as well as his drug and alcohol issues, and I

6    appreciate that.

7          With that being said, we would ask for Texarkana if -- but

8    I anticipate that that is probably going to be taken by a

9    codefendant, so my --

10         THE COURT:  I think we've had several people come in

11   for sentencing, and I know -- or I don't know but I believe

12   we've recommended Texarkana for at least one.  I know,

13   Mr. Ross, you want to be somewhere near Arkansas where your

14   family and people can come visit you, but that might make it

15   difficult for us to put you somewhere where you won't be around

16   codefendants.

17         Any other -- I mean, I can recommend Texarkana, the third

18   level.  But is there anywhere that you can think of that may be

19   somewhere remote or out of the way where some of the people who

20   are involved will not be there?

21         MR. SHORT:  Your Honor, he certainly had intentions

22   to move to Kansas.  He's from Kansas, if the Court would

23   recommend that as a potential.

24         THE COURT:  I think that might -- what is that?  Fort

25   Leavenworth in Kansas?

1          MS. MAZZANTI:  I believe so, Your Honor.

2          THE COURT:  I don't think we've sent anybody up

3   there.

4          MR. SHORT:  Okay.

5          THE COURT:  So that might be a good place.  So I will

6   recommend Leavenworth.

7          MR. SHORT:  Thank you, Your Honor.

8          THE COURT:  And if they have a spot for you,

9   Mr. Ross, they'll put you there.  Okay?

10      All right.  Is there anything else we need to take up in

11   this hearing?

12          MR. SHORT:  No, Your Honor, not from the defense.

13          MS. MAZZANTI:  Your Honor, just for the record, we

14   will enforce any appeal waivers that exist in this case

15   acknowledging the variance issue in this case.  But because

16   we're dealing with that currently in some litigation, where

17   they've claimed -- certain defense attorneys have claimed that

18   our failure to note that is somehow a waiver on our part, I am

19   noting that we are not waiving our ability to enforce the

20   appeal waivers.

21          THE COURT:  Okay.  All right.  Hold on just a second.

22      Anything else, Mr. Short?

23          MR. SHORT:  No, Your Honor.  And I certainly

24   understand the appeal waivers.  I acknowledge that.

25          THE COURT:  All right.  Let's adjourn.

1       (Adjourned at 11:41 a.m.)

2                           -oOo-

3

4

5

6

7                   REPORTER'S CERTIFICATE

8

9

10      I certify that the foregoing is a correct transcript of

11   proceedings in the above-entitled matter.

12

13   /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                        Date:  06/29/2021
14   United States Court Reporter

15

16

17

18

19

20

21

22

23

24

25