```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF ARKANSAS
2
                    Case No. 4:17-CR-00293-BSM-24
3
   UNITED STATES OF AMERICA,       )
4                                  )
         GOVERNMENT,               )
5                                  )
         -v-                       )
6                                  )
   RALPH A. ROSS,                  )
7                                  )
         DEFENDANT.                )    Little Rock, Arkansas
8                                  )    March 19, 2021, 10:29 A.M.
   _____)
9


10            TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

11             BEFORE THE HONORABLE BRIAN S. MILLER

12                  UNITED STATES DISTRICT JUDGE


13


14  Appearances:

15  FOR THE GOVERNMENT        Stephanie Gosnell Mazzanti, ESQ.
                              U.S. Attorney's Office
16                            Eastern District of Arkansas
                              Post Office Box 1229
17                            Little Rock, AR   72203

18  FOR THE DEFENDANT         Lee Deken Short, ESQ.
                              Short Law Firm
19                            425 West Broadway, Suite A
                              North Little Rock, AR   72114

20


21       Proceedings reported by machine stenography; transcript
    prepared utilizing computer-aided transcription.
22


23


24


25
```

```
 1          (Call to the order of the Court.)
 2          THE COURT:  All right.  Our first case on the docket
 3   this morning is United States of America versus Ralph Ross.
 4   The case number is 17-CR-293.  Mr. Ross is in the courtroom
 5   with his lawyer, Mr. Short.  The United States is being
 6   represented by Stephanie Mazzanti.
 7          Mr. Ross, would you raise your right hand so I could
 8   swear you in.
 9                    Ralph Ross, Defendant, sworn.
10                            Examination
11   BY THE COURT:
12   Q    All right.  Mr. Ross, you have been sworn in, right?
13   A    Yes, sir.
14   Q    Okay.  And Mr. Ross, before we proceed I'm going to get
15   some background information from you.
16          First, how old are you?
17   A    Fifty-six years old.
18   Q    And how much education do you have?
19   A    I graduated high school.
20   Q    Have you had any drugs or alcohol or any medication in
21   the last 24 hours that would make it difficult for you to
22   understand what we're doing today?
23   A    No, sir.
24   Q    Do you understand why you're in court today?
25   A    Yes, sir.
```

1    Q    Now, you've been represented by Mr. Short.  Have you had

2    a chance to sit down with Mr. Short and go over your case with

3    him?

4    A    Yes, sir.

5    Q    Are you satisfied with the legal representation he has

6    given you so far?

7    A    Yes, sir.

8              THE COURT:  And Mr. Short, have you had a chance to

9    talk to Mr. Ross?

10             MR. SHORT:  Yes, Your Honor, on multiple occasions.

11             THE COURT:  Okay.  Is there anything about Mr. Ross

12   that would lead you to believe that he is not competent to go

13   forward with the plea?

14             MR. SHORT:  No, Your Honor.

15             THE COURT:  And Mr. Short, you can keep your seat.

16   You don't have to stand up as a formality.

17             All right.  I find that Mr. Ross is competent to go

18   forward with the plea.

19   BY THE COURT:

20   Q    Now, Mr. Ross, it's my understanding that you want to

21   enter a plea of guilty.  First you want to waive indictment

22   and proceed by superseding information; is that true?

23   A    Yes, sir.

24   Q    Have you had a chance to talk with Mr. Short and go over

25   all of your rights that you have and what rights you will be

1    giving up by proceeding by information?

2    A    Yes, sir, we went over it two times.

3    Q    Okay.  And I'm sure, and I'm going to briefly go over it

4    with you again just so we have a record of it.

5              You understand that in the federal system, typically

6    we bring charges against people by indictment.  That's what's

7    required in the federal system.  That's where the government

8    would take your information to a grand jury, and the grand

9    jury would consist of between 16 and 23 people, or persons,

10   and at least 12 of those grand jurors would have to determine

11   that there's probable cause to find that you've committed the

12   crime that -- the crime at issue.  Do you understand that?

13   A    Yes, sir.

14   Q    And if 12 of those grand jurors determines there's

15   probable cause to bring a charge against you, they issue what

16   is called an indictment.

17   A    Yes, sir.

18   Q    And that's the charging document that explains what

19   you're being charged with.

20             Well, you understand here on the superseding

21   information, that has not happened on this particular charge,

22   and you understand that you have a right to ask the government

23   to go back to the grand jury and indict you on this particular

24   charge, right?

25   A    Yes, sir.

1  Q    Okay.  And do you understand that you're asking to waive

2  that requirement and proceed by superseding information?

3  A    Yes, sir.

4  Q    You understand your rights to -- your right to

5  indictment?

6  A    Yes, sir.

7  Q    Okay.  And this superseding information says that:

8  Between in or about 2015, and through in or about

9  December 2016, in the Eastern District of Arkansas, Ralph

10  Ross, having knowledge of the actual commission of a felony

11  cognizable by a court of the United States, to wit conspiracy

12  to withdraw, I mean, to distribute and possess with intent to

13  distribute a controlled substance, did knowingly and

14  intentionally conceal the same and did not as soon as possible

15  make known the same to some judge or other person in civil or

16  military authority under the United States.  You understand

17  that?

18  A    Yes, sir.

19           THE COURT:  Okay.  And Mr. Short, do you know of any

20  reason why Mr. Ross should not waive indictment and proceed by

21  information?

22           MR. SHORT:  No, Your Honor.

23  BY THE COURT:

24  Q    Last thing, Mr. Ross.  Have any threats or promises been

25  made to you to get you to waive indictment?

```
1    A    No, sir.

2    Q    Are you waiving indictment freely and voluntarily?

3    A    Yes, sir.

4         THE COURT:  Okay.  And you have a waiver form,

5    Mr. Short?

6         MR. SHORT:  I do, Your Honor.

7         Your Honor, may I approach?

8         THE COURT:  Yes.  Thank you, Mr. Short.

9    BY THE COURT:

10   Q    All right.  Mr. Ross, I have received the waiver of

11   indictment form, and that is your signature that appeared on

12   the form?

13   A    Yes, sir.

14   Q    And I've signed off on it, so we will proceed by

15   superseding information.

16        Now, you understand, Mr. Ross, that simply because

17   you have waived indictment, that does not mean that you now

18   have to enter a plea of guilty to the superseding information.

19   Do you understand that?

20   A    Yes, sir.

21   Q    Okay.  And so it's my understanding that you want to

22   enter a plea of guilty to that superseding information; is

23   that true?

24   A    Yes, sir.

25   Q    Okay.  And I'm going to go over your rights that you have
```

1    to a trial and what your rights would be at trial.

2            You understand that if you were to enter a plea of

3    not guilty to the superseding information, you would have a

4    right to a speedy and public jury trial.  We would hold your

5    trial in this courtroom, we would bring in 12 people from the

6    community who sit in those chairs across from you and who'd

7    listen to the case.  You have the presumption of innocence,

8    which means you don't have to prove or disprove anything at

9    trial.  In fact, because of the presumption of innocence, you

10   don't even have to testify.  You have a right to be free from

11   self-incrimination, which means during the course of your

12   trial if you decided not to testify at all, the jury could not

13   go back to the jury room and say, hey, Mr. Ross didn't

14   testify, so therefore he must be hiding something.  That's not

15   the way our system works.  The government has the burden of

16   proof, and the government would have to prove this case

17   against you beyond a reasonable doubt.

18           And the way Ms. Mazzanti would do that is she would

19   bring in her witnesses who would testify as to what happened,

20   and she would also probably come in here with documentary

21   evidence and attempt to introduce documents into evidence that

22   would then be shown to the jury to show that you are indeed

23   guilty of what is charged in the superseding information.

24           Now, this is a case in which it's been alleged that

25   you had information about certain illegal activity, and you

1    didn't report it, and you were required to.  So to prove that,
2    what the government would probably do is bring in witnesses,
3    both the people who investigated it, the authorities who
4    investigated this crime, and she would probably also bring in
5    people who bought or sold to the conspiracy or what was taking
6    place.  She would probably bring in somebody who could show
7    that you indeed had knowledge of what was going on, and that
8    you didn't take steps that were required by law.  Now, you
9    would have the right to confront the witnesses against you.
10   And the way you would confront those witnesses against you is
11   Mr. Short would cross-examine them, ask them questions to make
12   sure that the testimony they are giving is both truthful and
13   accurate.  Also, the government, she might have photos or
14   something else, or she might have records of where you lived
15   and what was going on at the house and that type of thing.
16   When she attempts to introduce those items in evidence you
17   have a right to object to them, and then I have to decide
18   whether those items actually come into evidence.
19           Once the government's put on its case, then you have
20   a right, if you want to, to put on a case in defense.  Like I
21   said, you don't have to prove or disprove anything, but if you
22   had witnesses who knew something about the case, you would
23   have the right to put them on the witness stand and testify.
24   Also, you have a right not to testify, but if you choose to
25   take the witness stand and tell the jury what happened or what

1    didn't happen, you have the right to do that, as well.  Just

2    understand, Mr. Ross, that if you choose to testify or call

3    witnesses to testify, then the government would have the right

4    to cross-examine you and your witnesses to make sure that the

5    testimony you are giving is truthful and accurate.

6           Once all the evidence is in, the jury would go back

7    to the jury room and would determine or talk about it and then

8    determine whether the government proved the case against you

9    beyond a reasonable doubt.  Now, the jury has to be unanimous

10   for there to be a verdict, so it's not a majority vote.  All

11   12 would have to agree on it.  If all 12 of those jurors

12   determined that the government did prove the case against you

13   beyond a reasonable doubt, then that jury will find you

14   guilty.  If all 12 jurors determined the government did not

15   prove the case against you beyond a reasonable doubt, that

16   jury would find you not guilty.  If you're found not guilty,

17   your case is over and the government cannot bring this case

18   against you again based on these facts.  If the jury

19   determines that you're guilty and they find you guilty, then

20   you have a right to an appeal.

21          Mr. Ross, on appeal your case would go to three

22   judges who sit in St. Louis who would not hear the evidence,

23   but those judges would read the brief or the written statement

24   filed by your lawyer and would read the transcript of the

25   trial and any pretrial hearings that we hold and determine if

1    I made mistakes that caused you to lose your trial.  If it's

2    determined -- and that's called error, and all that means is a

3    mistake that I made.  If I made a mistake that caused you to

4    lose your trial, then the government will reverse the jury's

5    verdict, send the case back down here, and we would try your

6    case again.  If I did not make a mistake that caused you to

7    lose, then the court of appeals will affirm the jury's verdict

8    and your case will be over.

9            Do you understand that by entering this plea of

10   guilty you're giving up all those rights?

11   A    Yes, sir.

12   Q    You will not have a right to confront the witnesses

13   against you, you would not have a right to contest the written

14   or documentary evidence against you, but I'll just enter a

15   judgment of guilty based on the plea you enter here today.  Do

16   you understand that?

17   A    Yes, sir.

18   Q    Do you also understand that in most of our plea

19   agreements, you also are giving up the right to appeal your

20   sentence?  There are three circumstances under which you still

21   will have the right to appeal your sentence:  That's if I give

22   you a sentence above the guidelines range, if it's determined

23   that Mr. Short did not provide you adequate representation, or

24   if the government engaged in misconduct.  If either one of

25   those three things happen and you object to it, then you would

1    have a right to appeal your sentence.  Otherwise, by entering

2    this plea of guilty, you are giving up your right to appeal

3    your sentence.  You understand that?

4    A    Yes, sir, I do.

5    Q    Okay.  You understand also that we -- if you have not --

6    if you don't have a felony record, then by entering this plea

7    of guilty, you're also giving up certain valuable civil

8    rights, like the right to vote, the right to own a firearm and

9    the right to hold public office.  Do you understand that?

10   A    Yes, sir.

11   Q    Okay.  Now, have you had a chance to talk to Mr. Short

12   about the possible sentence you could receive?

13   A    Yes, sir.

14   Q    So Mr. Short's probably explained to you that in the

15   federal system we have our law that tells me what the minimum

16   and maximum sentences are that I can give you.  I have to give

17   you a sentence within the range provided by the law.  In

18   addition to the law, we have Sentencing Guidelines that help

19   me determine what an appropriate sentence is for you.  I am

20   not required to give you a sentence within the range provided

21   by the guidelines as long as I give you a sentence within the

22   range provided by the law.  Do you understand that?

23   A    Yes, sir, I do.

24   Q    Okay.  Now, I can't tell you what your guidelines range

25   is going to be today, because what will happen is after today

1    probation will go out and perform a presentence investigation.

2    They'll look into your criminal history, alcohol and drug

3    history, all that stuff, and then it will prepare a

4    presentence report that will have your Sentencing Guidelines

5    range in it.  I don't have all that information today, so I

6    cannot tell you what your guidelines range is going to be.

7    What I can tell you, however, is based on the law, the

8    sentencing range for misprision of a felony is from zero to

9    three years of imprisonment, a fine of from zero to $250,000,

10   a term of supervised release of not more than one year, and

11   you'll also have to pay a special assessment of a hundred

12   dollars.  Do you understand that?

13   A    Yes, sir.

14   Q    Okay.  And do you also understand that if I were to give

15   you a sentence longer than what you expect, that you cannot

16   withdraw your plea of guilty?

17   A    Yes, sir, I do.

18   Q    Do you also understand that if I do give you a prison

19   sentence, you will not go before a parole board and get out

20   early, because we don't have parole in the federal system?

21   A    Yes, sir.

22        THE COURT:  Now, my understanding, Mr. Short, is

23   there is a plea agreement?

24        MR. SHORT:  Yes, Your Honor.

25        THE COURT:  Ms. Mazzanti, would you state for the

1    record what the terms of the plea agreement are.

2            MS. MAZZANTI:  Yes, Your Honor.

3            Per the plea agreement, the defendant will waive

4    indictment and allow the United States to proceed by

5    superseding information charging him with misprision of a

6    felony in violation of 18 U.S.C, Section 4.   The defendant

7    also agrees to enter a plea of guilty to the superseding

8    information.

9            The elements of the offense, as well as the

10   statutory penalties are included.   And the waiver provisions

11   provide, in part, that the defendant will waive his right to

12   appeal or collaterally attack to the full extent of the law

13   all nonjurisdictional issues, including any forfeiture or

14   restitution; including he waives his right to appeal all

15   nonjurisdictional issues, including but not limited to:  Any

16   issues relating to pretrial motions, hearings and discovery,

17   and any issues relating to the negotiation, taking or

18   acceptance of the guilty plea, or the factual basis for the

19   plea, including the sentence imposed; or any issues that

20   relate to the establishment of the guideline range, except

21   that he reserves the right to appeal claims of prosecutorial

22   misconduct and the right to appeal the sentence if the

23   defendant makes a contemporaneous objection because the

24   sentence imposed is above the guideline range established at

25   sentencing.

The defendant acknowledges the United States reserves its right to appeal.  The defendant waives his right to collaterally attack the conviction and sentence in any post-conviction proceeding, including under 28 U.S.C., Section 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct.  The defendant waives his right to have his sentence modified under 18 U.S.C., Section 3582(c)(2).  He also waives the right to appeal forfeiture or restitution if it's at issue.

The parties stipulate that pursuant to Section 2X4.1(a) of the guidelines, the base offense level is nine levels lower than the offense level for the underlying offense, in this case conspiracy to distribute and possess with intent to distribute a controlled substance, but shall not be less than 4, nor more than 19.  Here, the base offense level for the underlying offense is determined by Section 2D1.1 of the guidelines and is an offense level of 24.  Therefore, the base offense level is 15.

The defendant's eligible for a two-level reduction for acceptance of responsibility unless he takes any action between the entry of the guilty plea and imposition of the sentence that is inconsistent with acceptance of responsibility.  If the offense level is 16 or greater, the United States will determine whether to award the third point at the time of the sentencing.

1          The parties stipulate that no other enhancements or

2     reductions under Section 2D1.1, Chapter 3 or Chapter 5 of the

3     guidelines apply other than those set out in the agreement and

4     addendum.

5          The defendant's waiving his right to challenge

6     searches, seizures, arrests, statements and forfeitures that

7     have taken place to date by any investigative entity, and the

8     defendant has stipulated to the facts of the case.

9          In addition, Your Honor, the defendant acknowledges

10    that if the agreement and addendum are terminated for any

11    reason or if he breaches the plea agreement or addendum, then

12    the United States can introduce this plea agreement, proffer

13    statements, stipulations and the plea colloquy in the United

14    States' case in chief and can cross-examine him at any

15    subsequent proceeding.

16         And the remainder of the plea agreement provisions

17    are standard, Your Honor.

18         THE COURT:  Okay.  And Mr. Short, do you have any

19    other terms that you want to put on the record?

20         MR. SHORT:  No, Your Honor.

21    BY THE COURT:

22    Q    Mr. Ross, did you listen to the statement given by the

23    U.S. Attorney?

24    A    Yes, I did.

25    Q    Were the terms that she just outlined the terms that you

1    understood were contained in your plea agreement?

2    A    Yes, sir.

3    Q    Okay.  Having discussed your rights with you, do you

4    still want to enter a plea of guilty?

5    A    Yes, sir.

6    Q    Has anybody made any promises to you to get you to plead

7    guilty?

8    A    No, sir.

9    Q    Has anybody made any threats to you to get you to plead

10   guilty?

11   A    No, sir.

12   Q    Are you pleading guilty voluntarily?

13   A    Yes, sir.

14        THE COURT:  Ms. Mazzanti, do you -- well, I was

15   going to ask you to make a statement and tell us what facts

16   you would put on if we were to have a trial on the superseding

17   information.

18        MS. MAZZANTI:  Yes, Your Honor.

19        The United States would show that during the course

20   of the conspiracy charged in the second superseding

21   indictment, the defendant, Ralph A. Ross, obtained small

22   amounts of methamphetamine from multiple co-conspirators named

23   in the pending second superseding indictment.  During the

24   course of the conspiracy, Ross became aware of the large

25   quantities of methamphetamine being distributed and allowed

```
 1    the distribution quantities of methamphetamine to be stored at
 2    his residence, which assisted the co-conspirators in
 3    concealing the methamphetamine from public view.
 4              On one occasion, when the co-conspirator was
 5    concerned about going to jail, the defendant provided funds to
 6    a co-conspirator to be able to return home from California to
 7    Arkansas, knowing that the co-conspirator was obtaining
 8    methamphetamine in California, which aided in the concealment
 9    of the conspiracy.  During the relevant period, the defendant
10    failed to notify the relevant authorities, and his actions
11    actively concealed the conspiracy.
12    BY THE COURT:
13    Q    All right.  Mr. Ross, did you listen to the statement
14    given by the U.S. Attorney?
15    A    Yes, I did, sir.
16    Q    Was her statement correct?
17    A    Yes, sir.
18    Q    You kind of hesitated there, Mr. Ross.  Is it correct, or
19    do you have --
20    A    Yes, sir.
21    Q    Okay.  Do you understand the nature of the charge against
22    you and the maximum penalty you face?
23    A    Yes, sir.
24    Q    And how do you plead to the superseding information?
25    A    Guilty.
```

1    Q    Did you, in fact, commit the offense as charged?

2    A    Repeat that?

3    Q    Did you, in fact, commit the offense as charged in this

4    superseding information?

5    A    Yes, sir.

6              THE COURT:  Okay.  And Mr. Short, do you know of any

7    reason why I should not accept the guilty plea?

8              MR. SHORT:  No, Your Honor.

9              THE COURT:  All right.  I find that the offense as

10   charged in count 1 of the superseding information was

11   committed by the defendant, Ralph Ross.  I also find that

12   Mr. Ross is entering this plea of guilty voluntarily, with

13   full knowledge of his rights, the facts and the consequences

14   that he faces.  And for those reasons, I accept the guilty

15   plea.

16             Does the government move to dismiss the underlying

17   indictment against Mr. Ross?

18             MS. MAZZANTI:  Yes, Your Honor, we do move.

19             THE COURT:  Then that's granted.

20             Now, before I get to what we do from here,

21   Ms. Mazzanti, because I'm going to get into sentencing

22   Mr. Ross and the presentence report and all of that, there is

23   a petition to revoke pretrial release that's been pending,

24   docket number, document number 1991.  And does the government

25   want me to take any action on that now?

1          MS. MAZZANTI:  Your Honor, we just request his

2    continued detention, and it depends on if Mr. Ross intends to

3    contest the petition in terms of his remaining in custody.  We

4    will put on~-- I have exhibits prepared and ready if the Court

5    needs to take up the issue of bond at this time.

6          THE COURT:  Okay.  Mr. Short, had you planned to ask

7    to have Mr. Ross released pending sentencing?

8          MR. SHORT:  Yes, Your Honor.

9          THE COURT:  Okay.  And so I think that's an issue we

10   need to take up.

11         MS. MAZZANTI:  Yes, Your Honor.

12         And we can -- I'll defer to the Court on how the

13   Court prefers to do it.  I think the exhibits are self-

14   explanatory, but I can put the probation officer up to discuss

15   the exhibits, or I can proffer the exhibits and proceed by way

16   of attorney proffer.  It's within the discretion of the Court,

17   and so, you know, typically we leave that to the judge to

18   decide, but the probation officer is ready to testify if

19   necessary.  But she would just be essentially --

20         THE COURT:  Walking me through the exhibits.

21         Have you shared those with Mr. Short?

22         MS. MAZZANTI:  I did, Your Honor.

23         THE COURT:  I'll take the exhibits and just take a

24   look at them.

25         And for purposes of the record, Mr. Short, do you

1  want to lodge any objections to me receiving the exhibits?  I

2  have government's exhibit number 1, 2, 3 and 4.  Do you want

3  to object to any of these?

4          MR. SHORT:  No, Your Honor.  And I know that was

5  your specific question.

6          To get a little further, I'm certainly happy to

7  dispute this issue for the Court via attorney proffer, if it

8  pleases both sides and the Court.  However the Court wants to

9  do that.  I'm not contesting the procedural nature of how the

10 information gets to the Court, just the ultimate decision.

11         THE COURT:  You're contesting what's contained in

12 the documents.

13         MR. SHORT:  Well --

14         THE COURT:  More so than me receiving the documents

15 and looking at them?

16         MR. SHORT:  Well, that is fair to say.  I don't

17 contest that those individuals would say that if called.  I

18 contest that that actually happened as it was said, but I also

19 am saying that the bigger issue of regardless of what's

20 contained in those documents, whether Mr. Ross should be

21 released pending sentencing is still something that I wish to

22 debate.

23         THE COURT:  Okay.  Let me take a look at these

24 quickly.  Give me just a few seconds.

25         MS. MAZZANTI:  Your Honor, just by way of proffer,

```
 1   as to the exhibit 4, the relevance of that primarily is it's
 2   in the supplement to the petition to revoke, we added the
 3   allegations that he violated the no contact order, which is
 4   why we have government's exhibit 3, which shows that he was
 5   ordered to have no contact with the victim by the state judge.
 6   And then government's exhibit 4, the Perry County sheriff's
 7   office report, I would proffer that the probation office
 8   advises Mr. Ross failed to timely report his contact with law
 9   enforcement.  They had to bring that up to him.
10            And so I think government's exhibit 1 is self-
11   explanatory in that the victim reports that the defendant
12   assaulted her, punched her, tried to choke her out, felt like
13   her neck was going to snap, held her head against the
14   headboard causing a black eye, and that he, when he runs out
15   of meth, he always tries to pick fights with her.  She also
16   provided the victim statement that is listed, the witness
17   statement that is consistent with that.  In her -- in the
18   written statement, she also completed a lethality screen with
19   the law enforcement officer where she alleges domestic
20   violence, as well.
21            The government's exhibit 2 are excerpts from the
22   communications that the defendant had with the victim and
23   others, and the victim again confirms that he beat her.
24   There's also references to the defendant -- to the victim
25   going to Colorado and the defendant wanting to go to her,
```

1    despite the pending charges.  There's also reference to drug

2    use throughout these communications.  And so those

3    communications also demonstrate his further violation of the

4    no contact order.

5           THE COURT:  Couple questions here, and I'll ask both

6    of you.  Okay.  Is there a pending state action now against

7    Mr. Ross?

8           MS. MAZZANTI:  My understanding is that there is,

9    Your Honor, the last I checked, and that he's actually in

10   primary state custody.  And he's -- he was brought here on a

11   writ.  He is actually in Carroll County's custody.  We had to

12   writ him in.  So I don't know, I assume he would probably try

13   to bond out if this Court allowed him out, but he, even if the

14   Court decided to release him today, he wouldn't go home today

15   is my understanding, unless there's something I don't know.

16          THE COURT:  Second thing is on a misprision case, I

17   think the three years is the most I can give him anyway.

18          MS. MAZZANTI:  It is.

19          THE COURT:  And so then the question is, yeah, I

20   mean, at this point I have no idea what his guidelines range

21   would be, and is it likely that he will have a guidelines

22   range that gives him prison time.

23          MS. MAZZANTI:  We will be asking for prison time,

24   Your Honor.

25          THE COURT:  Okay.  And, I mean, I don't know what

his background is or anything, so I don't know what that looks
like.  And so essentially what we're arguing about or what the
issue is is whether he's given an opportunity to go home until
he comes back for sentencing.  And, of course, I haven't
decided whether I'm sending him to prison anyway, so I don't
know, but if there was no likelihood that he was going to go
to prison, then of course I'd lean very strong in denying the
motion and let him go home.  If there's a likelihood that he
is going to prison, then all we're arguing over is whether he
gets a chance to go home and stay at home until he goes.  And
so, to me, when that happens, unless there's -- I can go
either way on that.

        Let me hear from Mr. Short.

        MR. SHORT:  And, Your Honor, I have essentially two
categories of responses.

        First to the documents and the issue at hand that
were introduced, and I guess I'll start with that.  First of
all, to be very clear, I know the government has continued to
press this issue of a violation of a no contact order, but if
you actually read the order of the Court, it says, "upon
release."  And, in fact, if you read the text messages, or the
messages between my client and the alleged victim, where
they're discussing this, he even says in those messages, I can
only not contact you upon release.

        And so the law is the law.  He knew it very well,

1    and the documents very clearly explain that it's a condition

2    of his release, not his confinement.  And so there's no -- and

3    I know that's not the biggest issue here, I'm not pretending

4    it is, but I want to be clear that he's not out there

5    intentionally violating this contact with her.  She's also

6    initiating contact with him, and I think that speaks volumes

7    about her level of fear.

8            As the prosecutor also stated, she's left to

9    Colorado primarily because she has a warrant out for her for

10   residential burglary.  But regardless, she's in Colorado, or

11   she's probably going to be in custody when they find her.  So

12   the -- if this Court were to keep my client here as a

13   condition, which I'm sure this Court would, he would continue

14   to report to probation like he has for three years.  He would

15   also continue to drug test, and to my knowledge he has not

16   failed a single drug test in three years of his release.  And

17   so as far as those allegations would go, it's been three full

18   years, and he's been compliant.  And I absolutely understand

19   the severity of what the Court read and looked at; however,

20   the Court obviously understands the issue very well.

21           I do have some additional information I would like

22   to give the Court, but I would like the courtroom to be closed

23   or the ability to approach the bench in a sealed manner.

24           THE COURT:  And is this information that should not

25   be disclosed to the public for some reason that's recognized

1   by law, or is it that you --

2            MR. SHORT:  Correct.

3            THE COURT:  -- don't want your client to be

4   embarrassed?

5            MR. SHORT:  Recognized by law, Your Honor.

6            THE COURT:  Let me say this.  I guess maybe I look

7   at this stuff very practically.  I know that -- because I used

8   to do city court over in Helena, and people get to knocking

9   and fighting, and I have -- one time Diane Robinson -- I

10  forget Higgins's first name, but Higgins -- Diane came home

11  one night and had been out hanging with a girlfriend, kicked

12  down the door and beat up on Higgins, and they had four

13  children together.  And Higgins came to court and said he

14  didn't want her to go to -- to be locked up because, you know,

15  he needed her home to take care of the kids, regardless of her

16  kicking in the door and whipping up on him.  Now, we

17  prosecuted Diane anyway.  And then sometime after that, Diane,

18  of course, killed one of her girlfriends and went to prison

19  for murder, but that's a different store.

20           And so I see these all the time, people get to

21  fighting and arguing, and then they say, but I don't want

22  anything to happen to the other person.  That's something that

23  happens.  And to be truthful with you, if it were just her

24  living out in Castle Rock, Colorado, and him living here and

25  them talking on the phone, even if he had a no contact order,

1   if I knew he was going home after sentencing, I probably

2   wouldn't put him in jail pending sentence; I'd let the state

3   court handle that.  If they want to send him to jail for that,

4   then that's fine, but I don't know that I would.

5          Here's the issue.  I got a man who was apparently

6   indicted in federal court, and while he was indicted, at least

7   from what the girlfriend says and what the police officers say

8   that went to the house, his girlfriend sees him on the phone

9   one night late and says, What are you doing over there talking

10  on the phone, then he starts whipping up on her.  And then

11  when the police come -- and this is what the documents say.  I

12  don't know if that's true or not.  And then when the police

13  show up he says something to the extent that they were out in

14  the brush and a log hit her, or maybe she bumped her head

15  against the headboard of the bed, and the story was changing,

16  and I get these pictures of her with a bruise on her eye, and

17  I think there's another little mark.  And then there's this

18  discussion of drugs back and forth, you know.

19         And to be honest, Ms. Mazzanti, what it appears

20  Mr. Ross is saying is that he has a problem, and it appeared

21  from -- it didn't appear to me like he was glorifying in the

22  fact that he had been doing -- he had done drugs.  He was

23  mentioning, Look, I'm trying to work on this, but I've been

24  doing this.  And so I don't know if it were just a drug

25  problem that he's really struggling with that I would lock him

1  up pending sentencing if I knew he was going home.

2          But here are the two big elephants in the room.  The

3  big elephant in the room is is that if he has a guidelines

4  range that calls for him to be -- to get some prison time for

5  this, I mean, not knowing anything else about his history, I'd

6  probably give it to him.  And so whether he goes home --

7  whether he stays locked up now and it counts towards his

8  prison time or not, who knows, that's a toss up.

9          And then the second thing is is that the allegation

10 is -- and from what -- even in her conversations to him in the

11 text messages were about him having whipped up on her.  And so

12 I don't know that she would -- if it was a charade or a lie,

13 at least as I sit here today not knowing anything else, that

14 she wouldn't continue the charade or the lie in her

15 conversations back and forth with him about what you did to

16 me.  And it's not like he said well, no, I didn't, I did not

17 hit you.  He doesn't say that.

18          So this indicates that what she said, you know, I'm

19 sitting over here and I catch him on a cellphone late at night

20 and I asked him about it.  Now, he might have been high, and

21 we understand that that can cause all kinds of problems, but

22 then he hauled off and whipped up on her while he's out on a

23 federal indictment.

24          So then the question as a judge, do I send him back

25 home.  And Mr. Short, I don't think I do.  I think I'll hold

1  him, but I'll let you come to the bench and we can -- well,

2  we'll clear the courtroom so we -- you know, this is COVID,

3  times of COVID.  We don't want everybody at the bench

4  breathing on each other.  But I'm saying that's kind of where

5  I am right now, but let me hear what your information is

6  before I solidify that point of view.

7          And let's do this.  Mr. Short says that he has

8  confidential information that can't come out in a public

9  forum, and so I would ask that everybody who is not specific,

10  who's not a lawyer involved in the case, or the court reporter

11  or Mr. Ross step out for a few seconds.  We'll call you right

12  back in as soon as Mr. Short gives me the information.

13          (Proceedings under seal filed under separate cover.)

14          THE COURT:  Okay.  We're back in the public session.

15          Mr. Ross, from this point forwarded what will happen

16  is probation will come out and perform a presentence

17  investigation, and probation will look into your criminal

18  history, drug and alcohol history, education history, work

19  history, all those types of things, and will prepare a report,

20  and in that report it will have your guidelines range, and it

21  will have all your other information in it.

22          When the report is prepared, a copy will go to

23  Mr. Short, and he'll probably sit down with you and go over it

24  or send it to you.  What I ask you to do is look at it very

25  closely to make sure that the information in that report is

1    accurate.  If there's anything in that report that's not

2    accurate, then Mr. Short will file an objection for you, but

3    he'll need you to tell him what exactly is correct or not.

4    And once he files those objections, we'll take those

5    objections up, then we'll finalize the report, and once the

6    report is finalized we'll bring you back in for sentencing.

7              Mr. Short has requested that we work as quickly as

8    we can to issue the report, and let me ask probation this.  Do

9    you -- and I know you probably have a bunch of other things

10   you're working on.  Here we have a gentleman who has a

11   statutory maximum sentencing range of three years.  He has

12   been -- he hasn't been incarcerated very long, but he's

13   waiting, he'll be waiting in the detention facility until he

14   is sentenced.  Is there a way to compress that amount of time

15   that we spend on putting together his report so we can get him

16   back?

17             Tony maybe you're the one to ask.

18             PROBATION OFFICER:  Yes, sir.  We normally take

19   three months between the plea and sentencing typical

20   timeframe, but for an expedited report we would have the

21   report done in about a month, and we would cut the objections

22   response time and our time to revise the report from three

23   months down to two months.  We could try to do it in that

24   amount of time.

25             THE COURT:  And so I'll direct -- I'll ask

1  Mr. Guerra to have probation prepare that report as quickly as

2  he can.

3           MR. SHORT:  Your Honor, I thank you, and I thank you

4  Mr. Guerra.

5           THE COURT:  Also for the record, Mr. Ross' request

6  to be released pending sentencing -- and we've gone back and

7  forth about the merits of that position -- is overruled, just

8  so you have a record on that.  However, I made the statement

9  while we were in the sealed portion of the hearing that my

10 first thought is is that from the time from today to the time

11 he is sentenced will either be run concurrently, or if the law

12 does not allow me to run it concurrently because he is now in

13 detention for a state violation, I will vary his sentence by

14 the amount of time that it takes from today until sentencing.

15 Of course, the government will object to that, and we'll take

16 that up, but that's my first thought as we finish up today.

17           Is there anything else we need to take up on this

18 hearing before we recess?

19           MS. MAZZANTI:  No, Your Honor.

20           MR. SHORT:  No, Your Honor.

21           THE COURT:  All right.  Let's recess, and let's get

22 started with our next hearing.

23      (Proceedings concluded at 11:42 a.m.)

24                          *  *  *  *  *

25

```
 1                        *  *  *  *  *

 2                        I N D E X

 3  Testimony of Ralph A. Ross

 4            Examination by the Court              2

 5                        *  *  *  *  *

 6                      E X H I B I T S

 7  (None.)

 8                        *  *  *  *  *

 9               CERTIFICATE OF REPORTER

10       I, Stephen W. Franklin, Registered Merit Reporter, and

11  Certified Realtime Reporter, certify that the foregoing is a

12  correct transcript, to the best of my ability, from the record

13  of proceedings in the above-entitled matter.

14       Dated this 23rd day of JULY, 2021.

15

16       /s/Stephen W. Franklin
         _____
17       Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```