```
             IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF ARKANSAS
                       CENTRAL DIVISION


UNITED STATES OF AMERICA,              No. 4:17-CR-00293-BSM-51

              Plaintiff,
                                       August 4, 2021
    V.                                 10:05 a.m.

BRADLEY CHAMBERS,
                                       Little Rock, Arkansas
              Defendant.


        TRANSCRIPT OF MOTION TO WITHDRAW AS COUNSEL
          BEFORE THE HONORABLE BRIAN S. MILLER,
              UNITED STATES DISTRICT JUDGE


APPEARANCES VIA VIDEO CONFERENCE:  BRADLEY CHAMBERS, DEFENDANT

APPEARANCES IN COURTROOM:

On Behalf of the Government:

    LIZA BROWN, Assistant United States Attorney
         U. S. Attorney's Office
         P.O. Box 1229
         Little Rock, Arkansas 72203-1229


On Behalf of the Defendant:

    MATTHEW PORTER McKAY, Attorney at Law
    CAMILLE CASHION, Attorney at Law
         McKay Law Firm, PLLC
         201 E Markham Street, Suite P-70
         Little Rock, Arkansas 72201


    Proceedings reported by machine stenography; transcript
prepared utilizing computer-aided transcription.
```

Suzanne M. McKennon, CSR, CRR, RMR
United States Court Reporter
suzanne_mckennon@ared.uscourts.gov    (501) 604-5165

1        (Proceedings commencing in open court at 10:05 a.m.)
2            THE COURT:  All right.  Let's call the case.  This
3   United States of America versus Brad Chambers.  The case number
4   is 17-CR-293.  This is a -- well, in the courtroom for
5   Mr. Chambers we have present Counsel Matthew McKay and Camille
6   Cashion; for the United States, we have Liza Brown.
7        We are here this morning on Mr. McKay's motion to
8   withdraw -- or second motion to withdraw as Counsel, and that
9   is document number 2127, and on Ms. Cashion's motion to
10  withdraw as Counsel, and that is document 2167.
11       Let me say this:  Mr. Chambers is the only one of us that
12  is not in the courtroom.  He is in detention.
13       Mr. Chambers, can you hear us?  Or can you hear me?
14           THE DEFENDANT:  I can't hear anything.
15           THE COURT:  Okay.  And so you can't even hear me
16  speaking?
17           THE DEFENDANT:  I can hear -- I can tell that -- I
18  can tell that somebody is talking, but I can't tell who or what
19  anybody is saying.
20           THE COURT:  Okay.  Here, we need to turn that
21  microphone back on so he can hear us.  Hold on just one second.
22       Mr. Chambers, can you hear me now?
23       Very good.  We had the microphone turned off where you
24  could hear us.  Okay.  You are appearing from a detention
25  center.  Which one are you in?

1          THE DEFENDANT:  Pulaski County.
2          THE COURT:  From Pulaski County.  And you understand
3   that this is your lawyers' motion to withdraw as Counsel.  And
4   it's my understanding -- and let me go over the history of
5   this.  This was a case that was indicted in 2017.  And you
6   entered a plea of guilty, from what I understand, on December
7   the 17th of 2020.  You were represented by Mr. McKay and by
8   Ms. Cashion.
9          It appears -- and I know that Mr. McKay moved -- after
10  entered your plea of guilty, he moved to withdraw as Counsel,
11  and I denied it.  He filed a second motion to withdraw, and his
12  motion essentially says that there is a conflict of interest
13  that has come up between you and him and that you intend to
14  take a course of action that is contrary or opposed to what he
15  has advised.  And so he's asked to be removed.
16         THE DEFENDANT:  Yes.
17         THE COURT:  He's asked to be removed and to allow
18  another lawyer to be appointed.
19         Now, Ms. Cashion's position is that, look, I never really
20  knew Mr. Chambers.  I was just an assistant Counsel for him.
21  Essentially, I was the one who used my ability to file
22  electronic filings and those types of things on behalf of
23  Mr. McKay's law firm, to file things.  I have now gone into
24  practice somewhere else.  I'm doing --
25         What is it?  Bankruptcy law?

1     MS. CASHION:  Correct, Your Honor.
2     THE COURT:  She's doing noncriminal law.  And so if
3  Mr. McKay is going to withdraw, she has to withdraw, too,
4  because she cannot continue on on the docket representing you.
5     Now, here's the thing -- and let me put this on the table.
6  Mr. McKay, of course, you have not laid out what the conflict
7  is.
8     MR. MCKAY:  Yes, sir.
9     THE COURT:  And you can't really do that in front of
10  the world.  But from your allegation it appears that you've
11  given some advice to Mr. Chambers, and he doesn't necessarily
12  agree with the advice given.  I would say to you that at this
13  late point -- and let me say this, the trial of this case,
14  although Mr. Chambers already pled guilty.  We're just waiting
15  for sentencing.  The trial of this case is right at a month
16  away.  This is a case that had 55 defendants, and we are down
17  to three.  We're expecting this trial to last anywhere from
18  four to seven weeks.
19     And not that, Mr. Chambers, you're going to be involved in
20  the trial as a defendant, but here's what my concern is,
21  Mr. McKay:  My concern is that quite often we see defendants
22  who disagree with their lawyers.  And, you know, the lawyer
23  might say, "Well, hey, I'm telling you if you do 'X,' it's
24  going to cause an adverse reaction.  If you do this, here's how
25  you're going to end up."

1    And the client says, "No, I don't care.  This is what I
2 want to do."
3    And, Mr. Chambers, let me give you an example.  I had a
4 case in which Ron Davis represented a man on a dope case.  And
5 I'll use Ron Davis's name; he wouldn't mind.  Ron advised the
6 man to take a plea, and he had worked out a plea where he would
7 get five years of imprisonment.  And I am just saying this only
8 one occasion.  I see this all the time.
9    The man said, "No, I didn't do it.  I'm not going to enter
10 a plea of guilty."
11    He and Ron disagreed.  I gave him a new lawyer.  And Ron
12 was his second lawyer because he had one before Ron who he
13 didn't agree with.
14    We appointed Jennifer Horn, the public defender, who came
15 in and represented him.  And now that man is doing 35 years in
16 prison.  Ron told him, "If you do 'X,' you're going to prison
17 for much longer time than what I'm telling you."
18    He said, "That's what I want to do."  And he had a right
19 to do it.
20    And so, Mr. McKay, my point to you is:  If Mr. Chambers is
21 not going to follow your advice --
22         MR. McKAY:  Yes, sir.
23         THE COURT:  -- and he says, "Look, I don't want to do
24 this," or "I want to do this," then when he's sitting down
25 there in 100 years cussing you out and filing motions with me,

1  saying that "Judge, you know, it wasn't explained to me, and I
2  didn't know," you know what I'm going to do, Mr. McKay?  I'm
3  going to deny the motions.
4       Because the man who Ron Davis represented -- I say this
5  just as an example.
6           MR. McKAY:  Yes, sir.
7           THE COURT:  Ron Davis told him, "Five years.  I got a
8  deal."
9       The man said, "No, I don't want to listen to your advice."
10      And he's doing 35 -- I think it's either 32 or 35.  Once
11 every three or four months, I get a motion from that man
12 saying, "Judge, I want you to reduce my sentence.  I didn't
13 understand what I was doing.  Somebody didn't tell me."
14      And if there is a quick text response, "Deny."
15      So I say this, Mr. McKay -- I don't think at this point,
16 unless you tell me that there is some real conflict --
17          MR. McKAY:  Well, Your Honor, do I need to stand, or
18 can I sit?
19          THE COURT:  No.  You can sit.
20          MR. McKAY:  Your Honor, he's literally fired me
21 twice.  And on top of that, he's accused me of various
22 misconduct, mostly on communications.  So I do feel conflicted.
23 I feel conflicted because I've been fired by my client.  That's
24 my issue.
25      Now, the disagreement on the course of action is part of

1  it.  But mostly it's I've been fired twice in no uncertain
2  terms.
3              THE COURT:  Okay.  So your position is -- and I think
4  I read that in one of the motions that -- I think it might have
5  been in Ms. Cashion's motion where she points out that, in
6  addition to the other things, he's told us that he doesn't want
7  us, and he's firing us.
8              MR. MCKAY:  Yes, sir.
9              THE COURT:  Now, this is a case where Mr. Chambers
10 was -- he retained you; right?
11             MR. MCKAY:  Yes, sir.
12             THE COURT:  And so the question would be:  Do I
13 require you to continue on in the representation despite the
14 fact that your lawyer -- that your client has fired you?
15             MR. MCKAY:  And that's the reason I wanted to have a
16 hearing, to put it on the record, because I'm in a conflicted
17 position.  I'll do whatever the Court wants me to do, but I'm
18 in a conflicted position.  I need a record having said that, at
19 least.
20             THE COURT:  Okay.  And, Mr. Chambers, this comes up
21 from time to time before somebody has actually been found
22 guilty.
23             THE DEFENDANT:  Yes, sir, Your Honor.
24             THE COURT:  And when that happens, I mean, what does
25 the judge do?  The judge will grant the motion and allow the

```
 1  lawyer to go on about his business.  And if the client can't
 2  afford -- cannot afford Counsel, we'll appoint Counsel.
 3          THE DEFENDANT:  Yes, sir.
 4          THE COURT:  I will tell you, Mr. Chambers, the
 5  question I have here, to be very honest with you, is is that
 6  because we had so many defendants in this case, I think we've
 7  gone through the CJA panel.
 8          THE DEFENDANT:  My --
 9          THE COURT:  And, in fact, --
10          THE DEFENDANT:  I'm sorry.  I didn't -- I didn't hear
11  that.
12          THE COURT:  Okay.  Because we had so many defendants
13  in this case, I think we've gone through the panel of lawyers
14  we assign to handle cases.  So what I would have to do -- and
15  here's the thing, if you don't want Mr. McKay to continue on in
16  his representation, I mean, the plea has been entered.  At this
17  point it's just an issue of sentencing.
18      And I guess there is an issue of what happens at trial in
19  a month, you know, if you were going --
20          THE DEFENDANT:  Sir --
21          THE COURT:  -- if you were going to testify or if you
22  were not --
23          THE DEFENDANT:  Your Honor, I've had problems -- I've
24  had these problems since -- for the last year and a half.  I've
25  never received any mail whatsoever regarding my -- regarding my
```

commitment or my upcoming hearings, two or three times.

(The video conference with the defendant ended abruptly.)

THE COURT: Let's see if we can get them back on.

Mr. Chambers, you cut off when you were telling me that you haven't been getting correspondence or anything telling you what's going on.

THE DEFENDANT: Okay. Can y'all hear me?

THE COURT: We can. We can hear you. Yes, sir.

THE DEFENDANT: Okay. I said he's made me -- he's made appointments with me and through my family to come see me and consult with me, and he don't show up. I have no -- I have no way of contacting him -- like I can't call him. It's like his number is blocked.

So the only way I can contact him is to get his secretary to three way, which is against the rules for me. It could get me in trouble. He can't -- he don't remember -- he's never took any notes whatsoever. He can't remember what my offer was prior to my p.s.i. which is not the same, because it's not the same after I got my p.s.i. back.

And when he had -- if you'll remember, he gave me no notice prior to my change of plea hearing. I didn't even know I was coming to a change of plea hearing that -- you rescheduled that.

And then there was stuff that I asked him for. Like, this was a state case before it was a federal case, and I asked

1  for -- I understand he can't get a lot of -- a lot of the stuff
2  out of my motion that is not available to me, but the motion
3  from the state was available to me.  And I couldn't -- I
4  couldn't get him to get that for me.
5      And when he didn't show up, we were trying to go over --
6  we were trying to go over my p.s.i.  The first two -- the
7  first -- we were trying to go over my plea before I pleaded.
8  The first time, he didn't show up because he had a flat tire.
9  And the second time, he came down here without an ID so the
10 jail wouldn't let him in.
11     It's been this the whole time.  It's just one thing right
12 after another.  I just felt like maybe he was just too busy, or
13 I'm not sure.
14          THE COURT:  Let's do this.  Ms. Brown?
15          MS. BROWN:  Thank you.
16          THE COURT:  Does this -- if I were to relieve Counsel
17 and appoint -- I've got to find somebody to do it.  But if I
18 appoint somebody to come in and represent Mr. Chambers in his
19 sentencing, does that cause any problems for the government?
20          MS. BROWN:  It could potentially, Your Honor, so --
21          THE COURT:  Is it primarily because of who might be
22 available to testify at trial?
23          MS. BROWN:  Yes, Your Honor.  And the PSR -- his
24 objections to PSR haven't become relevant until a sentencing
25 hearing is scheduled, so -- and I am not privy to those

communications, but there was a plea agreement in this case. And, yes, it will, Your Honor, because it will be difficult to get an attorney up to speed and continue to prepare for hearing -- you know, for our trial that starts in 30 days. It would be very difficult to get all of that done.

    And Mr. McKay and I talked a lot. We sat down with Mr. Chambers several times and discussed his case. So I just want the Court to be aware that there have been thorough discussions with him.

    THE COURT: So you are saying you have been present?

    MS. BROWN: In proffer agreements, yeah. I can't -- if we could go under seal, that would be great, Your Honor, because the stuff I am going to say does not need to be broadcasted.

    THE COURT: Okay. Let's go under seal.

  (Proceedings had under seal.)

    THE COURT: Here's what my thought is -- and I think I've already shown my hand to a certain degree. I mean, I have a trial that we've been working on now for four years, and it's a trial that we've had a lot of things go on from the day it was indicted up until now. We've had a lot of hearings and with the various defendants, and we're ready for trial, for the most part.

    I don't think I take any action that would in any way cause for a delay of that trial or that would in any way impede

```
 1  our ability to proceed in the trial.
 2         And so I'm going to withhold ruling on a motion to
 3  withdraw -- both motions -- until after trial.
 4         I will -- Mr. McKay and Ms. Cashion, I will tell you that,
 5  once we've tried the case, I probably will grant the motions to
 6  withdraw and get somebody in here who would represent
 7  Mr. Chambers from that point and to the point of sentencing who
 8  can make arguments for him.  And those people would probably
 9  come in here and bash your work --
10              MR. MCKAY:  I am sure they would, Your Honor.
11              THE COURT:  -- judging by what Mr. Chambers is
12  saying.
13              MR. MCKAY:  That was the nature of the conflict.  I
14  had to put it on the record.
15              THE COURT:  Well, that's fine.  But you've got to
16  understand these are things we deal with all the time.
17              MR. MCKAY:  Yes, sir.
18              THE COURT:  And I will rule, based on the arguments I
19  hear and what the evidence indicates.  But I don't think I can
20  take action now that will impede our ability to try the case.
21  And I know from a lawyer's standpoint, because I've had it
22  happen before, where I'm in there representing a client who
23  disagrees with me and who may not even, well, want me, but here
24  he's not the defendant at trial.
25              MR. MCKAY:  Yes, sir.
```

```
1              THE COURT:  So his rights, the protection of his
2    rights, will not -- at this point, will not come into play
3    until sentencing.  And so all you would do at trial is, if a
4    question is asked that you think is objectionable, you would
5    object to it or you would ask to limit certain testimony.  And
6    I have faith that you'll do that.
7              MR. MCKAY:  Yes, sir.
8              THE COURT:  And so that's going to be my position,
9    Mr. Chambers, and that will be my position to the lawyers and
10   to Ms. Brown.  We'll proceed on.  I will not rule on the
11   motions until after trial.
12        Now, if anybody wants to be heard further, you can make a
13   record, but that's essentially going to be my position as of
14   now.  I will withhold ruling until after trial.
15        Anybody have anything you want to put on the record?
16             MS. BROWN:  No, Your Honor.
17             MR. MCKAY:  No, Your Honor.
18             THE COURT:  Okay.  All right.
19        When is our next hearing?  Is it 11:30.
20        (A discussion between the Court and Courtroom Deputy.)
21             THE COURT:  Now, Mr. Chambers, if you want to speak
22   with your lawyer before he leaves so that you all can kind of
23   discuss what the ruling or what I'm doing is, we'll all step
24   out.
25        I'll let you have one final conversation with Mr. Chambers
```

```
1   before you go.
2           THE DEFENDANT:  Yes, sir.  Thank you, Your Honor.
3           THE COURT:  Yes, sir.
4      (Adjourned at 10:32 a.m.)
5                            -oOo-
6
7
8
9
10
11
12
13                    REPORTER'S CERTIFICATE
14
15
16     I certify that the foregoing is a correct transcript of
17  proceedings in the above-entitled matter.
18
19  /s/ Suzanne M. McKennon, CSR, CRR, RMR
    _____    Date:  08/12/2021
20  United States Court Reporter
21
22
23
24
25
```