```
 1                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
 2                         CENTRAL DIVISION

 3     UNITED STATES OF AMERICA,

 4                    Plaintiff,      No. 4:17CR00293-BSM-49

 5
       v.
 6

 7     CHRISTOPHER BUBER,              Tuesday, August 25, 2021
                                       Little Rock, Arkansas
 8                    Defendant.       1:07 p.m.

 9              TRANSCRIPT OF CHANGE OF PLEA HEARING
                BEFORE THE HONORABLE BRIAN S. MILLER,
10                 UNITED STATES DISTRICT JUDGE

11
       APPEARANCES:
12
       On Behalf of the Plaintiff:
13
            MS. STEPHANIE MAZZANTI, Assistant United States Attorney
14          MS. LIZA JANE BROWN, Assistant United States Attorney
              United States Attorney's Office
15            Eastern District of Arkansas
              Post Office Box 1229
16            Little Rock, Arkansas 72203-1229

17
       On Behalf of the Defendant:
18
            MS. CRYSTAL J. OKORO, Attorney at Law
19            Crystal Okoro Law Firm
              Post Office Box 1118
20            North Little Rock, Arkansas  72115-1118

21          MR. RICKEY H. HICKS, Attorney at Law
              2100 Main Street
22            Little Rock, Arkansas  72206

23     Defendant present

24
            Proceedings reported by machine stenography.  Transcript
25     prepared utilizing computer-aided transcription.
```

Elaine Hinson, RMR, CRR, CCR, United States Court Reporter
elaine_hinson@ared.uscourts.gov (501) 604-5155

P R O C E E D I N G S

THE COURT:  This is United States of America versus Christopher Buber.  The case number is 17CR293.  Mr. Buber is in the courtroom with his lawyers, Crystal Okoro and Rickey Hicks. The United States is being represented by Stephanie Mazzanti and Liza Brown.

Mr. Buber, before we get started, would you raise your right hand, and I'll swear you in.

(Defendant sworn.)

THE COURT:  Mr. Buber, as you can tell, you are sitting in the courtroom, and I'm not.  I am 120 miles away.  I was not scheduled to be in Little Rock today when I heard that we were going to take a plea.  Do you have any objection to me participating remotely and not being in the courtroom?

THE DEFENDANT:  No, sir.

THE COURT:  You've been represented by Ms. Okoro I think from the beginning, and I appointed Mr. Hicks to come into the case last week.  Are you satisfied with the legal representation you've received?

THE DEFENDANT:  With Ms. Crystal, yes, sir.

THE COURT:  And you haven't had a chance to get to know Mr. Hicks yet.

THE DEFENDANT:  That's correct.

THE COURT:  Okay.  Very good.  Now, I'm going to ask you a little background, get a little background information

1   from you, Mr. Buber.  First, how old are you?

2          THE DEFENDANT:  Thirty-six.

3          THE COURT:  And how much education do you have?

4          THE DEFENDANT:  Twelfth grade.

5          THE COURT:  Have you had any drugs or alcohol or any

6   medication in the last 24 hours that would make it difficult for

7   you to understand what we're doing?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Do you understand why you are in the

10  courtroom this afternoon?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  Ms. Okoro, have you had a chance to

13  talk to Mr. Buber today?

14         MS. OKORO:  I have, Your Honor.

15         THE COURT:  Is there anything about him that would

16  lead you to believe that he is not competent to go forward with

17  the plea?

18         MS. OKORO:  No, Your Honor.

19         THE COURT:  All right.  I find that Mr. Buber is

20  competent to go forward with the plea.

21      Now, Mr. Buber, as you understand, we are scheduled for

22  trial in a couple of weeks.  And it's my understanding that you

23  want to withdraw your previous pleas of not guilty and enter

24  pleas of guilty to Counts 6, 7, 8 and 9 of the second

25  superseding indictment of September 3, 2019.  Is that true?

1       THE DEFENDANT:  That's correct.

2       THE COURT:  Okay.  I know you've read these counts,

3  but I'm going to read them again so we have a record of what you

4  are pleading guilty to.

5       Count 6 says that from on or about June 4, 2017, through on

6  or about June 6, 2017, in the Eastern District of Arkansas,

7  Christopher Buber aided and abetted -- well, it lists you and

8  several other defendants.  And it says that those defendants

9  aided and abetted by each other and others known and unknown to

10  the grand jury, for the purpose of gaining entrance to and

11  maintaining and increasing position in the New Aryan Empire, an

12  enterprise engaged in racketeering, and that they did kidnap

13  H.D., in violation of Arkansas law.

14       Count 7 says that from in or about or on or about June 4,

15  2017, through on or about June 6, 2017, in the Eastern District

16  of Arkansas -- and it lists several defendants, including you,

17  Mr. Buber -- aided and abetted by each other and others known

18  and unknown to the grand jury, for the purpose of gaining

19  entrance to and maintaining and increasing position in the New

20  Aryan Empire, an enterprise engaged in racketeering activity,

21  did assault H.D. with a dangerous weapon; that is, a bat and a

22  knife.

23       Count 8 says that from on or about June 4, 2017, through on

24  or about June 6, 2017, in the Eastern District of Arkansas --

25  and it lists those defendants again, including you, Mr. Buber.

1   It says that you all aided and abetted by each other and others

2   known and unknown to the grand jury, for the purpose of gaining

3   entrance to and maintaining and increasing position in the New

4   Aryan Empire, an enterprise engaged in racketeering activity,

5   did maim H.D. with a hot knife, causing permanent disfigurement.

6        Finally, Count 9 says that from on or about June 4, 2017,

7   through on or about June 6, 2017, in the Eastern District of

8   Arkansas, the defendants -- and it lists those same defendants

9   or a number of defendants plus you, Mr. Buber.  And it says you

10  all aided and abetted by each other and others known and unknown

11  to the grand jury, for the purpose of gaining entrance to and

12  maintaining and increasing position in the New Aryan Empire, an

13  enterprise engaged in racketeering activity, did kidnap C.L., in

14  violation of Arkansas law.

15       Now, is that what you want to enter pleas of guilty to, Mr.

16  Buber?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Okay.  And I'm going to go over all of

19  your rights with you, and I know Ms. Okoro has gone over those

20  with you.  But I'm going to go over all of your rights just to

21  make sure that you understand what your rights are and what

22  rights you are giving up by entering a plea of guilty.  You

23  understand, Mr. Buber, that you are not required to enter pleas

24  of guilty to these counts?

25            THE DEFENDANT:  Yes, sir.

1      THE COURT:  And you understand that you can still go

2  forward with your trial, which is scheduled for September the

3  7th.  And if you were to go to trial, you would have a right to

4  be represented by a lawyer.  If you could not afford a lawyer,

5  one would be appointed to represent you, that you would enter

6  the courtroom with the presumption of innocence and that you

7  don't have to prove or disprove anything at trial and that the

8  government has to prove the case against you beyond a reasonable

9  doubt.  And you have the right to be free from

10  self-incrimination, which means you have the right not to

11  testify.  And if you chose not to testify, the jury can't hold

12  that against you.

13      Now, to prove these counts against you -- and I guess there

14  are other counts that the government would also.  I think there

15  was one or two other counts that you've been charged with.

16      MS. MAZZANTI:  Those are the only counts he's charged

17  with, Your Honor.  He's pleading to all counts.

18      THE COURT:  These are the only ones against Mr. Buber.

19      MS. MAZZANTI:  Yes, Your Honor.

20      THE COURT:  Mr. Buber, to prove those counts against

21  you, the government would put on its witnesses, who would

22  testify as to what they know.  You would have the right to

23  confront those witnesses.  The way you would do that is your

24  lawyers would cross-examine those witnesses and ask them

25  questions to make sure that the testimony they are giving is

1   truthful and accurate.  Also, when the government attempts to

2   introduce physical items into evidence, you have the right to

3   object to that.  And then I have to decide whether those items

4   indeed come into evidence.

5       Once the government has put on its case, then, if you want

6   to, you have the right to call witnesses to testify for you.

7   And if you choose to, you have the right to testify.  And

8   understand this.  If you testify or if you call witnesses to

9   testify for you, then the government would have the right to

10  cross-examine you and your witnesses.  Also, if you have any

11  physical evidence, photos or anything else that you want to

12  introduce into the record, you have the right to offer it.  Then

13  the government would have the right to object to your evidence

14  just like you had the right to object to its evidence.

15      Now, once all that mixes in, it would go to the jury, and

16  the jury would go back to the jury room and discuss the evidence

17  and determine if the government proved its case against you

18  beyond a reasonable doubt.

19      Now, there are 12 jurors, Mr. Buber.  So all 12 have to

20  agree on the verdict.  It's not a majority vote.  And all 12

21  have to find that the government proved the case against you

22  beyond a reasonable doubt.  If all 12 of those jurors determined

23  that the government did prove the case against you beyond a

24  reasonable doubt, that jury will find you guilty.  If all 12

25  determine that the government did not prove the case against you

1  beyond a reasonable doubt, that jury will find you not guilty.

2  If the jury finds you not guilty, then your case is over, and

3  the government cannot bring this case against you again.  If the

4  jury finds you guilty, then you have a right to an appeal.

5  Now, if all 12 jurors cannot agree on the verdict, then I would

6  have to declare a mistrial.  And if I declared a mistrial, it

7  would be up to the government to decide whether it wants to

8  bring the case back to trial.

9       Now, in the scenario in which the jury finds you guilty,

10  you have a right to an appeal.  Mr. Buber, I'm not sure that you

11  know this.  Ms. Okoro might have told you this.  But if you were

12  to appeal the case from this court, it would go to three judges

13  sitting in St. Louis.  And on appeal, those judges don't hear

14  new evidence.  What they do is they read the transcript of the

15  trial.  If you look to your left, the court reporter is sitting

16  there typing everything we're talking about.  That court

17  reporter would be in trial as well and would type up everything

18  we say and anything anybody says.  And that transcript would go

19  to the Court of Appeals, and they would read it.  And they would

20  look at it to determine if I made any mistakes during the course

21  of your trial that caused you to lose.

22       Now, your lawyers, of course, would argue to the Court of

23  Appeals that the reason why you lost is because I made mistakes.

24  The government would respond that either I didn't make mistakes

25  or, if I did make mistakes, that it was not mistakes that caused

1    you to lose, but it was all of the properly admitted evidence

2    that was sufficient for the jury to determine that you were

3    guilty.  Then all the Court of Appeals does is it reads all of

4    those briefs, and it reads the transcript and makes the

5    decision.

6         If it determines that I made mistakes during the course of

7    your trial that caused you to lose, the Court of Appeals will

8    reverse the jury's verdict and send the case back down here, and

9    we would try your case again.  If the Court of Appeals

10   determines that I did not make mistakes, it would affirm the

11   jury's verdict, and your case would be over.  Do you understand

12   that by entering this plea of guilty you are going to give up

13   all of those rights?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  What that really means, Mr. Buber, is that

16   I'm just going to enter a judgment of guilty here today based on

17   the plea you enter and that you are not going to have a chance

18   to cross-examine witnesses and see all of that.  Do you

19   understand?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Now, Mr. Buber, have you ever committed

22   another felony offense?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Okay.  The only reason I was going to ask

25   you -- I'm not asking you to embarrass you or anything.  But if

1   you had not committed another felony offense, I was going to

2   explain this is going to cause you to lose your right to vote

3   and all of that.  I don't need to get into all of that.  Have

4   you had a chance to speak with Ms. Okoro about the possible

5   sentence you would receive?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  So she has probably explained to you then

8   in the federal system we have our law that tells me what the

9   minimum and maximum sentences are that I can give you.  I have

10  to give you a sentence within the range provided by the law.  In

11  addition to the law, we have sentencing guidelines that help me

12  determine what an appropriate sentence is.  I am not required to

13  give you a sentence within the range provided by the guidelines

14  as long as I give you a sentence within the range provided by

15  the law.  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  I know that can be a little difficult to

18  understand.  But just understand that the law is what I'm guided

19  by, and then the sentencing guidelines just help me to determine

20  in the range of punishment what range of punishment is

21  reasonable.  I'm not required to give you a guideline sentence,

22  but I have to calculate the guidelines as a starting point.

23  That's all that means.

24      Now, I cannot tell you what your guidelines range is going

25  to be because what will happen is after today probation will go

1    out and perform a presentence investigation, prepare a report.

2    And in that report it will have all of your background

3    information, and it will have in it what your guidelines range

4    is.  But we don't know that.  I know a lot of times people will

5    talk to the lawyers and say, well, what is the range of

6    punishment for me on the guidelines?  And your lawyers can't

7    tell you.  And I get defendants sometimes who come into court

8    and say, well, I want to know exactly what my sentence is going

9    to be.  The problem is your lawyer cannot tell you what your

10   sentence is going to be because, as I sit here today, I don't

11   know what your sentence is going to be because we have not

12   calculated the guidelines yet.  So that will happen after today.

13       So I don't have your guidelines range, but I can tell you

14   that based on the law the range of punishment for Counts 6 and

15   9, which is aiding and abetting kidnapping in aid of

16   racketeering, it is a term of imprisonment of from zero years

17   all the way up to life of imprisonment, a fine of not more than

18   $250,000, supervised release of not more than five years and a

19   $100 special assessment.  Do you understand that?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  With regard to Count 7, which is the

22   aiding and abetting assault with a dangerous weapon in aid of

23   racketeering, the statutory range or the range of punishment

24   based on the law for that is from zero years up to 20 years of

25   imprisonment, a fine of not more than $250,000, not more than

1    three years of supervised release and a $100 special assessment.

2    Do you understand that?

3             THE DEFENDANT:  Yes, sir.

4             THE COURT:  With regard to Count 8, which is aiding

5    and abetting maiming in aid of racketeering, the range of

6    punishment is from zero to 30 years of imprisonment, a fine of

7    not more than $250,000 and not more than five years of

8    supervised release with a $100 special assessment.  Do you

9    understand that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Mr. Buber, do you understand that if I

12   were to give you a sentence longer than what you expect that you

13   cannot withdraw your plea of guilty?

14            MS. MAZZANTI:  Your Honor, this is a Rule 11(c)(1)(C)

15   plea to a range of 220 months to 327 months' imprisonment, and

16   the government intends to ask for 327 months per the plea

17   agreement.

18            THE COURT:  Give me that again.  220 to what?

19            MS. MAZZANTI:  220 to 327 months' range.  That's the

20   11(c)(1)(C) range where the parties understand the Court has the

21   discretion to sentence the defendant to anywhere within the

22   range, and the government intends to request 327.

23            THE COURT:  Ms. Okoro, did you hear what the

24   government just said, that this is a 11(c)(1)(C) plea?

25            MS. OKORO:  Yes, Your Honor.  I was about to

1    interject.

2            THE COURT:  And that there's a range you all have

3    agreed on between 220 and 327 months?

4            MS. OKORO:  That is correct, Your Honor.

5            THE COURT:  Okay.  Mr. Buber, I'm going to tell you, I

6    was reading the information that was emailed over to me, and I

7    did not see where this was an 11(c)(1)(C) plea.  I just missed

8    it.  Now, what that means, Mr. Buber, is that your lawyers have

9    negotiated hard for you.  Typically what happens is is that I

10   cannot -- if I give you longer than what you expect, then you

11   cannot withdraw your plea of guilty.

12       But what happens with an 11(c)(1)(C) is your lawyer

13   negotiates typically a number.  But here the government and your

14   lawyers have worked a range of time.  And what it does is it

15   limits the range of punishment that I can give you.  So in your

16   case, based on the law, I can give you all the way up to life of

17   imprisonment.  I think on one of the counts I could give you up

18   to 30 years.  But what your lawyers have worked out for you or

19   Ms. Okoro has worked out for you is that the amount of time I

20   can give you is capped.  I think that's right at 26 or 27 years

21   is what it's capped at.  So you have a high end that I can

22   sentence you to.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  And the way this works is is that today I

25   will not accept -- I mean I will receive the plea of guilty, but

1    I won't actually enter the judgment of guilty.  I will wait

2    until we see the presentence report.  I'll conditionally accept

3    the plea.  Then, if it turns out that I accept it, then I have

4    to give you a sentence within this range.  Do you understand

5    that?

6             THE DEFENDANT:  Yes, sir.

7             THE COURT:  And do you understand that in the federal

8    system we don't have parole?  So it looks here like you will get

9    some prison time.  But you understand you will not get out early

10   on parole because we don't have parole?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Ms. Mazzanti, I know there's a plea

13   agreement.  Would you state for the record what the basic terms

14   of the agreement are?

15            MS. MAZZANTI:  Yes, Your Honor.  The plea agreement

16   provides the defendant will enter pleas of guilty to Counts 6,

17   7, 8 and 9 of the second superseding indictment, as previously

18   set forth by the Court.  The United States will dismiss any

19   remaining indictments against the defendant upon acceptance of

20   the guilty pleas.  And this is a Federal Rule of Criminal

21   Procedure 11(c)(1)(C) plea agreement.

22       The elements of the offense as well as the statutory

23   penalties are included.  There are waiver provisions.

24   Specifically, the defendant is waiving his right to appeal or

25   collaterally attack to the full extent of the law all

1   non-jurisdictional issues, including any forfeiture or
2   restitution.  Specifically, he's waiving his right to appeal all
3   non-jurisdictional issues, including, but not limited to, any
4   issues relating to pretrial motions, hearings and discovery, and
5   any issues relating to the negotiation, taking or acceptance of
6   the guilty pleas, or the factual basis for the pleas, including
7   the sentence imposed, or any issues that relate to the
8   establishment of the guideline range, except that he reserves
9   the right to appeal claims of prosecutorial misconduct.  The
10  defendant also agrees the United States reserves its right to
11  appeal.  The defendant is waiving his right to collaterally
12  attack the conviction and sentence in any postconviction
13  proceeding, including under 28 U.S.C. Section 2255, except for
14  claims based on ineffective assistance of counsel or
15  prosecutorial misconduct.  The defendant also waives his right
16  to have the sentence modified under 18 U.S.C.
17  Section 3582(c)(2).  And he's also waiving the right to appeal
18  any restitution or forfeiture.
19       The parties have stipulated that the base offense level for
20  the offense of conviction in Count 6 is 32 under Section 2A4.1
21  of the guidelines.  The defendant will receive a four-level
22  increase under Section 2A4.1(b)(2)(A) because the victim
23  sustained permanent bodily injury and a two-level increase under
24  Section 2A4.1(b)(3) because a dangerous weapon was used.
25       The parties agree that the base offense level for the

1    offense of conviction in Counts 7 and 8 is 14 under

2    Section 2A2.2.  The defendant will receive a two-level increase

3    under Section 2A2.2(b)(1) because the assault involved more than

4    minimal planning.  The defendant will receive a four-level

5    increase under Section 2A2.2(b)(2) because a dangerous weapon

6    was used.  He will receive a seven-level increase under

7    2A2.2(b)(3)(C) because the victim sustained permanent bodily

8    injury and a two-level increase under Section 3A1.3 because the

9    victim was physically restrained.

10       The parties agree the base offense level for Count 9 is 32

11   under Section 2A4.1.  The parties agree the defendant will

12   receive a two-level increase for Counts 6 through 9 for

13   obstructing and impeding the administration of justice under

14   Section 3C1.1.  The parties agree that the total offense level

15   could increase as a result of the application of the grouping

16   and multi-count adjustment rules in Sections 3D1.1 through 3D1.4

17   of the guidelines.

18       The parties agree that pursuant to 3E1.1 the defendant is

19   eligible for a two-level reduction for acceptance of

20   responsibility unless he takes any action between now and the

21   imposition of sentence that is inconsistent with acceptance.

22   And if the offense level is 16 or greater the determination

23   regarding whether the defendant is eligible for a third-level

24   reduction will be made by the United States at the time of

25   sentencing.

1    The United States agrees that it will recommend to the

2  Court that the sentence in the case run concurrently to the

3  sentence for kidnapping and intimidating a witness in Pope

4  County, Arkansas, Circuit Court Case No. 58CR-17-507.  The

5  defendant retains his right to request an adjustment pursuant to

6  Section 5G1.3 if the Bureau of Prisons will not credit the

7  period of imprisonment already served.

8    The parties agree that no other enhancements or reductions

9  under Chapters Two, Three or Five of the guidelines apply other

10  than those set out in the agreement and addendum.  The defendant

11  is waiving his right to challenge searches, seizures, arrests,

12  statements and forfeitures that have taken place to date by any

13  investigative entity.

14    And the parties stipulate and agree to recommend imposition

15  of a sentence within the range of 220 to 327 months'

16  imprisonment, understanding that the Court has the discretion to

17  sentence the defendant to anywhere within this range pursuant to

18  Federal Rule of Criminal Procedure 11(c)(1)(C).  The defendant

19  understands the United States intends to argue for a sentence of

20  327 months' imprisonment.

21    Paragraph 6 contains the Rule 11 recommendations and the

22  defendant's rights under Rule 11(c)(1)(C) pleas.  The parties

23  state that restitution is applicable, but the amount will be

24  litigated at sentencing.  And there are waivers pursuant to

25  Federal Rule of Evidence 410 and Federal Rule of Criminal

1   Procedure 11(f) on page 10 and 11 of the plea agreement.  The

2   remainder of the plea agreement provisions are standard, Your

3   Honor.

4            THE COURT:  Ms. Okoro, do you have any other terms of

5   the plea agreement that you want to note today?

6            MS. OKORO:  No, Your Honor.  That's complete.

7            THE COURT:  Okay.  Mr. Buber, did you listen to the

8   statement given by the U.S. attorney?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And I know she listed a number of terms.

11  But are those the terms that you understood were contained in

12  your plea agreement?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Now, having discussed all of your rights

15  with you, do you still want to enter a plea of guilty?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Have any threats or promises been made to

18  you to get you to plead guilty, Mr. Buber?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Are you pleading guilty voluntarily?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Now, typically at this point, Mr. Buber,

23  what I would do is I would have the government read all of the

24  facts it would put on at trial.  However, the government has

25  submitted a seven-page statement of facts which would probably

1  take us 30 minutes to go through.

2      Ms. Mazzanti, have you submitted that statement to the

3  defendant and to Ms. Okoro?

4          MS. MAZZANTI:  I have, Your Honor.  And we provided a

5  signed copy signed by both Ms. Okoro and Mr. Buber to the Court

6  for filing under seal.

7          THE COURT:  Okay.  Mr. Buber, did you get a chance to

8  read that statement and go through it thoroughly?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Were those facts that the government says

11  it would prove at trial, were those facts accurate?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  You said they were not accurate?

14         THE DEFENDANT:  Some of them ain't, sir.

15         THE COURT:  Ms. Okoro, do you want to take a second

16  and go through and see which facts that Mr. Buber disputes,

17  because I can't take the plea unless -- the essential facts.

18  Now, if it's something where, you know, I was drinking a soda on

19  January the 5th, and somebody yelled at me, and it has nothing

20  to do with the real facts that we need, then it doesn't matter.

21  But I need to give him an opportunity to go through and say

22  which facts he disagrees with and see if those are relevant.  So

23  if you would, take us through the ones that he disagrees with.

24         MS. OKORO:  Your Honor, I think it would be best if I

25  can talk to my client.

1    THE COURT:  Okay.  Let's take five minutes.  Let's

2  take some time.  When you've had a chance to go through it, talk

3  to the government and just let her know this is what we disagree

4  with.  Then let's put it on the record, okay?

5    MS. OKORO:  Thank you, Your Honor.

6    THE COURT:  Let's take five minutes.

7    (Recess from 1:33 p.m. until 1:53 p.m.)

8    THE COURT:  It looks like we have everybody back in

9  the courtroom.  How are we going to proceed?

10    MS. MAZZANTI:  Your Honor, the parties are requesting

11  to let the 1:30 hearing proceed.  There's a few questions and

12  issues with respect to the factual basis that we're still trying

13  to work out.  Due to the length of the factual basis, it just is

14  going to take us some time to make sure that we are on the same

15  page I think.  If we could just recess until after your 1:30

16  hearing, I think it's possible we might be able to come to an

17  agreement.

18    THE COURT:  Okay.  Ms. Okoro, is that the case?

19    MS. OKORO:  Yes, Your Honor.

20    THE COURT:  Let's recess.  I will take up my 1:30.

21  And after the 1:30, you can just let me know where everything

22  stands.

23    MS. OKORO:  Okay.  Yes, Your Honor.

24    (Recess from 1:54 p.m. until 3:33 p.m.)

25    THE COURT:  It looks like we have everybody back in

1   the courtroom.  When we recessed, I had asked Mr. Buber if he

2   agreed with the statement of facts, and he said he agreed with

3   some and not with others.  We then recessed so that the

4   government could get with Ms. Okoro and Mr. Buber and work out a

5   statement of facts that is agreeable to the parties.  And I

6   think we recessed over an hour ago.

7        Ms. Okoro, have you had a chance to sit down with Mr. Buber

8   and go over the revised statement of facts?

9            MS. OKORO:  Yes, Your Honor.  And we have executed the

10  statement of facts.

11           THE COURT:  Okay.  Ms. Mazzanti, you apparently

12  revised the statement and submitted it to defense counsel?

13           MS. MAZZANTI:  Yes, Your Honor.  We revised it, and we

14  submitted it to the Court so that you would have it available to

15  you for purposes of accepting the factual basis for the plea.

16           THE COURT:  Mr. Buber, did you have an opportunity to

17  go over the revised statement of facts?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Do you agree with this revised statement

20  of facts?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  And is that statement of facts accurate?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Did you sign off on it?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Ms. Okoro, did you sign off on the

2    statement of facts?

3          MS. OKORO:  I did, Your Honor.

4          THE COURT:  Okay.  Mr. Buber, do you understand the

5    nature of the charge against you or the charges against you and

6    the maximum penalties you face?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  How do you plead to Count 6 of the

9    September 3, 2019, second superseding indictment?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  And how do you plead to Count 7?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  And how do you plead to Count 8?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  And how do you plead to Count 9 of the

16    second superseding indictment?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  Did you, in fact, commit those offenses as

19    charged in the second superseding indictment?

20          THE DEFENDANT: (No response.)

21          THE COURT:  Mr. Buber, did you understand what I said?

22          THE DEFENDANT:  I don't really know what to say to

23    that.

24          THE COURT:  What I asked was did you commit the

25    offenses as charged in Counts 6, 7, 8 and 9?

1          THE DEFENDANT:  Yes, sir.  Yes, sir.

2          THE COURT:  Ms. Okoro, do you know of any reason why

3    Mr. Buber should not accept the guilty -- I mean why I should

4    not accept his pleas of guilty?

5          MS. OKORO:  No, Your Honor.

6          THE COURT:  I find that the offenses as charged in

7    Counts 6, 7, 8 and 9 of the September 3, 2019, second

8    superseding indictment were committed by the defendant,

9    Christopher Buber.  I also find that Mr. Buber is entering this

10   plea of guilty voluntarily with full knowledge of the facts, his

11   rights and consequences that he faces.  For those reasons, I

12   accept the guilty plea.

13      Ms. Mazzanti, are there any other underlying indictments

14   against Mr. Buber that we need to dismiss?

15          MS. MAZZANTI:  The first superseding indictment, Your

16   Honor, but this is the 11(c)(1)(C) issue.  Until the Court

17   officially accepts it, I didn't intend to make any motions.

18          THE COURT:  That's fine.  Mr. Buber, what I'm going to

19   do -- Ms. Okoro, what I'm going to do is conditionally accept

20   the plea.  I won't know until I get back the presentence report

21   whether I will indeed accept it.  Typically I give the lawyers

22   the benefit of their negotiation unless there's something in

23   that presentence report that just tells me I cannot accept it.

24   And here's the thing.  If I do not accept the plea and agree to

25   the terms of the plea, then, Mr. Buber, you can withdraw your

1    plea of guilty.  That's the way this works.  Okay?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And what will happen at this point is

4    probation will go out and perform a presentence investigation

5    and prepare a report.  Mr. Buber, probation will look into your

6    health history, your medical history, your education history,

7    your work history, church history, everything, criminal history

8    and everything and will prepare a report that will have all of

9    that information in it.  That information, when they put

10   together that report, that report will be given to Ms. Okoro,

11   who will sit down with you and go over it, or she'll go over it

12   with you some kind of way electronically or however you do it.

13       What I ask you to do is look at that report very closely,

14   because the information in that report is the information I'm

15   going to use to determine what an appropriate sentence is for

16   you.  And I'm going to determine whether I accept your plea, so

17   look at it closely.  If there's anything in there that you

18   disagree with, let Ms. Okoro know, and she'll file an objection

19   for you.  Once we work out all the objections, we'll come back

20   in, and I'll accept the plea and sentence you, or I will reject

21   the plea, and you will have the opportunity to withdraw your

22   plea if that's the case.  Do you understand?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Is there anything else we need to take up

25   on this case from the government's point of view?

1          MS. MAZZANTI:  No, Your Honor.

2          THE COURT:  Ms. Okoro, is there anything that we need

3    to take up on behalf of Mr. Buber?

4          MS. OKORO:  No, Your Honor.

5          THE COURT:  We will adjourn.

6       (Proceedings concluded at 3:40 p.m.)

7                    REPORTER'S CERTIFICATE

8       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

9

10   /s/Elaine Hinson, RMR, CRR, CCR        Date:  February 20, 2022.
     United States Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25