IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

                    Plaintiff

     Vs.                              No.   4:17-cr-293-BSM
                                      March 30, 2022
HEATH KIZER                           Little Rock, Arkansas
                                      11:17 a.m.

                    Defendant


          TRANSCRIPT OF SENTENCING HEARING

        BEFORE THE HONORABLE BRIAN S. MILLER

             UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Plaintiffs:

      LIZA BROWN
      U.S. Attorney's Office
      Eastern District of Arkansas
      P.O. Box 1229
      Little Rock, Arkansas 72203

On Behalf of the Defendants:

      OMAR F. GREENE, II
      The Law Office of Omar F. Greene
      1501 North University Avenue, Suite 225
      Little Rock, Arkansas 72207



      Proceedings reported by machine stenography and
displayed in realtime; transcript prepared utilizing
computer-aided transcription.

1          THE COURT:  We're a few seconds early, but we
2  can get started since we have everybody in place.
3          This is the case of United States of America versus
4  Heath Kizer, Case Number 17-cr-293.  Mr. Kizer is in the
5  courtroom with his lawyer, Omar Greene.  The United States
6  is being represented by Liza Brown.
7          Let's do this.  Mr. Greene, if you would bring
8  Mr. Kizer to the bench.  And, Ms. Brown, if you would come
9  up as well we can have our --
10         (Proceedings reported under seal as follows:)
11             THE COURT:  Mr. Kizer, this is typically the
12  point where I would have the lawyers come to the bench.
13  And we actually should do this in chambers, but we always
14  do it here in the courtroom.  What I do is ask the lawyers
15  if they have any preliminary issues that we need to take
16  up.
17         In your case, the government has filed a motion to
18  give you a break from the mandatory minimum because your
19  case carries with it a mandatory ten-year sentence.  The
20  government has asked me to give you a sentence of -- is it
21  15 or 20 percent?  I think 20 percent below the mandatory
22  minimum.
23             MR. GREENE:  20.
24             THE COURT:  Anything the government want to put
25  on the record in support of that?

1           And, Mr. Greene, I'll give you a chance to response.

2                MR. GREENE:  Thank you.

3                MS. BROWN:  Your Honor, just the fact that

4     Mr. Kizer provided information to law enforcement

5     regarding his involvement in a narcotics conspiracy as

6     well as his role in the conspiracy.  He provided

7     assistance and corroborating information already known to

8     law enforcement and providing new information to law

9     enforcement regarding these other targets.  So that's the

10    basis of the 20 percent.  He did not testify at trial.

11               THE COURT:  Okay.  Mr. Greene.

12               MR. GREENE:  Your Honor, the -- we have an

13    argument with -- that the Court wouldn't have the

14    authority to apply the 3533(a) factors after they move to

15    go below the mandatory minimum.  And there is a split in

16    the circuits.

17         Now, the Eighth Circuit -- you know, she's right.  In

18    the Eighth Circuit, they say you can't do that; you can

19    only -- but the Fourth Circuit says you can.  And to me,

20    that makes more sense.  And at some point if we could

21    make --

22               THE COURT:  Let's do this.  Instead of us -- I

23    mean, we can do it on the record, but I think just so the

24    record is clear, the government's position -- because I

25    heard you all talking about it before you came up.  I've

not been in the middle of this conversation at all.  The government appears to make the argument that Mr. Kizer does not qualify for the safety valve.  So, typically, if he's safety valve eligible and they file the motion, then I can give him whatever sentence I want to below the mandatory minimum.

So, Mr. Greene, your position is that I should still be allowed to do that in this case.

What that would do, Mr. Kizer, I think if we didn't have a mandatory minimum, your -- and your guidelines range would be 70 to 87 months, so five and a half years to six and a half or seven.  So I think Mr. Greene would want to argue that you would get that or less because you don't have any criminal history.

The government's position is that the law is that I can't -- I can only give you a below statutory range based on the recommendation of the government and that's what this circuit says I can do.

Mr. Greene's response is that, although the Eighth Circuit appears to have made that ruling, the better ruling comes out of the Fourth Circuit which says I can, which means he can preserve his record and maybe you get to the Supreme Court because you have a circuit split on the issue.  I don't know what the Supreme Court says about that, but maybe you do.  I will follow the law of this

1  circuit, which says what I can and cannot do.

2      If you all want to make any more record on that

3  issue, I think it's pretty clear what the issue is, and

4  that, Mr. Greene, to the extent that I give Mr. Kizer a

5  sentence -- I won't weigh into whether I would or I would

6  not, but to the extent that I give Mr. Kizer -- what's 20

7  percent below 120?

8          MS. BROWN:  He's looking at a sentence of 96

9  months imprisonment, Your Honor.

10         THE COURT:  So if I give you 96 months of

11  imprisonment, Mr. Greene, is objecting to that sentence

12  and saying that I should at least consider the 3553(a)

13  factors and go below.

14      I'm not going to start considering those because I'm

15  holding with Eighth Circuit precedent and going to

16  sentence you to what the Eighth Circuit says I can.  But

17  that preserves Mr. Greene's argument on appeal.  The

18  government has made its record, and we'll see what the

19  circuit does with that information and what the courts

20  above me do.

21      Anybody want to make any more argument?

22         MR. GREENE:  Plan B, Judge -- or argument B is

23  that if -- even if -- even if the Prosecutor Brown is

24  right, then you still get to look at 5K1.1, and there is

25  factors in there.  And then one of the factors that you

can consider -- once she's opened the door for you to do it, one of the factors you can consider is the risk to himself of cooperating.  And these people, as you well know from sitting through a three-week trial, that these people were not Boy Scouts by any means.  I think the whole investigation started with somebody being murdered and then that, in this case, there were people that kidnapped other people.

I was reading something about there was a guy that these Nazis or whatever they are felt had betrayed them and they burned his tattoo off of him with a blow torch. These were not -- so, you know, and then if -- you know, we're worried about if he ends up in prison with some of these people.  Or, you know, so it wasn't -- it took him a while to come around.  And I know Ms. Brown's going to bring that to your attention.  But he did finally come in and talk to them.

But I mean, I think that factor is bona fide.  I don't -- you know, sometimes they come in here and try to stretch things and you usually catch me when I'm doing it, but I think that's a bona fide point to make, is that he cooperated against some people that were pretty mean, bad people, and if they get wind of it, that he's in trouble --

THE COURT:  What is your response?

1      MR. GREENE:  -- danger, Judge.

2      MS. BROWN:  So in reviewing Mr. Kizer's proffer,

3 he did not proffer about any of the folks regarding NAE

4 except for his ex-wife, Melissa Kizer.  So his --

5      THE COURT:  And she testified.

6      MS. BROWN:  And she testified.  She put herself

7 out there.  He did not put himself out there.  He was not

8 completely truthful.

9      I will tell you this.  You were not completely

10 truthful and did not hold your own when it came to your

11 proffer.  You did not give the extent of what your

12 involvement was in this situation.

13      So he is lucky that he got 20 percent off of his

14 sentence when it could have been zero.  So for those

15 reasons, Your Honor, we gave him some benefit for giving

16 some information to the government.  It was not complete.

17 He minimized during this, but we were nice and we gave

18 some.

19      So for Mr. Greene to come up here and say that he's

20 worried about his client being threatened or any of that,

21 he did not testify against any of these individuals.  He

22 did not proffer against any of these individuals.  And so

23 for those reasons, Your Honor, 20 percent is a gift.

24 Without that 20 percent, he would be still looking at a

25 mandatory minimum of 120 months and we would not be here.

1          THE COURT:  Any final words, Mr. Greene?  Any

2    record you want to make?

3          MR. GREENE:  Just that when the word gets out

4    that you're what's called a snitch, you know, and that --

5    that he did tell on some people, that is why.  And I don't

6    know Tricky Loadholt.  I don't know if he was involved

7    with the Aryans.  Was he?

8          MS. BROWN:  He is a black male.

9          MR. GREENE:  So Tricky wasn't involved with

10   that, but that's mostly who he told about.

11       But still the -- even though we take it -- make

12   efforts for it not to be known, if you're labeled as a,

13   quota, snitch, end quote, you're -- it's much harder for

14   you and you are exposed to more risk of danger, and these

15   people aren't going to like it that he testified against

16   anybody in this I think.  That's just my opinion.

17          THE COURT:  All right.  Record with regard to --

18   I think we've made our record with regard to -- well,

19   you've preserved your record for appeal on what I can

20   consider and what I cannot consider.

21          MR. GREENE:  Yes, sir.

22          THE COURT:  Are there any other arguments

23   specifically on what would be appealable?

24          MS. BROWN:  No argument, just one clarification.

25   Troy Loadholt is associated with the crips.  He is not

1    associated with NAE.  He was in the drug distribution
2    business.  The other one material factor that needs to be
3    considered is Mr. Greene just said Mr. Kizer testified.
4    He did not testify against anyone.  So I just wanted to
5    make the record clear Mr. Kizer did not testify.
6            THE COURT:  Your point is he proffered.
7            MR. GREENE:  Yeah, Judge.  I used the wrong
8    word.  I'm sorry.
9            THE COURT:  I think the record will reflect it.
10       (End of under seal proceedings.)
11           THE COURT:  Mr. Kizer, is my mic on?  Is it on
12   now?  My red light is on, but I don't think this
13   microphone is on.  Can you hear?
14       Mr. Kizer, my notes indicate that on August 5 of
15   2020, you entered a plea of guilty to count 10 of the
16   second superseding indictment that charged you with
17   conspiracy to possess with intent to distribute and
18   distribution of methamphetamine.
19       During this entire case, you've been represented by
20   Mr. Greene.  Are you satisfied with the legal
21   representation he's given you so far?
22           THE DEFENDANT:  Yes, sir.
23           THE COURT:  Okay.  And when you entered your
24   plea of guilty, I probably told you that probation was
25   going to go out and perform a presentence investigation

1    and prepare a report.  I have a report that is dated June

2    22 of 2020 and it was revised on July 21 of 2020.  Have

3    you had a chance to go over this report?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  And Mr. Greene, do you have any

6    objections to the report?

7              MR. GREENE:  No, Your Honor.

8              THE COURT:  Ms. Brown, do you have any

9    objections?

10             MS. BROWN:  No, Your Honor.

11             THE COURT:  All right.  I'll adopt the record as

12   written.

13        And, Mr. Kizer, as I probably explained to you when

14   you entered your plea of guilty, in the federal system we

15   have our law that tells me what the minimum and maximum

16   sentences are I can give you.  I have to give you a

17   sentence within the range provided by the law.  In

18   addition to the law, we have sentencing guidelines that

19   help me determine what an appropriate sentence is.  And

20   I'm not required to give you a sentence within the

21   guidelines range as long as I give you a sentence within

22   the range provided by law.

23        Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  With regard to the law, the range of

1    punishment for conspiracy to distribute and possess with

2    intent to distribute methamphetamine is from ten years to

3    life of imprisonment, a fine of up to $10 million, five

4    years to life of supervised release, a $100 special

5    assessment, and probation is not authorized by the law.

6         Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  With regard to the guidelines, you

9    have a base offense level of 30.  You receive -- and

10   that's based on the amount of methamphetamine involved.

11   You receive a two-point reduction for acceptance of

12   responsibility, which brings you to 28.

13        And, Ms. Brown, does the government move for a third

14   point?

15             MS. BROWN:  Yes, Your Honor.

16             THE COURT:  That brings us to a total offense

17   level of 27.  You have zero criminal history points.  So

18   you have a criminal history category of one.

19        Now, if there were not -- if there was not a

20   mandatory minimum, your range of punishment would be -- of

21   prison time would be 70 to 87 months, but because you have

22   a mandatory minimum, that range is effectively 120 months

23   of imprisonment, a fine of $25,000 to $10 million.  The

24   guidelines range for supervised release is five years to

25   life.  Probation is not authorized under the guidelines

1    and there is a special assessment of $100 that is

2    mandatory.

3           Do you understand that?

4                THE DEFENDANT:  Yes, sir.

5                THE COURT:  Now, Mr. Greene, this is typically

6    the time I would ask you for departure or variance

7    argument.  And for the benefit of those who are here who

8    were not at the bench, part of the discussion we had up

9    here -- there are a bunch of issues we take up that we

10   place under seal so nobody can go read the record and see

11   who's saying what about whom.  And that's the reason we

12   called everybody up so we could have that discussion.

13          Also, the government moved for a departure of 20

14   percent off the bottom of the mandatory minimum, which is

15   120 months, which --

16          And, Ms. Brown, I forget how much that is.  That

17   would be a sentence of how much?

18                MS. BROWN:  96 months, Your Honor.

19                THE COURT:  96 months.  There was an argument

20   here at the bench -- you probably could see the people

21   moving and talking.  There was an argument at the bench.

22   Mr. Greene's position is that now that the government has

23   made this motion that allows me to go below the mandatory

24   minimum and sentence him to 96 of months of imprisonment,

25   that I'm actually now allowed to go below that if I choose

1    it.  And his argument is that he should be allowed to

2    argue factors like Mr. Kizer's lack of criminal history

3    and some other things that would allow me go even lower

4    than 96 months.

5         The way the discussion went is, the government's

6    position is that in the Eighth Circuit, which is our

7    circuit that we're in -- the country is divided up in

8    circuits.  So the district -- Eastern District of Arkansas

9    is in the Eighth Circuit.  When we appeal from this court,

10   it goes to St. Louis because that's the circuit we're in;

11   that the Eighth Circuit Court of Appeals has ruled that I

12   cannot go below what the government moves because

13   Mr. Kizer is not safety valve eligible.  And there are a

14   lot of factors you look at to see if somebody qualifies

15   for the safety valve.

16        Mr. Greene's argument is the Fourth Circuit, which is

17   North Carolina I think and -- who else is in the South

18   Carolina and Virginia.  I think that's the Fourth

19   Circumstance; that that circuit has ruled that you can go

20   below.

21        I am bound by the law of the Eighth Circuit.  So I

22   told the lawyers that I would give the lawyers the benefit

23   of the deal and go below the 120-month mandatory minimum

24   and go to 96, but I would not go and hear new factors to

25   go below that because the Eighth Circuit says I can't.

1     What we did here at the bench, I let the lawyers make

2     their arguments and the record is made on that issue.

3         So if Mr. Greene wants to appeal me, now --

4     understand this.  If he appeals, he's going to be

5     appealing to the Eighth Circuit, which has already made

6     the ruling right.  But when there is a circuit split in

7     the United States -- so, say, if the Eighth Circuit says

8     one thing, the Fourth Circuit says another, typically,

9     those are cases that the Supreme Court will take up and

10     they will try to make our law uniform.  So maybe he gets

11     this overruled at the Supreme Court.  But as it stands

12     right now, I'm going to do what the Eighth Circuit has

13     told me I can do.  I'm going to grant the motion of the

14     government.

15         And Mr. Greene also filed a sentencing memorandum in

16     which he laid out Mr. Kizer's background and the things I

17     should look at in determining what sentence to give him.

18     I understand that.

19         Mr. Greene, are there any other arguments you want to

20     make for the record, just to preserve your record for

21     appeal?

22         MR. GREENE:  Judge, that the Fourth Circuit's

23     view is a better one because, once that motion is made --

24     once the government -- once the government -- I'm sorry.

25         THE COURT:  That's okay.

1      MR. GREENE:  I don't want to be disrespectful at
2  all.
3      If the -- once the government has kind of opened the
4  trap door or whatever where we can get through that
5  mandatory minimum, then we're in the land of the
6  guidelines and we're also back to 3553(a), which says --
7  and there seems to be a conflict between 18 U.S.C.
8  3553(a) and then the statute that -- the section of that
9  statute that the government has used today, and that's
10  3553(e).  And (a) says, the Court shall consider the
11  history and characteristics of the defendant.  So that's
12  mandatory too.  So we've got these two mandatory parts of
13  the statute clashing.  And then the Eighth Circuit takes
14  it one way and the Fourth Circuit sees it another.
15      And the reason I say the Fourth Circuit is better is
16  because this guy has been remarkable.  I mean, he's -- and
17  I was a drug task force prosecutor at one point in my life
18  and I've seen a lot of defendants.  And he's one of the
19  more remarkable ones that I've seen as far as how he's
20  recovered from his drug addiction and gotten his life
21  together.  I mean, it's pretty inspiring actually.
22      Judge, when I first met him, he couldn't even keep
23  his head up.  He wouldn't even look you in the eye.  So he
24  really has had a sea change.  He has really changed
25  dramatically.  He's renewed his ties with his family, with

1    his church.  He's always been a good worker.  He still is.
2    He's renewed a relationship with his son.
3        So all of these wonderful things have happened.  But
4    the way the Eighth Circuit interpreters it, you don't get
5    to go to 3553(a) and even consider this stuff.  You only
6    get to consider, you know, the stuff we talked about at
7    the bench.
8        So I think that the Fourth Circuit, because they say
9    that, once you get below the mandatory minimum, then the
10   Court can go to 3553(a) and select a sentence that, you
11   know, is sufficient but not -- not more harsh than
12   necessary to -- to achieve the goals of federal
13   sentencing.  And so we would say that you would have that
14   option.  We're arguing that you would have that option.
15              THE COURT:  Okay.  Ms. Brown, I think these are
16   issues that we made our record on here at the bench, but
17   if you want to respond you can.  I just ask you not to
18   spend a whole lot of time.
19              MS. BROWN:  I was just going to consider the
20   3553 factors, which is what the Court has to consider in
21   imposing this sentence in order for it to be preserved for
22   appealed.  I have to make my record on this.
23        As to the factors, number one, regarding Mr. Kizer as
24   far as his pretrial release is concerned, he had several
25   violations in 2017 where he failed to report.  In 2018 he

1    tested positive for oxycodone, Dilaudid -- or he had

2    diluted urine on three occasions.  He was discharged from

3    The Freedom House.  However, when he moved in with his

4    aunt, his aunt got him straightened out and he was doing

5    better.

6        As far as the nature and circumstances of the

7    offense, Mr. Kizer pled to 500 to 1 -- 500 grams to 1.5

8    kilograms of methamphetamine that he was responsible for.

9    He was acquiring methamphetamine from his ex-wife, Melissa

10   Kizer, in half -- quarter-pound to half-pound quantities

11   on several occasions.  He also acquired them from Michael

12   Roberts who was getting his from Troy Loadholt and he was

13   acquiring those in quarter-pound and half-pound

14   quantities.  He was repackaging them and he was selling a

15   lot of methamphetamine during this time.

16       He was wreaking havoc on the town of Russellville and

17   the communities that were surrounding it.

18       When they did a search warrant, they located 36 guns

19   and some more methamphetamine in his house.

20       No, he doesn't have any criminal history, but there

21   has to be consequences for your actions.  He chose to

22   acquire methamphetamine.  He chose to sell

23   methamphetamine.  Those are his choices.

24       And for those reasons, Your Honor, the sentence of 96

25   months is appropriate in this case.  It's below the

1   mandatory minimum and they got there by my motion.

2   So for those reasons, we would ask for 96 months.

3          THE COURT:  Anything final?  You don't have to

4   respond.  She's just making a record.

5          MR. GREENE:  Your Honor, no.  Well, Your Honor,

6   after he got with his aunt, that things dramatically

7   improved to the point that I'm talking about now.  And he

8   does have two witnesses that would like to speak to the

9   Court.

10          THE COURT:  I won't hear from witnesses.  I have

11   the statements from everybody who wrote me and I've read

12   those, Mr. Greene.

13          MR. GREENE:  Could I -- I could get them to at

14   least stand up.

15          THE COURT:  They can stand be --

16          MR. GREENE:  Y'all stand up and tell -- let's

17   start at the back.  Just -- you got to talk loud in this

18   room, so kind of yell, just tell the Judge who you are and

19   why you're here in support of him.

20          SPEAKER:  My name is Scott Warren, and I'm the

21   family's pastor.

22          THE COURT:  Thank you.

23          SPEAKER:  I'm Jackie Rook, and I'm a long-time

24   friend of the family.  It's been a blessing to watch his

25   growth.  And I've known and gone to church with them over

1  25 years and it's wonderful to have him in church with us

2  now.

3          THE COURT:  Thank you.

4          MR. GREENE:  I think his sister is here, his

5  mom, his dad.  Would y'all stand up?

6          SPEAKER:  Heather Albright.  I'm Heath's sister,

7  also have a third-party custodial agreement during the

8  time he's been on release.

9          THE COURT:  Thank you.

10          SPEAKER:  Jeanette Small, Heath's mother.

11          SPEAKER: Ethan Kizer.  I'm his son.

12          SPEAKER: Jeff Small, stepfather.

13          SPEAKER: Your Honor, I'm Stacy Kizer.  I'm

14  Heath's dad.  Michelle Kizer, his step mom.

15          THE COURT:  All right.  Thank you.

16          MR. GREENE:  Then we have two people down here

17  on the end.  You need to introduce yourself to the judge.

18          SPEAKER:  Karen Duvall, his aunt.

19          SPEAKER:  Gerald Duvall.

20          THE COURT:  Duvall?  Ma'am, are you related in

21  any way to one of my favorite people, Andrea Duvall?  Any

22  relation?  She's from Atkins.

23          SPEAKER:  I went to school with her.  We talked

24  about this a couple of years ago.

25          THE COURT:  I remember that.  So you're not

1    related to Andrea Duvall?  Okay.  I know she was from the
2    area.  All right.
3         Mr. Kizer, do you want to make a statement before I
4    pronounce your sentence?
5              THE DEFENDANT:  At the time of my arrest, my
6    life was a mess.  I had let my opiate addiction take over.
7    My decisions were clouded by the need to feed my
8    addiction.  I take full responsibility for my actions and
9    pray that you can see the person that I am and not the
10   choices I've made.
11        As much as I hate having put my family through this,
12   I'm thankful to the Court because I know this saved my
13   life.  I was at a place of hopelessness and despair and
14   honestly didn't see a path to make it out alive.  I
15   currently have over four years clean and have made some
16   huge changes in my life.  I've renewed my relationship
17   with God and strive daily to become a better example for
18   my son Nathan who I love dearly.
19        I cannot thank my family enough for their support and
20   unconditional love they showed me.  This time with my
21   children and family have been priceless, and I desperately
22   don't want it to end.  So I beg for your leniency in
23   considering my sentence.  I've learned a valuable lesson
24   and I truly know how precious my freedom and my life is.
25             THE COURT:  Ms. Kizer, here's what I'm going to

1  do.   Based on the motion of the government, I'm going to

2  sentence you to the Bureau of Prisons for a term of 96

3  months.   I am going to recommend that you receive

4  nonresidential substance abuse treatment and mental health

5  treatment while you're there.

6      I'm going to order you to five years of supervised

7  release.   As part of your supervised release, I'm going to

8  order you to participate in drug -- outpatient drug rehab.

9  This may include outpatient counseling and residential

10  treatment.   I'm also going to you order to abstain from

11  the use of alcohol during the course of your treatment and

12  order you to pay the copay of $10 per session based on

13  your ability to pay.

14      I'm going to order that you participate in a mental

15  health treatment program, which may include mental health

16  treatment and supervision by the probation office.

17      Now, what will happen here is, somebody will give you

18  an assessment to see if you need counseling or anything

19  like that.   If you do, they'll order you to undergo it.

20  You'll have to pay a $10 copay for that and a $10 copay

21  for the drug and alcohol treatment based on your ability

22  to pay.   If you cannot afford it, it will be waived and

23  you don't have to pay it, but the main thing is to go to

24  your classes.

25      I'm going to order you to cooperate in the collection

1  of DNA.  I'm not going to order you to pay a fine, but I
2  am going to order you to pay $100 special assessment.
3      As far as where you serve your time, I heard the
4  conversation between you and Ms. Brown earlier.  We've had
5  a number of people who wanted to go to either Texarkana or
6  to Forrest City.  Here's the problem we're having, when we
7  have a large case like this where a lot of people know
8  each other, typically, the Bureau of Prisons will not want
9  to house 55 people who know each other together.  So what
10  I would ask is -- and you don't have to give it to me
11  right now, Mr. Greene --
12          MR. GREENE:  Yes, sir.
13          THE COURT:  -- is that by tomorrow, you give me
14  a place where you would request that he serve his time.
15  What I will do is, I'll make the request in the judgment
16  to the Bureau of Prisons that he be allowed to serve his
17  time there.
18      Now, I can't tell the Bureau of Prisons what to do.
19  What I can do is make the recommendation.  And if they
20  have a spot for you, they'll send you there.  So look
21  around the area and try to find me a place that's
22  appropriate to house Mr. Kizer.
23      Mr. Kizer, you can appeal this sentence.  And I think
24  the record has been made for that.  You have 14 days in
25  which to appeal your sentence.  If you cannot afford the

cost of the appeal, you can ask for leave to appeal in
forma pauperis.  If it's determined you cannot afford the
filing fee, you'll be allowed to file your appeal and pay
the filing fee in installments or the filing fee will be
waived.  If you cannot afford a lawyer on appeal, one
will be appointed to represent you.

Now, with regard to taking him into custody,
typically, when you enter a plea of guilty to a crime -- a
drug crime that carries with it up to ten years or more of
imprisonment, we take you into custody right at the point
where you've been found guilty.  In this case, what we did
was I think with a number of people, we determined that
there were extraordinary circumstances to leave them out.

What I'll do is I'll leave -- for the same reasons,
leave Mr. Kizer out now.  What we will do is, I'll give
him 45 days to report.

When is that?  Give me the next Monday.  The 16th?
Monday, May 16.  And what will happen is, when we get your
designation, it will be given to you.  You'll report
directly to the facility.  You will not report up here to
the -- nobody will transport you.  So wherever it is you
get assigned, you'll have to go and show up on that day.

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Kizer, the way it works is, if
you don't show up, we'll issue a warrant for you and hunt

1    you down and pick you up.  Don't go through all of that.

2              THE DEFENDANT:  I understand.

3              THE COURT:  Yes, ma'am.

4              MS. BROWN:  Your Honor, we have to mention

5    forfeiture.  There were firearms in this case that need to

6    be forfeited.

7              THE COURT:  I think that was included in the

8    plea as well.  So we will issue the forfeiture order to

9    forfeit those items.

10        Is there anything else we need to take up on this

11   case?

12             MR. GREENE:  Judge, I want to make sure that --

13   he was hoping that you would recommend that RDAP, program

14   but I think you said that.

15             THE COURT:  I did not specifically say RDAP.

16   I'll put it in the judgment.  And if he qualifies, which I

17   don't think he has a long, violent history, so he probably

18   will qualify.  I'll recommend that.

19             MR. GREENE:  Thank you.

20             THE COURT:  Ms. Brown, anything else?

21             MS. BROWN:  No, Your Honor.

22             THE COURT:  Anything, Mr. Greene?

23             MR. GREENE:  No, Your Honor.  I appreciate how

24   you let us make our record.  Thank you.

25             THE COURT:  Let's recess until 1:00.

1          (Proceedings adjourned at 11:49 p.m.)

2                    *  *  *  *  *

3              REPORTER'S CERTIFICATE

4      I, Valarie D., Flora, CCR, certify that the foregoing

5  is a correct transcript of proceedings in the

6  above-entitled matter.

7      Dated this the 11th day of April, 2022.

8

9  /s/ Valarie D. Flora, CCR

10 -------------------------

11 United States Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25