1          IN THE UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF ARKANSAS

3                    CENTRAL DIVISION

4

5   UNITED STATES OF AMERICA,              No. 4:17-CR-00293-BSM-23

6                    Plaintiff,
                                           August 5, 2020
7       V.                                 12:13 p.m.

8   HEATH KIZER,
                                           Little Rock, Arkansas
9                    Defendant.

10

11              **TRANSCRIPT OF CHANGE OF PLEA**
          BEFORE THE HONORABLE BRIAN S. MILLER,
12              UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES IN COURTROOM:

16   On Behalf of the Government:

17       LIZA BROWN, Assistant United States Attorney
             U. S. Attorney's Office
18           P.O. Box 1229
             Little Rock, Arkansas 72203-1229
19

20   On Behalf of the Defendant:

21       OMAR F. GREENE, II, Attorney at Law
             The Law Office of Omar F. Greene
22           1501 N University Avenue, Suite 255
             Little Rock, Arkansas 72207

23

24
         Proceedings reported by machine stenography; transcript
25   prepared utilizing computer-aided transcription.

1          (Proceedings commencing in open court at 12:13 p.m.)

2          THE COURT:  All right.  The only case I have on the

3  docket, other than the trial I am in, is the case of United

4  States of America versus Heath Kizer, Case Number 17-CR-293.

5  Mr. Kizer is in the courtroom with his lawyer Omar Greene; the

6  United States is being represented by Liza Brown.

7      Mr. Kizer, would you raise your right hand so we can swear

8  you in?  Do you swear to the tell the truth, the whole truth,

9  and nothing but the truth so help you God or under penalty of

10  perjury?

11          THE WITNESS:  Yes.

12          THE COURT:  Okay.  And do this for me.  Pull one of

13  those microphones close to you and make sure that it's on.  You

14  should see -- if it's red, it's on; if it's not red, that means

15  it's not on.

16      And speak into it now so we can see if we can hear you.

17          THE DEFENDANT:  Can you hear me now?

18          THE COURT:  Okay.  Very good.

19      All right.  Mr. Kizer, I am going to get a little

20  background information from you before we get started.  Hold on

21  just one second.  I don't think I have the indictment with me.

22  And, Ms. Brown, normally in this case, because we've been going

23  through them, I have it sitting on the bench upstairs, and I

24  walked down without it.

25          MS. BROWN:  Would you like it?

1          THE COURT:  What's that?

2          MS. BROWN:  Would you like my copy?

3          THE COURT:  Yes, ma'am.  I'll take it.

4          MS. BROWN:  I will in 60 --

5          THE COURT:  Are you giving this to me?

6          MS. BROWN:  May I have it back?

7          THE COURT:  Do you want me to put on some gloves --

8          MS. BROWN:  It's okay.  You're fine, Your Honor.

9          THE COURT:  -- to handle it or spray it with

10  disinfectant?

11          MS. BROWN:  I'll spray it later.

12          THE COURT:  Okay.  You know, we had a case upstairs,

13  and Ms. Brown came in, and there was another U. S. Attorney who

14  had been using the spot that she was going to use, and she came

15  in with all of the spray and disinfectant and started spraying

16  it down to make sure.

17      I said, "You don't trust your fellow U. S. Attorney?

18      And she said, "No."

19      All right.  Mr. Kizer, first, how old you?

20          THE DEFENDANT:  36.

21          THE COURT:  And how much education do you have?

22          THE DEFENDANT:  High school diploma.

23          THE COURT:  And have you had any drugs, alcohol, or

24  any medication that would make it difficult for you to

25  understand what we're doing today?

```
 1              THE DEFENDANT:  No, sir.
 2              THE COURT:  Okay.  And do you fully understand why
 3   you're in court today?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  Okay.  And you're being represented by
 6   Mr. Greene.  Have you had a chance to sit down with Mr. Greene
 7   and go over your case with him?
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  All right.  Are you satisfied with the
10   legal representation he's given you so far?
11              THE DEFENDANT:  Yes, sir.
12              THE COURT:  All right.  And, Mr. Greene, is there
13   anything about Mr. Kizer that would lead you to believe that he
14   is not competent to go forward with this plea?
15              MR. GREEN:  No, sir, Your Honor.  I think he is just,
16   like Judge Wilson says, "Fully as himself."
17              THE COURT:  All right.  Mr. Kizer, I find that you
18   are competent to go forward with the plea.  It is my
19   understanding, Mr. Kizer, that you want to withdraw your
20   previous plea of not guilty and enter a plea of guilty to the
21   second superseding indictment that was filed on September the
22   3rd of 2019; is that true?
23              THE DEFENDANT:  Yes, sir.
24              THE COURT:  Okay.  Count 2 states that --
25              MS. BROWN:  Count 10, Your Honor.  It should be
```

1    Count 10.

2            THE COURT:  Count 10 states that, beginning or in

3    around 2014 and continuing through the date of the second

4    superseding indictment, in the Eastern District of Arkansas,

5    and it lists out of a number of defendants and Heath Kizer, and

6    it says -- okay -- that Mr. Kizer and the other defendants

7    voluntarily and intentionally conspired with each other, Daniel

8    Adame, Britanny Conner, James Nicholas George, and with others

9    known and unknown to the grand jury to knowingly intentionally

10   distribute and possess with intent to distribute

11   methamphetamine actual and a mixture and substance containing a

12   detectable amount of methamphetamine.

13       It also states that, with respect to Mr. Kizer, the amount

14   of methamphetamine involved in the conspiracy attributable to

15   him, as a result of his own conduct and the conduct of other

16   coconspirators reasonably foreseeable to him, is 500 grams or

17   more of a mixture and substance containing a detectable amount

18   of methamphetamine.

19       Now, Mr. Kizer is that what you want to enter a plea of

20   guilty to?

21            THE DEFENDANT:  Yeah.

22            THE COURT:  All right.  And, Mr. Greene, I have a

23   note here that Mr. Kizer tested presumptively positive but has

24   a prescription.

25       What is his prescription for?

1          THE DEFENDANT:  It's Neurotain for a medication
2    treatment.
3          THE COURT:  Okay.  And, Mr. Kizer, I have to ask you
4    these questions because I can't let somebody enter a plea of
5    guilty if they don't -- because of medication, because of any
6    type of drug or alcohol somebody may not understand what they
7    are doing, so --
8          THE DEFENDANT:  Yes.
9          THE COURT:  What types of side effects does your
10   medication have?
11         THE DEFENDANT:  I've been on the second medication
12   for two and a half years.  It doesn't film my mental capacity
13   at all.  I am fully aware of what is going on.
14         THE COURT:  Okay.  All right.  And Mr. Greene says
15   he's spoken to you and he has no reason to believe that you are
16   not competent.  I will still find you're competent to go
17   forward with the plea.
18       All right.  Now, Mr. Kizer, it's my understanding that you
19   want to enter a plea of guilty to Count 10 of the indictment;
20   is that true?
21         THE DEFENDANT:  Yes, sir.
22         THE COURT:  Okay.  And I know that Mr. Greene has
23   gone over all of your rights with you.  But I'm going to go
24   back through those with you now.  You understand that you do
25   not have to enter a plea of guilty; that you can stand on your

1   plea of not guilty.  And if you do so, you would have a right
2   to a speedy and public jury trial.  You would enter the
3   courtroom with the presumption of innocence, which means that
4   the U. S. Attorney would have to prove the case against you
5   beyond a reasonable doubt, and you would not have to prove or
6   disprove anything.

7       So you could not testify in your own case.  You have the
8   right to be free from self-incrimination.  And so the
9   government cannot come in and put you on the witness stand --
10  and here is the witness stand in this courtroom.

11      And you could decide I'm not going to call any witnesses,
12  I'm not going to testify, I'm not going to do anything, and I'm
13  going to make the government prove the case against you.  And
14  if you were to do that, the jury couldn't use that against you.
15  They couldn't go to back to the jury room and say, "Hey, look
16  Mr. Kizer didn't testify so he must be hiding something."
17  Also, like I said, the government would to put on witnesses and
18  other evidence to prove the case against you.

19      You have a right to be represented by a lawyer.  And if
20  you cannot afford one, one would be appointed to represent you.
21  In a case like this, Ms. Brown would come in, and she would put
22  on her witnesses who would testify as to your involvement in
23  this conspiracy.  The types of witnesses we would hear from,
24  are law enforcement, anybody who investigated the case, people
25  who bought and sold to the conspiracy, so anybody who bought

from one of the conspirators or sold to one of the
conspirators, the conspirators themselves.  We've had a number
of people come -- in this case come in and enter pleas of
guilty.  Those people would likely come into the courtroom to
testify as to who they were dealing with.

Now, you have the right to confront the witnesses against
you, and the way you do that is Mr. Greene would cross-examine
those witnesses and make sure that the testimony they are
giving is both truthful and accurate.  Also, the government
likely has physical or tangible evidence.  So the
methamphetamine itself, any photos of the places where the
drugs were being handled, photos of people coming and going
from those places.  I think in this case we have some wiretaps,
or people on the phone talking to each other talking about what
they're doing, those types of things.

And I would imagine that the government is going to come
in and ask to have those items introduced into evidence.  You
have a right to object to that evidence, and then I have to
decide whether it comes in or not.  Now, once the government
has put on its case, you have the right to call witnesses to
testify for you if you choose to do so.  You don't have to, but
if you have people who can come in and testify for you, you
have the right to call them.  You also have the right to
testify in your own case.

While you have the right not to testify, if you choose to

1    take the witness stand and tell the jury what happened, you
2    have the right to do that as well.  Just know that, if you
3    testify or you call witnesses to testify, the government would
4    then have the right to cross-examine you and your witnesses to
5    make sure that the testimony you have given is truthful and
6    accurate.
7         Once all the evidence is in, the jury goes to the jury
8    room and decides whether the government proved the case against
9    you.  If the jury determines that the government proved the
10   case against you beyond a reasonable doubt, that jury will find
11   you guilty.  If the jury determines that the government did not
12   prove the case against you beyond a reasonable doubt, that jury
13   will find you not guilty.  If you are found not guilty, then
14   your case is over, and the government cannot bring this case
15   against you again based on these facts.
16        If you're found guilty, you have a right to an appeal.
17   Now, understand that your jury has to be unanimous.  So what
18   that means is all 12 jurors have to find you guilty or not
19   guilty.  If we have a 11 jurors who find you guilty and one
20   juror who finds you not guilty, that is not a verdict.  If we
21   have 11 jurors who find you not guilty and one juror who finds
22   you guilty, then that is not a verdict either.  Under either of
23   those scenarios, I would have to declare a mistrial, and then
24   it would be up to government to determine whether it wants to
25   bring the case back to trial.

1    So going back to appeal.  On appeal, your case would go to
2    three judges sitting in St. Louis.  That's where our Court of
3    Appeals is.  And those judges would not hear new evidence,
4    Mr. Kizer.  So if you had a witness who didn't show up or you
5    had a document that you couldn't find and you found it after
6    the trial, it doesn't matter.  What the Court of Appeals does
7    is it reads transcript of the trial.  And you can see the court
8    reporter typing everything here.

9    And then your lawyer would file a brief with the Court of
10   Appeals explaining all the mistakes I made during the course of
11   your trial that caused you to lose.  And the government would
12   file a response brief explaining either that I did not make
13   mistakes or that the mistakes I did make were not what caused
14   you to lose; that you were found guilty based on the evidence,
15   having nothing to do with any mistakes I made.

16   The Court of Appeals would read those briefs, look the
17   transcript of the trial, and would determine if I made mistakes
18   that caused you to lose.  In the law that's called "error."
19   All it means is a mistake.  Now, if the Court of Appeals
20   determines that I did commit an error that caused you to lose,
21   the Court of Appeals would reverse the jury's verdict, send the
22   case back down here, and we would try your case again.  If the
23   Court of Appeals determines that I did not make mistakes that
24   caused you to lose, the Court of Appeals would affirm the
25   jury's verdict, and your case would be over.

1        And do you understand that those are the rights that you
2   are giving up?
3            THE DEFENDANT:  Yes, sir.
4            THE COURT:  We will not have a trial.  Many of your
5   appeal rights -- your right to appeal your finding of guilty,
6   which I'll do today, and the -- your sentence are given up
7   unless I give you a sentence above the guidelines range and
8   unless the government's lawyer commits misconduct or Mr. Greene
9   is found to not have given you appropriate legal advice or --
10  not legal advice, but if he has not met the standard of
11  providing you adequate assistance in your case.  Unless those
12  three things are found, you give up your right to appeal.
13       Do you understand that?
14           THE DEFENDANT:  Yes, sir.
15           THE COURT:  Okay.  Do you understand -- I was looking
16  through your record, and one of the things I saw is I don't
17  think you have any prior convictions or anything.
18           MR. GREENE:  No, Your Honor.
19           THE COURT:  And so this is one of those cases where,
20  by entering this plea of guilty, you'll give up certain
21  valuable civil rights, like the right to vote, the right to own
22  a firearm, the right to hold public office.
23       Do you understand that?
24           THE DEFENDANT:  Yes, sir.
25           THE COURT:  Okay.  And do you understand that we

don't have an expungement law in the federal system.  So if
you -- normally in state court if you're found guilty of a drug
crime or a nonviolent crime, you can come back later and ask to
have your record sealed or expunged.  We don't have an
expungement law in the federal system.  So this will go on your
record, Mr. Kizer, and I don't have a way of ever removing it.

     Do you understand?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Now, have you had a chance to talk to
Mr. Greene about the possible sentence you could receive?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Okay.  Now, based on the law -- and he's
probably explained you this:  In the federal court, we have our
law that tells me what the minimum and maximum sentences are
that I can give you.  I have to give you a sentence within the
range provided by the law.  In addition to the law, we have
sentencing guidelines that help me determine what an
appropriate sentence is for you.  I am not required to give you
a sentence within the range provided by the guidelines as long
as I give you a sentence within the range provided by the law.

     Do you understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  With regard to the law, the penalties for
conspiracy to distribute and possess with intent to distribute
methamphetamine is not less than ten years of imprisonment, so

1    I can give you anywhere from ten years to life of imprisonment.

2         Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  With regard to -- and I understand that

5    with regard to a fine, I can -- your fine would be not more

6    than $10 million.  And with regard to supervised release, your

7    range of supervised release is not less than five years but up

8    to life.  You'll also have to pay a special assessment of $100.

9         Do you understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Okay.  Now, typically, I would not go

12   through the guideline range with you, but we are set this

13   morning to also sentence you.  And so I'll just briefly touch

14   on what I've calculated would be the guidelines range, and I am

15   not going to go through all of the calculations.  I understand

16   we don't need to do all of that because -- but I am basically

17   just going to set out what your guideline range would be

18   without any other agreement.

19        And I understand, Mr. Greene, you are trying to work some

20   things out --

21             MR. GREENE:  Yes, Your Honor.

22             THE COURT:  You're trying to work some things out.

23   But typically, I show that without the third point -- and I am

24   not going to go through a detailed analysis.  Without the third

25   point being removed, your guideline range for imprisonment

1  would be 78 to 97 months of imprisonment.  And with the third

2  point removed, it would be 70 to 87 months of imprisonment,

3  which is less than the ten years required by the law.

4        And I imagine, Mr. Greene, that is what you're trying to

5  work out so if you can see get him below the mandatory minimum.

6              MR. GREENE:  Yes, Your Honor.

7              THE COURT:  So that is generally the range -- if

8  you're successful in working out what you're working out, you

9  have an opportunity to get below the ten-year mandatory

10 minimum, and those would be the ranges provided by the

11 guidelines.

12       Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Okay.  Do you understand that, if I were

15 to give you a sentence more severe than what you're expecting,

16 that you can't withdraw your plea of guilty?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  And do you also understand that we don't

19 have parole in the system, in the federal system, so if you do

20 get prison time, you will not go before a parole board at any

21 point and get out early.

22       Do you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Okay.  And I understand there is a plea

25 agreement in this case; am I right?

1          MS. BROWN:  Yes, Your Honor.

2          THE COURT:  Ms. Brown, would you state for the record

3   what the terms of the plea agreement are?

4          MS. BROWN:  Yes, Your Honor.  The defendant will

5   enter a guilty plea to conspiracy to distribute and possess

6   with intent to distribute at least 500 grams of a mixture or

7   substance containing a detectable amount of methamphetamine, a

8   violation of Title 21 United States Code sections 846 and

9   841(b)(1)(A) as set forth in Count 10 of the second superseding

10  indictment.

11      The elements of the offense are as follows:  Two or more

12  persons reached an agreement or came to an understanding to

13  commit offense, namely possession with intent to distribute and

14  distribution of a mixture or substance containing

15  methamphetamine.  The defendant voluntarily and intentionally

16  joined in the agreement or understanding either at the time it

17  was first reached or at some time later while it was still in

18  effect.  And at the time the defendant joined in the agreement

19  or understanding, he knew the purpose of the agreement or

20  understanding.  And the agreement or understanding involved 500

21  grams or more of a mixture or substance containing

22  methamphetamine.

23      In Section 4 entitled "Waivers," the defendant is going to

24  waive all nonjurisdictional issues, but he will reserve the

25  right to appeal claims of prosecutorial misconduct.  And at

sentencing, if the defendant makes a contemporaneous objection because the sentence imposed is above the guideline range that is established.

The defendant expressly acknowledges and agrees the United States reserves it's right to appeal the defendant's sentence under Title 18 United States Code section 3742(b) and United States v. Booker.  The defendant waives his right to collaterally attack the conviction and sentence and any post-conviction proceeding including one pursuant to Title 28 United States Code Section 2255 except for claims based upon ineffective assistance of Counsel or prosecutorial misconduct.

The defendant waives his right to have his sentence modified pursuant to Title 18 United States Code section 3582(c)(2).  He will waive any restitution, and he will waive any forfeitures that are listed in Paragraph 12 of the plea agreement.

Paragraph 5 entitled to "Stipulations."  The parties agree that the base offense level for this offense is determined by the quantity of drugs.  The parties agree and stipulate that the quantity of drugs involved in the offense and reasonably foreseeable to the defendant, including relevant conduct, is at least 500 grams but less than 1.5 kilograms of a mixture or substance containing methamphetamine.  Thus, the base offense level is 30.  However, nothing in the plea agreement shall prevent the base offense level and/or the defendant's criminal

1   history can category from being calculated under United States

2   Sentencing Guideline section 4B1.1, career offender, if found

3   to apply.

4        The defendant is eligible for a two-level reduction for

5   his acceptance of responsibility unless he takes any action

6   between entry of guilty plea and imposition of sentence that is

7   inconsistent with his acceptance and responsibility.

8        If it is over a -- offense level over 16, United States

9   will determine at sentencing whether to award the third level

10  of reduction.

11       The parties agree the defendant is not eligible for safety

12  valve relief pursuant to 18 United States cod -- United States

13  Code section 3553(f), and he will not receive a two-level

14  reduction pursuant to the United States Sentencing Guideline

15  section 2D1.1(b)(18).

16       The parties agree no one will seek any additional offense

17  level increase or decrease under sections 2D1.1, Chapter 3, or

18  Chapter 5 of the guidelines.

19       In Paragraph 12 on Page 8, the defendant agrees to forfeit

20  all the property located that was used to commit or promote the

21  commission of the offense charged in the indictment and

22  facilitate the offenses in the indictment for the property

23  listed in Paragraph 12.

24       Your Honor, the rest contains the standard factors of our

25  plea agreements.

1          THE COURT:  Let me ask you this:  I don't want to dig
2  too deeply into that.  We were set for sentencing today, and I
3  see this plea agreement had that you wouldn't seek to below the
4  mandatory minimum.  Is there some other provision that will
5  allow him to get there, and that's why we're holding off?
6          MS. BROWN:  Yes, Your Honor.
7          THE COURT:  Okay.  That's all I need to know.
8          MS. BROWN:  Yeah, yes.
9          THE COURT:  All right.  Mr. Greene, did you -- are
10 there any other terms that you want to put on the record?
11         MR. GREENE:  No, Your Honor.
12         THE COURT:  Okay.
13         THE COURT:  And, Mr. Kizer, did you listen to the
14 terms that were just set forth by the U. S. Attorney?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  Were those the terms that you understood
17 were contained in your plea agreement?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  Okay.  You understand your plea agreement
20 is an agreement between you and the government, and I am not
21 bound by it?
22         THE DEFENDANT:  Yes, sir.
23         THE COURT:  Okay.  Having discussed all of your
24 rights with you, do you still want to enter a plea of guilty?
25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Has anybody made any threats or promises
2  to you to get you to plead guilty?
3          THE DEFENDANT:  No, sir.
4          THE COURT:  Are you pleading guilty voluntarily?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  Okay.  Ms. Brown, would you state for the
7  record what facts you would put on to support -- or in support
8  of Count 10?
9      Oh, I have it.
10     All right.  Mr. Kizer, normally -- and I'll say this for
11  your family, too.  Normally at this point the government would
12  get up and read through all the facts they would put on to
13  support the case against Mr. Kizer, or the defendant.  In this
14  case because the fact sheets are somewhat lengthy, what I've
15  been allowing the government to do is to submit those -- her
16  facts -- in writing to the defendant and to Counsel, and they
17  can take a look at it go over it.  And if they agree to the
18  statement, just sign off on it instead of us reading it here in
19  open court.
20     Mr. Kizer, have you had a chance to take a look at the
21  facts -- or the statement of facts that have been provided by
22  the U. S. Attorney?
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  Mr. Greene, have you had a chance to take
25  a look at this?

```
1              MR. GREENE:  Yes, Your Honor.
2              THE COURT:  Okay.  And, Mr. Kizer, I see that your
3    name appears on this statement of facts.  Did you sign it?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  Are there any facts in the statement of
6    facts that are inaccurate?
7              THE DEFENDANT:  No, sir.
8              THE COURT:  And, Mr. Greene, do you know of any facts
9    in the statement of facts that aren't there?
10             MR. GREENE:  No, Your Honor.
11             THE COURT:  And I see that you signed off on it as
12   well; is that true?
13             MR. GREENE:  Yes, sir.
14             THE COURT:  Okay.
15             MS. BROWN:  Your Honor, will that be filed under
16   seal?
17             THE COURT:  It will be filed under seal.
18             MS. BROWN:  Thank you, Your Honor.
19             THE COURT:  And just so I have -- make sure the
20   record is clean.  Mr. Kizer, is the statement of facts
21   accurate?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  Okay.  And do you understand the nature
24   of the charge against you and the maximum penalty you face?
25             THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  And how do you plead to Count 10 of the

2   September 3, 2019, second superseding indictment?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  Did you, in fact, commit the offense as

5   charged?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  And, Mr. Greene, do you know of any

8   reason why I should not accept the guilty plea?

9          MR. GREENE:  No, Your Honor.

10          THE COURT:  All right.  I find that the offense, as

11   charged in Count 10 of the September 3, 2019, second

12   superseding indictment, was committed by the defendant, Heath

13   kizer.  I also find that Mr. Kizer is entering this plea of

14   guilty voluntarily with full knowledge of the facts, his

15   rights, and the consequences that he faces.  And for those

16   reasons, I accept the guilty plea.

17          And normally at this point, Mr. Kizer, I would tell you

18   two things.  I would tell you that probation is going to go out

19   and perform a presentence investigation and prepare a report.

20   But that has already been done.  And so we're not waiting on

21   that.  There are some other issues you need to take up with the

22   government before we -- before I take up your sentencing.

23          Second thing I would normally tell you is that, because

24   you're entering a plea of guilty to a drug crime that carries

25   with it up to ten years of imprisonment; that you're a

1    mandatory detainee.  But we've had an issue here with the
2    Marshal Service.  We don't have -- they're not available right
3    now.
4         And so my understanding is we are not going to take you
5    into custody today.  And I don't think the government has any
6    objection to me leaving him out pending sentencing.
7              MS. BROWN:  No, Your Honor, we don't.
8              THE COURT:  Okay.
9              MS. BROWN:  But I think there is a request for a
10   modification for his conditions from Mr. Greene.
11             THE COURT:  Okay.  And what is the request for
12   modification?
13             THE PROBATION OFFICER:  So he had been previously
14   staying with his aunt in Fayetteville, but she had -- her son
15   came from New York, and he was a COVID.
16             THE COURT:  I understand.
17             THE PROBATION OFFICER:  He's been staying with his
18   sister whom I've been in constant contact with.
19             THE COURT:  And which sister is that?
20             THE PROBATION OFFICER:  Heather Albright.
21        And his officers are aware of him staying there.  I think
22   it's just a formality.
23             THE COURT:  Now, I'll say this.  I didn't know about
24   this change of -- I don't want to call it "custody," because
25   it's not really custody.  What is it?  A change of what?

1          MS. BROWN:  Third party custodian, Your Honor.

2          THE COURT:  I guess it is custody.  So I hadn't heard

3   about this.  But one of my favorite clerks, who I stay in

4   contact with, a former clerk, is Andrea Duvall, and Andrea is

5   from Atkins.  And so if I get a case from Atkins, the first

6   thing I do is text her and say, "Do you know these folks?"

7       And she said she knew Heather McIver.  And so I gave her

8   your age, because I have it in the documents.  She said, "I

9   didn't know she's quite that old."

10      But she vouched for not knowing -- because I was reading

11  your letter.

12          THE DEFENDANT:  Uh-huh.

13          THE COURT:  And so, you know, this is what I do; I do

14  my own little background investigations.  And she -- Andrea

15  vouches for Heather.  So I'll let him go and go to custody with

16  Heather.

17      Now, don't let me down.

18          HEATHER ALBRIGHT:  I won't.

19          THE COURT:  Don't let him do anything or get involved

20  in anything that he shouldn't.

21      And, Mr. Kizer, if that happens -- I would imagine Andrea

22  is probably close to your age.  I don't know -- I don't know

23  which one she's closer to.  I would have thought she was around

24  37, 38, but I never ask my clerks how old they are, and so I

25  don't know.

```
 1        Anyway, that will be -- that's okay.  And he can go and
 2    stay --
 3             THE PROBATION OFFICER:  All right.
 4             THE COURT:  -- with Ms. -- it's not Kizer anymore.
 5             HEATHER ALBRIGHT:  Albright.
 6             THE COURT:  With Ms. Albright.  And once we are ready
 7    for sentencing, we'll bring you back in, and we'll sentence
 8    you.  Okay?
 9             THE DEFENDANT:  Uh-huh.
10             THE COURT:  Stay in contact with probation and make
11    sure you do exactly what probation tells you because, if you do
12    anything, Mr. Kizer, that violates the terms of your release,
13    I'm going to send somebody to pick you up.  Okay?
14             THE DEFENDANT:  Yes, sir.
15             THE COURT:  Okay.  Is there anything else we need to
16    take up?
17             MS. BROWN:  Your Honor, just I move to dismiss any
18    other counts that are against Mr. Kizer in any of the other
19    indictments.
20             THE COURT:  And that motion is granted.
21             THE COURT:  And, Ms. Brown, if you have spray, it's
22    ready for you.
23        Let's recess.
24        (Adjourned at 12:40 p.m.)
25                            -oOo-
```

1                        REPORTER'S CERTIFICATE

2

3

4

5        I certify that the foregoing is a correct transcript of

6   proceedings in the above-entitled matter.

7

8   /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                              Date:  04/25/2022
9   _____
    United States Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25