IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

        Plaintiff

  Vs.                No.  4:17-cr-00293-BSM
                        July 20, 2022
                        Little Rock, Arkansas
RALPH A. ROSS           8:19 a.m.

        Defendant


TRANSCRIPT OF SENTENCING HEARING

BEFORE THE HONORABLE BRIAN S. MILLER

UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Plaintiffs:

    STEPHANIE MAZZANTI
    U.S. Attorney's Office
    Eastern District of Arkansas
    P.O. Box 1229
    Little Rock, Arkansas 72203

On Behalf of the Defendants:

    LEE DEKEN SHORT
    Short Law Firm
    425 West Broadway, Suite A
    North Little Rock, Arkansas 72114


    Proceedings reported by machine stenography and
displayed in realtime; transcript prepared utilizing
computer-aided transcription.

1          THE COURT:   This is United States of America

2    versus Ralph Ross.   The case number is 17-cr-293.   Mr.

3    Ross is in the courtroom with his lawyer, Lee Short.   The

4    United States is being represented by Stephanie Mazzanti

5    and Liza Brown.

6          Just for some background, I sentenced Mr. Ross in May

7    -- on May 27 of 2021.   And at his hearing, I think I

8    calculated the guidelines range to be 24 to 30 months of

9    imprisonment.   I varied upward.   At that hearing,

10   Mr. Short objected to several statements in the

11   presentence report dealing with some background of

12   Mr. Ross.   I overruled the objection, but I didn't provide

13   the basis for overruling the objection.

14         At that same hearing, the government introduced six

15   exhibits which, to be very fair, I did not review before

16   pronouncing sentence.   And I think I explained -- I went

17   back and looked at the transcript.   I think I explained to

18   the lawyers and Mr. Ross that I looked through the file, I

19   looked through everything, and my initial thought was 36

20   months, which is the statutory -- well, which was the

21   statutory max for the offense that he plead guilty to,

22   although the guidelines range was 24 to 30 months.

23         The government argued at the hearing that a high end

24   of the guidelines range was appropriate, that I would be

25   justified going to 36.

1          I think Mr. Short argued that, for all of the issues

2     that Mr. Ross had faced after being arrested -- I think

3     his house was burned down I think.  I think he'd been shot

4     or something like that.  He had gone through a lot of

5     stuff leading up to it -- hat I would be justified in

6     varying downward, giving him a probationary sentence.

7          The case was appealed because I gave him -- I varied

8     upward and gave him 36 months.  The case was appealed.

9     The Eighth Circuit in a very short per curiam -- and I'll

10    tell you that sometimes I disagree with the Eighth Circuit

11    and I get the impression that they were not in the room so

12    they didn't see what I saw, but I think in this case they

13    were right.

14         Mr. Short, I give you a lot of credit for appealing

15    this.  What the Eighth Circuit is, essentially, saying in

16    this per curiam -- and they didn't get into a lot of

17    detail -- is, Judge, you can't overrule an objection and

18    you can't give somebody -- you can't vary upward without

19    at least articulating why you're doing it.  When the

20    government gives you documents to look at, you can't

21    essentially make a record saying, I'm not going to look at

22    your documents, but I'm going to give an upward variance

23    because I think that's the right thing to do.

24         I don't necessarily agree with that but I understand

25    that sentiment.  If you're going to sentence a man to an

1    above guidelines range, you at least should explain to him

2    why you're doing it and you should at least look at the

3    documents in the record. They remanded back down. And

4    they didn't say that, Judge, you can't give him an above

5    the guideline sentence. They just said, you have to at

6    least explain why you're doing it.

7        And the Court of Appeals said I can't take testimony

8    now. So the government can't come in here with witnesses

9    and try to shore up the document. I have to do it based

10    on the record I have.

11        Okay. So I went back. I have the record. I have

12    what the government gave to me. And the government -- I

13    looked at the hearing transcript. And the government

14    relied a lot on the emails or the -- I guess they're

15    emails from prison. I think that's what the government

16    focused a lot of its time in the hearing on admissions

17    made by Mr. Ross in these conversations back and forth.

18        I'm going to tell you -- and I'll say this to you,

19    Mr. Short, I went back -- and this is going to give you

20    another issue to appeal. I went back and looked at the

21    statements of Robert Chandler and Kathryn Ross. Kathryn

22    Ross is Mr. Ross' daughter. One of the issues deals with

23    her being introduced to drugs by Mr. Ross. I don't think

24    that was part of her proffer, but she does go through all

25    the things that Mr. Ross was doing.

1          There was some argument in the original hearing that

2    Mr. Ross was pleading guilty to a misprison and whether he

3    had actually committed -- had been part of the conspiracy.

4    And Mr. Short said, no, he wasn't part of the conspiracy.

5    This was always a misprison case.  He was never going to

6    plead guilty to a conspiracy.  Ms. Mazzanti said, I

7    understand that, but we had the goods on him to take that

8    case to trial.

9          And I went back and looked at the -- these proffers

10   by -- there were three of them from Helms, Chandler, and

11   Ross.  I will discard Helms, and I'll tell you why in a

12   minute.

13         Chandler gave a statement that, well -- hold on just

14   a second, because there's some hearsay stuff in here.

15   About going to Ross's house and Ross not answering the

16   door.  He saw his property.  There was some property that

17   was stolen from him in Ross' garage.  He knew the property

18   belonged to him because there was a family photo involved.

19   And then he talks about knowing where Ross lived.

20         Kathryn Ross gave a statement to gave a statement to

21   -- gave a proffer that, in regards to Ross' trap house,

22   individuals were always in and out of the residence around

23   April 2016.  These individuals would go to Ross'

24   residence, use methamphetamine and distribute

25   methamphetamine.  Ross has seen Mr. Ross distribute

methamphetamine to Jimmy Savage, Sunny Jo Spicer, Stanley

LNU, and Amos Adame on several occasions -- on several

occasions.  Quantities of distribution were between one

gram and eight balls.  These transactions would usually

occur -- usually occur around the first of the month due

to reset of the money.  She said she obtained an eight

ball from him in her adult life.  She moved out of Ross'

house because of a theft of property.  And then I think

that's her -- that's all she says about Ross.

So her testimony was Ross had an ongoing drug

operation at his house.  I understand Mr. Ross would

object to that and say that those statements, although

given to the government, are not reliable.

Here's the problem -- and this is going to present

your issue for appeal, Mr. Short.  The problem is, is that

I read through the entire statements of these two people,

both of whom testified at the trial, both of whom were

cross-examined at trial, and both of whom came across --

who gave testimony with regard to Millsap and the other

parts of the conspiracy that were consistent with the

statements they gave here.

Now, they didn't talk about Ross at trial, Mr. Ross,

because he was not part of the trial but their testimony

was consistent with their statements that they had given

-- their proffers they had given and it held up under

1    cross-examination.  Not only did I find them to be
2    credible, so it leads me to believe were would they lie
3    about Ross in one part of their proffers and then tell the
4    truth at trial.  It doesn't make sense to me.  So I find
5    these statements to be reliable.
6        I understand Mr. Ross says they're not true and he
7    objects to them, but I'm -- my finding is that these
8    statements are reliable and they're credible enough for me
9    to rely on in determining that Ross, although he plead
10   guilty to a misprison, he had a drug operation going on.
11   And I think that's sufficient to give him 36 months of
12   imprisonment and vary six months above the guideline
13   range.
14       I'll let you make your objection to it.  And I think
15   the objection -- the main objection is that the Eighth
16   Circuit tells me, Judge, you cannot consider new evidence.
17   So there's an issue as to whether the trial occurred after
18   the sentencing of Mr. Ross, right?
19       So he's sentenced in May -- on May 27.  The trial --
20   well, I'll tell you.  Robert Chandler testified on
21   September 17, so approximately four months later.  Or was
22   that in 2022?  It was '21 right?  So about four months
23   later, Ross -- I mean, Chandler testified.  In the same
24   week on September 17, Kathryn Ross testified.  So they
25   testified after the sentencing hearing.

1    And I don't know whether the Eighth Circuit would
2  view that as me relying on new evidence or new information
3  or on a credibility determination that I would make on
4  testimony that was after the hearing.  So I don't know if
5  they would say hey, look, no, no, no, no.  You have to
6  look strictly at the documents and make a credibility
7  determination based on the documents without considering
8  what you saw at trial.  I don't know.
9    But I want to be honest about the reason why I find
10 these documents credible because I saw them testify at
11 trial and I saw how they held up at trial.  And it just
12 doesn't make sense to me that they would have been
13 truthful about some things but in their statement lying
14 about others.
15    So I'll turn it over to -- and so I don't know that
16 we necessarily need to go through a calculation of the
17 guidelines ranges.  They all stay the same as what they
18 were.  The statutory ranges we already have those.  I
19 think the question is -- that I have to take up today is
20 whether I -- in the new sentence, what the appropriate
21 sentence is.  I think my sentence was appropriate, and I
22 think it's justified by the documents and by the record
23 that I had at the time that I sentenced him the first
24 time.  I just failed to articulate them.
25    Mr. Short, I'll give you a chance to object to it and

1    make arguments.

2        I'll say this for the record, too.  I think this is

3    the first time ever in 14 years that I have been reversed

4    on a sentencing where the Eighth Circuit says I gave

5    somebody a little more time and I didn't -- where I gave

6    them the exact same sentence I did the first time,

7    although I have -- when I get back -- and let me say this

8    for the record so the -- my Eighth Circuit judges

9    understand this.

10       There are times when I think -- as a matter of fact,

11   every time I sentenced somebody I thought I was correct.

12   I did.  There are times they send it back.  And I say,

13   it's not even worth going back through all of this to give

14   them the same sentence.  It doesn't matter.  So I just

15   give them a guideline sentence and let it go.

16       I think that's happened in 14 years each time I've

17   been reversed on appeal.  I just say, it's not worth going

18   back in and resentencing and giving him above the

19   guideline range.  I just give them what they want.

20       But I think here because of the record I have and the

21   case that we have and all of the evidence I have seen in

22   this case including the trial, I think it would be a

23   miscarriage of justice for me now to just say, give him a

24   guideline sentence and let him walk because I think he

25   deserves a 36 month sentence, Mr. Short.

1    I know you disagree with me.  I know you do, but
2  that's my judgment.  So I'll let you make your record on
3  it.
4         MR. SHORT:  Thank you, Your Honor.
5    Your Honor, let me start with a few objections;
6  number one, being that the -- I thought the Court of
7  Appeals was extremely clear that this Court can't consider
8  new evidence that wasn't presented the first time.  The
9  bulk of what this Court has discussed in justifying it's
10 36-month sentence has been new evidence that was not
11 presented in the original sentencing hearing as reflected
12 by the transcripts of the sentencing hearing previously.
13 Therefore, this Court is not abiding by what I believe to
14 be the mandate of the Eighth Circuit.  And therefore, I
15 would object.  And I believe the Court's already
16 recognized that it has accepted evidence that was not
17 presented at the first hearing.
18    The second objection would be, this Court is relying
19 on evidence that I that was not presented in any way in
20 Mr. Ross' case.  It was not presented in his case, it
21 wasn't presented at his sentencing.  It hasn't even been
22 presented today.  This Court is actually -- the bulk of
23 what this Court is considering is evidence I have never
24 seen ever at any point, not given to me in any manner, not
25 given to me by transcript, not given to me by records.

And this Court is making not only credibility calls based on it, but using it to justify an upward variance.  And I have never seen that evidence.

Based on -- I think that to consider evidence that I have never seen or been privy to would both, again, violate the Eighth Circuit's rule not to look at new evidence, but it would be a violation of my client's rights as far as due process.  It would be a violation of his rights as far as his right to counsel because what's the point of having counsel if counsel hasn't -- doesn't have the ability to contest evidence that this Court's using.  I mean, there is no sense in having counsel because I can't contest what I don't know about, haven't seen, haven't been provided.

So I would object secondly on that grounds.

The third one is, I would object on the fact that this Court is -- has come to this hearing clearly trying to justify a sentence of 36 months as opposed to taking a fresh look at this case.  This 36-month sentence today is justified based on a history of drug dealing that was not the basis whatsoever of this Court's upward variance previously.  This Court varied upward last time we were here over a year ago based on the allegations that he had given his daughter methamphetamine and gotten her addicted to drug use and other allegations that she had made.  And

1  this Court said, I don't know if that's true but I find
2  that reprehensible.  And I think that's certainly true.
3  If that is true, that is reprehensible.  I mean, that's
4  horrible.

5      But I think what the Eighth Circuit reversed on was
6  this Court said, I don't know if that's true, but I'm
7  still going to vary on that basis.  That's what I believe
8  the Eighth Circuit -- that's what I wrote the appeal based
9  on, was this Court varied without saying, I know this to
10 be true or I find this to be true.  This Court said, I
11 actually don't know.

12     The government has made a long argument that he
13 introduced his daughter to methamphetamine involuntarily
14 and subjected her to other horrible things in her
15 childhood.  And this Court's response was, I don't know if
16 it's true, over my objection, but I'm still going to find
17 it reprehensible and use it to justify an upward variance.

18     Today, this Court has moved on from Ms. Ross'
19 childhood problems to a new justification for 36 months,
20 new and different justification.  While this Court has
21 every ability in the world to go back and review the
22 record and make an appropriate sentence, the fact that
23 this Court is just going to select a new justification for
24 36 months offends me and because -- because that wasn't
25 this Court's justification at the time on the record.

1          THE COURT:  No, no, no.  Your point is well

2    taken.  Your point is well taken.  But what the Eighth

3    Circuit said was, go back and use the record you have.

4    And the problem is -- and that's why I started this

5    hearing by saying the government gave me six exhibits

6    before the hearing.  And if you look at the transcript of

7    the hearing, I did not -- I received those exhibits, but I

8    didn't review them at the hearing.  So I made my decision

9    based on information I gleaned from the record before the

10   hearing without looking at the government's exhibits.

11          Well, the Eighth Circuit says, go back and

12   resentence.  You can't sentence him to an above the

13   guideline sentence without making a specific finding based

14   on the record you have, but it said take -- you can make

15   that determination -- it doesn't say specifically, but it

16   says you can resentence him based on the record you have.

17   If I go back and I look at the record -- which I sat down

18   and read the exhibits after -- after I got the opinion

19   back.  I said, there's sufficient basis to sentence him

20   above 36 months.  It's not the same basis I gave the first

21   time, but I didn't give that basis, Mr. Short, because I

22   didn't read the exhibits.

23          I think I'm appropriate.  And I understand your

24   point.  And I'll shut up so you can make your objection,

25   but I just wanted to explain to you that the documents I

1    used to make this determination were in the record.  I
2    just didn't review them.
3          MR. SHORT:  I understand that, Your Honor.  I've
4    said this to you before.  Your Honor and every other judge
5    in this courthouse is smart enough to justify anything
6    that's that Your Honor wants.
7          So if you're working backwards, you're going to be
8    able to do it.  I mean, if you're starting at a position
9    of, let me see if I can justify 36 months or whatever
10   we're trying to justify in the world, every judge in this
11   building is smart enough to be able to do it.
12         And what my problem is, is why are you working
13   backwards?  Because there is absolutely nothing in the
14   record to justify a probation sentence.  I mean, this man,
15   if you look at the cooperation hearing as well, I mean,
16   the things that this man did for the government were
17   incredible.  I mean, I have never had someone do that for
18   the government.  They -- not only that, the injuries that
19   he suffered and the plight he suffered as a result of what
20   he did for the government are things that I've never seen
21   before either.
22         So if this Court started with the presumption that
23   probation was correct, it could easily justify that as
24   well.  So this Court could absolutely justify either way.
25         So when this Court says, I can justify 36 months, of

course this Court can.  Of course this Court can.  But this Court could justify probation.

I'm asking the Court not to start with the presumption that it was correct the first time on a completely different grounds and just start at the guidelines and this new -- and this new variance the Court is going on is based on just more -- you think that the offense he plead guilty to, he could have possibly been convicted of more.  Yeah, he also could have possibly not been convicted.

I don't know why we're -- why we're not giving him credit for the offense he plead guilty to.  If you want to ding him for other things in his life, that's -- those are I think appropriate variances, but just this offense was a little greater than this Court thinks he plead to is a tough way to discredit his cooperation and the injuries he suffered and enhance him six months because I'm not asking for a guideline sentence.  It's not like this Court is going up six months or whatever, 12 months from what I'm asking for.  I'm asking for probation.  And I know he already served over a year.  I'm asking for probation based on the extreme efforts and injuries that he suffered in the course of this case that is now I've represented him -- I looked at it today -- almost five years.  Five years he was -- so we're talking about a man who has been

1    living this -- I've been living it with him five years.

2    And so I think that's significant.

3        I know the Court understands my objections.  I just

4    want to make sure the Court is overruling my objections so

5    that -- insofar as there are any grounds and he won't

6    already be released that I would have the ability to

7    appeal.

8            THE COURT:  Let me hear from the government

9    first.  What's your position Ms. Mazzanti?

10           MS. MAZZANTI:  Your Honor, first of all, I don't

11   think Mr. Short's characterization of the prior hearing is

12   accurate at all.  So the Court did make a couple of

13   offhand comments about what happened to the defendant's

14   daughter being reprehensible, and that was fair frankly.

15   But I'm not asking the Court to consider any of that.

16       The Eighth Circuit made it very clear that the Court

17   is not to consider the allegations about Ms. Ross'

18   childhood.  Even though I think they're completely true, I

19   wouldn't have relied on it at the last hearing had I not,

20   but i'm very specifically asking the Court not to consider

21   it.  And I think the Court's made it clear the Court is

22   not considering the allegations by Ms. Katie Ross'

23   childhood.

24       At the prior hearing, the Court did not exclusively

25   rely on what happened to Katie Ross in her childhood as a

1   basis for an upward variance.  Specifically, on Page 26 of

2   the transcript the Court even took into account what had

3   happened to the defendant in choosing the appropriate

4   sentence in this case.  The Court stated, looking at what

5   you've gone through, being shot, having your house burned

6   down, it's like it breaks my heart, it makes my heart

7   break.  But then I look at it and I think, given the

8   nature of this case, given the nature of your involvement

9   with it, given the nature of your criminal history, I

10  think three years is appropriate, Mr. Short.

11      The Court was very clear about how and why it was

12  varying upward.  Even if the Court completely disregarded

13  Government's Exhibits 4, 5, and 6 -- and the Court's

14  already said it's not relying on Mr. Helm's statement.

15  But even if the Court completely disregarded those

16  paragraphs in the PSR and the government's exhibit,

17  there's plenty already in the uncontested record to

18  establish the actual nature of Mr. Ross' involvement in

19  this offense, the nature of his involvement, and his

20  criminal history in the form of the unobjected to portions

21  of the PSR which the Court is free to rely on.

22      Specifically, whenever you look at paragraph 14 of

23  the PSR, it talks about -- and this is unobjected to.  It

24  talks about Kathryn Ross' involvement.  And in the course

25  of talking about Kathryn Ross' involvement in the

1   methamphetamine trafficking conspiracy, it talks about how

2   Ms. Ross also provided drugs to her father, this

3   defendant.  It also talks about Mr. Ross receiving

4   additional methamphetamine from various sources.  Then if

5   you go to Paragraph 22 of the PSR, which was also

6   unobjected to, it talks about Brittanie Handley receiving

7   distribution quantities of methamphetamine from the

8   defendant -- or providing distribution quantities of

9   methamphetamine to the defendant.  Excuse me.  Ms. Hanley

10  distributed methamphetamine to Mr. Ross in ounce

11  quantities on multiple occasions and she observed Mr. Ross

12  with an ounce of methamphetamine that she did not

13  distribute to him.  Multiple co-conspirators reported that

14  Mr. Ross distributed gram to eight ball quantities of meth

15  during the conspiracy.

16       Then if you go to Paragraph 33, further talks about

17  Mr. Ross' involvement in the conspiracy and the use of his

18  residence essentially as a stash house in providing funds

19  to Katie Ross to get back home whenever she was out there

20  in California getting methamphetamine and during the

21  course of the conspiracy.

22       So there was plenty in the record at the initial

23  sentencing even, if the Court completely disregarded

24  Government's 4 through 6, to give a sentence of 36 months

25  in this case.

1       The government said that a 30-month sentence was

2   justified but the Court would also be justified in a

3   36-month sentence.

4       I'm not asking the Court to rely on the credibility

5   determinations of the witnesses at trial.  I'm not.  I

6   think there's plenty in this record to give whatever

7   sentence the Court deems fair and just considering the

8   3553(a) factors without considering any of those

9   credibility determinations.

10       A large part of what the government's argument was at

11   the sentencing was the defendant's conduct, his violent

12   conduct on pretrial release.  And if the Court recalls, we

13   actually dealt with the issue of bond at the change of

14   plea hearing.  And at the change of plea hearing, my

15   understanding is that the Court credited the government's

16   allegations against the defendant with respect to the

17   aggravated assault and domestic battery against the

18   defendant's girlfriend while he was on pretrial release

19   because the Court chose to detain this defendant despite

20   the fact that he was pleading to a misprison.

21       So I went into a sentencing hearing with the

22   understanding that, essentially, we've already proved at

23   least by a preponderance of the evidence that the

24   defendant beat his girlfriend up, choked her during his

25   time on pretrial release under orders of this Court.  So

that, to me, is some of the most egregious conduct committed by Mr. Ross because it is violent in nature and it happened while he was on pretrail release.

The government again to be safe represented exhibits about the victim of that offense and presented corroborating evidence about what happened.

THE COURT:  Those were part of the exhibits that you submitted at the hearing, right?

MS. MAZZANTI:  Yes, Your Honor.

THE COURT:  What exhibit is that, the one that has her photos?

MS. MAZZANTI:  The photographs are Exhibit 1, Your Honor, part of the package of Exhibit 1.  Then we have the corroboration in the form of the emails that the government relied on for what happened to this victim.

So that alone, to me, is enough right there.  But the Court was free and did consider Mr. Ross as a whole person just as the Court is doing now.  The Court's dealt with this case for a very long time.  The Court has dealt with Mr. Ross for a very long time.

In addition to that, the Court considered the suppression hearing that occurred as the government argued at the last hearing.  You had the suppression hearing about Mr. Ross' confession before you and you heard evidence about that as well and about how Mr. Ross

1    confessed to his involvement in this conspiracy.  So the

2    Court was free to and did appropriately consider all of

3    those things at the last hearing.

4         So I just -- I think that -- honestly, I'm a little

5    taken aback at the assertion that the Court is somehow not

6    being forthright.  I think the Court is being forthright

7    -- more than forthright about its reasoning.

8              THE COURT:  I think what Mr. Short is doing, and

9    I think that's what a good lawyer does, he's focusing in

10   on what the Eighth Circuit narrowed its focus on.  I think

11   -- I made a statement that -- I would say it was a very

12   careless statement about the allegations regarding the

13   daughter.  And I said, well, I don't know if that's true

14   or not.  She's not testified.  She's not here, so I don't

15   know, but I find that the record supports this.  And what

16   the Eighth Circuit interpreted that as, is me saying

17   that's what I was relying on in total.

18        I think Mr. Short -- I think he would be committing

19   malpractice if he didn't come in here and say that that

20   was the only basis for your decision and -- he wouldn't be

21   committing malpractice, but he wouldn't -- I think his

22   argument is appropriate that, no, that was what you base

23   your opinion on because that's what the Eighth Circuit

24   seemed to view as what I base my opinion on.

25        And I understand the Eighth Circuit's position that,

1   if you're going to give a person an above the guideline

2   sentence, even if it's only six months, you have to be

3   tighter with the language, right?  I can't come in here

4   and be loose with my language because it creates problems.

5        Mr. Ross walks out of here believing that -- or he

6   could walk out of here believing that I'm relying on

7   issues that I can't rely on.  So it's asking me to be very

8   tight and concise with my language, and so I get it.

9        That's why, if you look at the opinion, it's a per

10  curiam.  And it's very brief and it just essentially says,

11  go back and resentence him based on the record.  And what

12  the Eighth Circuit -- I'm reading that as though they're

13  urging me just to make sure that I don't say that I don't

14  know what the truth is but i'm still going to give you six

15  months.  So anyway.  I think that's the point.

16        MS. MAZZANTI:  I understand that, Your Honor,

17  but also everyone has the obligation to actually read from

18  the transcript.  The transcript makes it clear to me that

19  the court did not solely rely on that, which we argued in

20  our appellate brief.

21        I think that what the Court has -- did at the prior

22  sentencing is consider Mr. Ross as a whole person as is

23  required under the 3553(a) factors.  And I think the Court

24  is considering Mr. Ross as a whole person in considering

25  the 3553(a) factors here today.

1    I'm asking the Court not to rely on and make it clear

2  that you're not relying on the allegations Ms. Ross made

3  about her childhood.  I think honestly the Court doesn't

4  need to go there to sentence him to whatever the Court

5  thinks is appropriate.

6         THE COURT:  Specifically, and I think I've

7  already made this clear that I -- in making my conclusion

8  today or determination today, I am not relying on Ms.

9  Ross' childhood and the issues regarding that.  But I am

10  relying on the entire record.  And I can't disregard the

11  entire record in determining what an appropriate sentence

12  is.

13     I understand Mr. Short's position that he wants --

14  that he believes the Eighth Circuit has given me a mandate

15  to look at a very narrow area.  I disagree with that.  I

16  think the Eighth Circuit said, go back and resentence him

17  -- and that's very broad -- and use the record you have to

18  make your determination.  That's what I've attempted to

19  do.

20     Mr. Short, I'm going to overrule you and --

21         MR. SHORT:  On all grounds?

22         THE COURT:  Yes, sir.  Just so we have a record

23  on it.  And I think you made your record for appeal.

24     Now, the question now is, I'm going to give the same

25  sentence that I gave last time.  And like I said, this is

1    the first time I've ever done this.  Typically, I just say

2    it's not even worth it, just give him a guideline sentence

3    or give what the defendant wants and be done with it.

4        The question is, do I need to go through -- and I'll

5    leave this to the lawyers.  Do I need to just say that the

6    same sentence that I -- that I handed down on May 27,

7    2021, is reimposed or do I need to go through each

8    portion?  And I can do it either way.

9        MS. MAZZANTI:  Your Honor, I think it would

10   probably be most prudent to confirm with the defendant

11   whether or not he wanted to allocute before the Court

12   officially imposed sentence, and then I would request that

13   the full sentence be reimposed after the Court considers

14   whatever he may or may not choose to say.

15       THE COURT:  Mr. Short, do you want to make any

16   other argument before I pronounce sentence?  You can.  Do

17   you want to make any more of a record or anything?

18       MR. SHORT:  No, Your Honor.  I appreciate the

19   Court recognizing and ruling on the objections.

20       THE COURT:  Yes, sir.

21       Mr. Ross, I know you're probably disappointed.

22   You've been through a lot.  I've read the file and I see

23   everything you've dealt with.  I've even read the emails

24   from you back and forth to your girlfriend, so I

25   understand, you know, that you're anxious to move on with

1   your life and get out.  Do you want to make a statement

2   before I pronounce your sentence?

3          THE DEFENDANT:  Yes, sir.  You know, my life

4   back then was different, you know, but I don't deserve 36

5   months.  I wasn't having no trap house.  That's not true.

6       While I've been in prison, I've been doing

7   programming.  I've entered GED school.  I got a much FSA

8   credits, you know.  And I think 30 months would be top of

9   the guidelines, and I think that would be fair, you know,

10  because there are a lot of things that the lady over here

11  said that is far from the truth, you know.

12      Mr. Chandler, he's never been to my house.  I met him

13  twice in my life until I was in county jail with him.  You

14  know, him and Katie, they were riding back and forth every

15  day.  Katie is my daughter.  I love her with all my heart,

16  you know, but I haven't spoke of none of them, my ex-wife

17  or nothing.  I've been trying to focus on keeping my life

18  together, you know.

19      I hope you make a judgment within the guidelines.  I

20  really appreciate that because I'm really trying to go on

21  with my life.  Thank you.

22         THE COURT:  All right.  I've already, as I said

23  earlier -- like I said, I went back and spent a lot of

24  time with this record before we came in today because I

25  wanted to see what happened.  In fact, when the opinion

1    came down, I immediately pulled the transcript of the

2    trial to see exactly what happened because I forget these

3    cases.  I move on to the next one as soon as I put it

4    down.

5         Here's what I'm going to do.  As I said earlier, I'm

6    going to vary upward for the reasons that I've already

7    stated.  This is based on the history and characteristics

8    of the defendant, to promote the respect for the law, to

9    provide a just punishment, to afford adequate deterrence

10   from criminal conduct, and to provide the defendant with

11   drug and alcohol treatment and mental health treatment

12   while he is in incarcerated.

13        I'm going to order him to 36 months in the Bureau of

14   Prisons.  I'm going to order him to one year supervised

15   release.  And as conditions of his supervised release, I'm

16   going to order him to participate in substance abuse

17   treatment program which may include drug and alcohol

18   testing and outpatient counseling.  I'm going to order him

19   to abstain from the use of alcohol during the course of

20   treatment.  I'm going to order him to pay the $10 copay

21   per session but that's based on his ability to pay.  If he

22   cannot afford it, it will be waived.

23        I'm going to order him to receive a mental health

24   assessment and, if he's ordered to go to mental health

25   treatment or counseling, he'll have to pay $10 per session

1  for a maximum of $40 per months.  And that's also based on

2  Mr. Ross' ability to pay.  If he cannot afford it, it will

3  be waived.

4      I'm going to order him to cooperate in the collection

5  of DNA.  I'm not going to order him to pay a fine, but I

6  am going to order him to pay $100 special assessment.

7      As you know, Mr. Ross, you have 14 days from the day

8  that I enter the judgment to appeal.  If you cannot afford

9  the cost of appeal, you can ask for leave to appeal in

10  forma pauperis.  If it's determined that you cannot afford

11  it, you'll be allowed to file your appeal and pay your

12  filing fee in installments or the filing fee will be

13  waived.  If you cannot afford a lawyer on appeal, one will

14  be appointed to represent you.  But the main thing is,

15  like we discussed last time, is to file your appeal within

16  14 days.

17      Mr. Short, is there anything else we need to take up?

18          MR. SHORT:  No, Your Honor.

19          THE COURT:  Anything else for the government?

20          MS. MAZZANTI:  No, Your Honor.

21          THE COURT:  Let's get ready for our next

22  hearing.

23      (Proceedings adjourned at 9:00 a.m.)

24                  *  *  *  *  *

25              REPORTER'S CERTIFICATE

1        I, Valarie D. Flora, FCRR, TX-CSR, AR-CCR, certify

2   that the foregoing is a correct transcript of proceedings

3   in the above-entitled matter.

4        Dated this the 2nd day of August, 2022.

5   /s/ Valarie D. Flora, CCR

6   -------------------------

7   United States Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25