IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA

        Plaintiff

  Vs.                  No. 17-CR-293-BSM
                         October 26, 2022
                         Little Rock, Arkansas
VALERIE BAKER             11:23 a.m.

          Defendant


TRANSCRIPT OF SENTENCING HEARING

BEFORE THE HONORABLE BRIAN S. MILLER

UNITED STATES DISTRICT JUDGE


APPEARANCES:

On Behalf of the Plaintiff:

     LIZA BROWN
     U.S. Attorney's Office
     Eastern District of Arkansas
     P.O. Box 1229
     Little Rock, Arkansas 72203

On Behalf of the Defendant:

     LEA ELLEN FOWLER
     Law Office of Lea Ellen Fowler
     425 West Broadway, Suite A
     North Little Rock, Arkansas 72114



    Proceedings reported by machine stenography and
displayed in realtime; transcript prepared utilizing
computer-aided transcription.

1    (Proceedings commenced in open court at 11:23 a.m.)

2        THE COURT:   This is the case of United States of

3  America versus Valerie Baker.   The case number is

4  17-CR-293.   Ms. Baker is here in the courtroom her lawyer,

5  Lea Ellen Fowler.   The United States is being represented

6  by Liza Brown.

7        If you would, Ms. Fowler and Ms. Brown, come to the

8  bench and bring Ms. Baker with you.

9    (Sealed proceedings under separate cover.)

10    (Proceedings continued in open court as follows:)

11        THE COURT:   The notes I have in front of me

12  indicate that on January 8 of 2020, Ms. Baker entered a

13  plea of guilty to Count 1 of the superseding information

14  that charged you with conspiracy to possess with intent to

15  distribute and distribution of methamphetamine.

16        You've been represented by Ms. Fowler.   Are you

17  satisfied with the legal representation she's given you?

18        THE DEFENDANT:   Yes, sir.

19        THE COURT:   And when you entered your plea, I

20  probably told you that probation was going to come out and

21  perform a presentence investigation and that probation

22  would prepare a report.

23        Hold on just one second.   I have your report, but I

24  can't find it.

25        I have your report, which is dated March 3 of 2020.

1  It was revised on March 31, 2020, and then it was revised
2  again on July 18 of 2022.
3       Have you had a chance to go over that report with Ms.
4  Fowler?
5            THE DEFENDANT:  Yes, I have.
6            THE COURT:   Ms. Fowler, do you have any
7  outstanding objections to the report?
8            MS. FOWLER:  No, Your Honor.
9            THE COURT:   Does government have any objections?
10           MS. BROWN:  No, Your Honor.
11           THE COURT:   I'm going adopt the report as
12  revised on July 18 of 2020.
13       Now, Ms. Baker, I probably explained to you when you
14  entered your plea of guilty that in the federal system we
15  have our law that tells me what the minimum and maximum
16  sentences are that I can give you.  I have to give you a
17  sentence within the range provided by the law.
18       In addition to the law, we have sentencing guidelines
19  that help me determine what an appropriate sentence is for
20  you.  I am not required to give you a sentence within the
21  range provided by the guidelines as long as I give you a
22  sentence within the range provided by the law.
23       Do you understand that?
24           THE DEFENDANT:  Yes.
25           THE COURT:   With regard to the law, for

conspiracy to possess with intent to distribute
methamphetamine, the range of punishment is from ten years
to life of imprisonment, a fine of up to $10 million, five
years to life of supervised release, a $100 special
assessment, and probation is not authorized.

    Do you understand that?

        THE DEFENDANT:  Yes, sir.

        THE COURT:  With regard to the guidelines, the
base offense level is 36.  You receive a two-point
reduction for acceptance of responsibility which brings
you to a 34.

    Does the government move for third point?

        MS. BROWN:  Yes, Your Honor.

        THE COURT:  That brings to you a total offense
level of 33.

    You have seven criminal history points which results
in a criminal history category of IV.  Someone who has a
total offense level of 34 with a -- 33 with a criminal
history category of IV has a sentencing range of 188
months to 235 months of imprisonment, a fine range of
35,000 to $5,000 -- $35,500 to $10 million.  The guideline
range for supervised release is five years to life.
Probation is not authorized under the guidelines, and
there is a special assessment of $100 that's mandatory.

    Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Ms. Fowler, we've already heard the

3    discussion we've taken up here regarding departure.  Do

4    you have any other variance argument?

5          MS. FOWLER:  Your Honor, understanding that the

6    statutory minimum is ten years, I think the Court's gotten

7    the information that I sent regarding Ms. Baker.

8          Just for the record, I would point out a few things

9    that -- she has been very active in bettering herself over

10   the last five years while she's been out on pretrial

11   release.  The Court knows that she went to drug rehab.

12         Since that time, she's been actively working.  She

13   did extra chem-free living and, in fact, still lives at

14   the Better Community Development Center with the --

15   associated with the Hoover program.  She is now a house

16   manager and provides peer support and counseling to the

17   ladies who are currently going through inpatient

18   treatment.  She's become a certified peer recovery support

19   specialist.  She has several certificates, and I think we

20   provided those to the Court.  She's teaches literacy.

21         As the Court knows, before she got in trouble she was

22   a school teacher.  And since she's been out on pretrial

23   release, she's actively taught literacy as well as others

24   to both inmates in the ACC program, inmates in the Pulaski

25   county jail, and others that have been going through the

1    Hoover recovery program.  She's been actively working with

2    some of the law enforcement-related recovery groups and

3    reentry programs.  She's been active in state and local

4    agencies that aid persons in recovery, individuals such as

5    herself who have been in trouble and need help getting a

6    fresh start.  She's been working adamantly on getting

7    herself in a position to be a productive member of the

8    community again upon her reentry.

9        And we believe that the minimum statutory sentence

10   would be sufficient to cover all of the factors that the

11   Court needs to consider, and we would ask that you

12   consider a downward variance to the statutory minimum.

13        THE COURT:  Ms. Brown, how would you respond?  I

14   know here we went from 188 months or more.  The government

15   has moved to depart.  This is a case where Ms. Baker and

16   -- have you received all the stuff that Ms. Fowler

17   provided?

18        MS. BROWN:  Yes, Your Honor.  The 100-page-plus

19   document as well as all the supporting letters, yes, Your

20   Honor, and I have reviewed those.

21        THE COURT:  If you notice what Ms. Fowler

22   focuses on is where Ms. Baker has come.

23        I would imagine the government's position is that

24   Ms. Baker -- in this conspiracy, we had people who were

25   going and obtaining the drugs and then we had people

1  supplying the drugs.  I think Ms. Baker fits in the
2  category of people who were supplying.  And I think she
3  was dealing in pound quantities of methamphetamine, not
4  grams or ounces.  I think there was even one shipment of
5  like 60 pounds or something.

6      So I would imagine your response would be that the
7  range that we've come to is probably well below what the
8  culpability is, but probably where Ms. Baker needs to be
9  given all the other things we've looked into.

10          MS. BROWN:  So if the Court will look to this
11  for a second.  If the Court grants the variance, she would
12  be down to about 84 months from the 188 to 235.  So taken
13  in all the motions --

14          THE COURT:  So what you're saying is, I would
15  vary down to 120 and then depart 30 from that.

16          MS. BROWN:  I think that's what Ms. Fowler is
17  asking for, is doing the variance first and then the
18  departure on top of those.  Is that correct?

19          THE COURT:  That's fine.  Make your argument.

20          MS. BROWN:  I just think that's too low, Your
21  Honor.  I mean, in looking at what -- it's very impressive
22  what Ms. Baker has done from the time she got arrested
23  until now.  It's impressive.

24      What concerns me is what her past was, and not just
25  necessarily her criminal history, what was all in the

1    packet of what she's gone through.  Those are different

2    circumstances, so I'm not going to say -- she had a

3    different upbringing.  She had a different set of

4    circumstances than a lot of other people after reading

5    that they had.

6        I know that sounds -- there's too many people in this

7    courtroom and I don't want to go into detail, but I'm sure

8    the Court has read the traumatic experiences that she had

9    growing up and up until after she became a teacher.

10       So that being said, I think that a sentence of 84

11   months is not appropriate in this case for the fact of,

12   she was dealing in large pound quantities of

13   methamphetamine, that she was distributing to a lot of

14   different people during the time of this conspiracy.

15       So she has a criminal history score of seven.  So in

16   looking at that, you previously sent people such as

17   Brittany Connor to 120 months in the ADC, and she didn't

18   have any criminal history.  Wesley Pierson, who she

19   distributed to, received 120 months in the Bureau of

20   Prisons.  Sorry.  Didn't mean to say ADC.  Bureau of

21   Prisons.

22       So you have several individuals who are at the

23   120-month mark, but those people -- they didn't have the

24   criminal history that she has.  So I think her criminal

25   history has to play into part here.

1    So I still -- the government still believes that the

2  departure down from 188 is appropriate in this case.

3          THE COURT:  Okay.  Any response, Ms. Fowler?

4  You can.

5          MS. FOWLER:  Judge, just very briefly.  The

6  Court's read the packet that we submitted.  I would say

7  that those traumatic events directly led to that criminal

8  history.  And so it's all sort of wrapped into one ongoing

9  issue that came from that domestic situation and the

10  subsequent brain injury and the medications that the

11  doctors gave her for that that got us where we are today.

12    So, again, the Court's aware and you know what we're

13  asking for and we trust you to factor all of that in.

14          THE COURT:  Ms. Brown, one last thing.  Because

15  what I've done -- and this is more for the people sitting

16  here.  What I've done a lot in this case is, we have 44

17  defendants and I've been sentencing them and we're down to

18  the last few.

19    Where does Ms. Baker fit in?  And I think you tried

20  to explain that in your last statement, but with people

21  who were equally culpable, how does -- what were the

22  sentences I gave those people?  Or is there anybody

23  similarly situated?

24          MS. BROWN:  Well, you had Daniel Adame who

25  received 262 months in the Bureau of Prisons, but he was a

1  career offender, so that's a difference.

2       You have Wesley Gullett.  That's a whole different --

3  but I don't think you can compare the two at all.  There's

4  nothing comparable, but he received 420 months.

5       TJ Ferguson, who she was distributing to, received

6  180 month, but he had the kidnapping and those types of

7  things.  So it's very hard.

8       David Singleton I think is the closest one.

9            THE COURT:  What did I give Singleton?

10           MS. BROWN:  You gave him 131 months, but

11  Singleton had a lot more criminal history than she did.

12  And so that would be -- to me, the closest one would be

13  Singleton, but he received 131 months but he also got up

14  on the stand.  That's public knowledge.  And that would be

15  the one that was more the equivalent because we haven't

16  sentenced Tommy Plaisance.  And so since we haven't

17  sentenced some of the people, that would be more along her

18  lines.

19       I believe you just sentenced Melissa Kizer the other

20  day and her sister Tiffany Parker.  And Tiffany Parker

21  received 96 months, and she was not distributing.  She was

22  distributing, but not in these large quantities.

23           THE COURT:  Okay.

24           MS. BROWN:  I hope that helps the Court.

25           THE COURT:  It does.

1      Ms. Baker, do you want to give a statement before I
2  pronounce your sentence?
3           THE DEFENDANT:  I do.  I do.  Can I speak with
4  my attorney for just a moment?
5           THE COURT:  You can, of course.
6           MS. FOWLER:  Do you mind if she remains seated?
7           THE COURT:  That's fine.  Pull the mic close to
8  you.
9           THE DEFENDANT:  Your Honor, first of all, I do
10 want to point out something.  The people that we were just
11 discussing, the sentences that you've already made,
12 although I'm on this indictment with this particular group
13 of people, I am not this group of people.  I'm not
14 affiliated and they are.  So we're comparing levels -- it
15 is very difficult to compare me to them because I was not
16 involved in any of the other things that that particular
17 group did nor with them.  I am not an affiliate.
18      So I feel really strongly about making that known to
19 you and to everyone sitting in this courtroom.  That is,
20 unfortunately, a label that I will carry with me the
21 remainder of my life.  And that's probably one of the
22 hardest things about this whole indictment.  That's a very
23 ugly label.  I'm embarrassed of that.  I want everyone to
24 know that that was not -- that part wasn't me.
25      So I've prepared something to say to you today.  I've

1  asked myself for five years, what will you say in front of

2  the judge that literally holds your life in his hands.

3  What will you say?

4      And I really don't know that even sitting here now I

5  have the words to express how I feel, express what I've

6  gone through, and to really express the remorse that I

7  feel.  There are not words to describe this.

8      I was graciously given a five-year opportunity on

9  pretrial to reflect on my past and to take ownership of my

10  wrongs and begin picking up the pieces of a life that for

11  several years I did not know how to do and often didn't

12  even have the will to live.  I took this opportunity very

13  serious, as you can hear the things that I have

14  accomplished.  And I have not stopped until this very

15  moment.

16      I've worked.  I'm still working.  My computer is

17  still on at home.  I still have work to do.  I have people

18  depending on me today.  I haven't stopped.

19      At some point in my recovery -- I actually remember

20  the day I was driving to Shorter College.  I worked there

21  in a federal initiative program.  And I remember driving

22  and I had like this ah-ha moment of -- I didn't have my

23  seatbelt on.  And that's kind of been a normal thing for

24  me.  I don't like seatbelts.  But this particular day, I

25  thought, maybe I'll put my seatbelt on because I think I

1   want to live.  And it was an ah-ha moment.

2        For once in my life, I had the desire and the will to

3   fight for my life.  And I'm continuing to fight for my

4   life.

5        I've worked very hard to create a life worth living.

6   And, you know, for many years I battled one of the most

7   difficult things that a human being can battle, and that's

8   the disease of addiction.  My disease presented itself in

9   many different forms throughout my life.  My disease was

10  relentless, so relentless that I caused a lot of harm,

11  pain, and disappointment to myself and to others that care

12  about me and to my community.

13       But just as my disease was relentless so has been my

14  will, my determination, and my commitment to arresting it.

15  As of this month, October 4, 2017, I've done that for five

16  years.  For that, I'm very proud of myself.

17       I've worked for my recovery with due diligence.  I

18  sought out and participated in many different

19  evidence-based recovery programs and therapies, put my

20  heart and my soul into anything that would move me toward

21  a meaningful life with purpose and dignity.

22       I have been relentless against my disease and the

23  mental, emotional, and behavioral health issues that occur

24  alongside the disease of addiction.

25       So much healing has taken place in the last few years

1   for my family, which is something I was not sure could

2   happen, but it has.  My family and my friends, my recovery

3   community have stood by, encouraged, and supported me

4   along the journey.  I've been able to create healthy

5   relationships and gain life skills and tools that keeps my

6   disease arrested.  I do not take any of this for granted,

7   nor do I forget where I was five years ago and where my

8   life is today.

9        I'm not selfish with what I've learned or gained

10  either.  I've dedicated my life to helping others fighting

11  this disease and its consequences.  Today, I'm an example

12  of authentic change and that it can and does happen.  My

13  family, friends, coworkers, and peers look up to me and

14  are inspired by the changes that I've made.  People depend

15  on me today.  People respect my life and my life has

16  purpose and value.

17       Your Honor, there are two people that are at the very

18  top of my priority list and have been through this time,

19  and that would be my mother and my daughter.  My mother is

20  72 years old, and she's at the age that she needs support

21  now, this stage of her life.  She lost her husband about

22  three years ago.  She's had a back surgery, and as most

23  72-year-olds, some health issues are occurring.  And

24  that's my place to be there for her like all these years

25  she's been there to support me.  I'm her only child, by

1  the way.  So I'm really the only one to do that.

2  My daughter.  My daughter is 27 years old and,

3  unfortunately, due to genetic inheritance and experiencing

4  so up close and personal my addiction, she's also fighting

5  addiction.  I'm really proud of her today.  She recently

6  celebrated 30 days, and for people like us that is a huge

7  fete.  It is huge.

8  I know how difficult the next months and years are

9  going to be for her on this journey to recovery.  It would

10  be so important for me, her mother, to be there to support

11  her and encourage her and help her along the way.  The

12  fear of facing incarceration and not being here for her to

13  support her is almost unbearable.

14  She and I had probably had the most relationship

15  issues because of my past use.  However, there's been

16  tremendous healing.  And now, not only do I want to be

17  there for her, she wants me to be there for her.  I know

18  you read the letter she wrote.  I am now capable of being

19  that mother that she's needed her whole life.

20  Last week, I received a phone call from my daughter

21  and friend.  And her friend is also in recovery.  They

22  called me asking for advice, asking how to handle a

23  situation.  It was rare.  There have been so many times

24  there just wasn't even communication, but now she and a

25  friend are calling me asking me for advice.  And I was

1  able to leave that conversation knowing that I gave sound
2  advice, good, motherly advice.
3      Even this morning, that same friend that called on
4  that phone call, sent me a message and she encouraged me
5  for today.  And her exact words were, thank you.  You are
6  the only reason I stayed at Hoover in 2018.  I was going
7  to die if I didn't stay.
8      I have so much more to do, so much more to give and
9  accomplish.  I have a purpose and a mission.  It scares me
10  not being able to fulfill my God-given purpose.  Myself as
11  well as many others know that I have experienced authentic
12  remorse, repentance, and transformation.
13      I humbly beg for mercy and compassion, Your Honor.
14  Please allow me to continue the life I've created.  I beg
15  you to grant leniency in the sentence you decide today.
16  Please help me to continue to heal and not hurt.
17      I realize there are consequences to my past.  I have
18  experienced many of them already.  Like I said earlier,
19  the label put on me for the rest of my life, that's huge.
20  It will affect employment opportunities, housing
21  situations, and my very financial future, security, which
22  in my past I depleted all of that retirement; not only my
23  retirement, my mother's retirement, my family's
24  retirement.  I have no future security unless I'm able to
25  keep moving forward at this point and be in a position to

1    have a future for myself and my family.

2        So, again, I humbly ask you to take all of these

3    things into consideration and see me today as this person,

4    not the person on the paper, not the charges, not the

5    other people that are on my indictment.  I'm not them.  I

6    made mistakes and I own that and am truly, truly sorry for

7    those things, but I know that I will never live that life

8    again today.

9        Thank you.

10        THE COURT:  All right.  Let me say this to you,

11    Ms. Baker -- and I say this to your family and everybody

12    listening.  Sentencing is not a science.  It's not even an

13    art.  It's kind of a mixture of both.  Here we have, based

14    on the Sentencing Commission's research, the Sentence

15    Commission has determined that for this particular

16    offense, your range of punishment is 188 months to 235

17    months.  We have a departure motion, which I'll grant,

18    which allows me to go below.  And then you have a

19    mandatory minimum of 120 months, ten years by law.  The

20    departure motion, me granting that allows me to go below

21    the 120 months.  Then the question is, what the

22    appropriate sentence is.

23        The government argues that, when you look at your

24    case and compare it to everybody else who was involved in

25    the case, and I -- this is what I'll tell you, Ms. Baker.

1    And I know you have addressed it with the whole Aryan
2    Nation stuff.
3        I told everybody who's come in this court, I don't
4    care what you think.  I don't care.  You can be a white
5    supremacist.  You could be whatever you want to be.  I'm
6    not talking about you.  You're not in court because you're
7    a white supremacist.  You're in court because you
8    committed a crime.  If you had all the beliefs in the
9    world and you went out and you burned crosses and you had
10   a good time doing it and ate barbecue and laughed and
11   drank and had a good time, I don't care.  Go do that.
12       But when you start dealing drugs and you start moving
13   large weights of methamphetamine, then that's a problem.
14   So in your case, here's what we have -- and I get this,
15   just so you understand it.
16       Everybody -- and I say this to your mother, to your
17   daughter.  I have people -- I don't think there's anybody
18   who's ever come into the courtroom and said -- maybe there
19   are some, but I don't remember them -- who said, I have
20   nobody who depends on me, so do with me as you will.
21   Every human being who sits in that chair has a mother, a
22   father, a daughter, a son, a husband or wife or somebody
23   at home or somebody here who's depending on them, wants
24   them home.  And so if I started letting people go home and
25   not putting people in prison because they have people

1    depending on them, nobody would go to prison regardless of

2    what they do.

3        Then the question becomes, what is the appropriate

4    sentence for this particular case.  Here's what it is.

5    Your situation is a little different in that the trauma

6    you had before you got on drugs, then now you're on drugs,

7    but it's not even the being on drugs.  That's not what

8    you're being sentenced for.  I know that's not what you're

9    saying and that's not what Ms. Fowler has said.  I think

10   what you're doing is providing context for why you started

11   this practice.

12       But when it comes down to, you're moving pounds of

13   methamphetamine.  I don't think I've ever had a case where

14   somebody was dealing -- had moved 60 pounds at one time.

15   I don't think I've ever seen that before.  I think I've

16   put people in prison for life for dealing and moving large

17   amounts of drugs, but I never had pounds -- 60 pounds on

18   one occasion.

19       So here's what I think is appropriate.  I think the

20   188 months is reasonable, but we have a motion on the

21   table to -- for 30 percent decrease, which takes us to 132

22   months.  I think Ms. Fowler has moved for a variance down

23   from that.  I think Ms. Brown's interpretation of the

24   motion is right, that what Ms. Fowler would like for me to

25   do is to vary from 188 to 121 and then the government's

departure 30 percent from that, which would take us down
to 90-something months or something like that.  I'm going
to overrule that.

What I will do is, I will grant the departure first
and get us to the 132 and I'll vary 12 months to the
mandatory minimum of 120, over the government's objection.

I understand Ms. Brown's point.  We have other people
involved in this who were buying from the distributors,
and you were the distributor.  So I will vary down some
combination of variance and departure from 188 down to
120, but I'm not going to go down to 90 or 80 something
months.

That's the best I can do.  So I'm going to order you
to the Bureau of Prisons for a term of 120 months.  That's
five and a half years off what the guideline says she
supposed to get.  So I'll take it to 120.  I'm going order
that you -- or recommend that you participant in a
substance abuse treatment program and mental health
program while you're in prison.  I'm going to order you to
five years of supervised release.

And as part of your supervised release, I'm going to
order that you participate in substance abuse treatment
program that may include drug and alcohol testing and
outpatient counseling.  I'm going to order you to abstain
from the use of alcohol during the course of your

1   treatment program.  You'll have to pay a $10 copay, Ms.

2   Baker, but that will be based on your ability to pay.  If

3   you cannot afford it, that will be waived.  That will be

4   waived.

5        I'm also going to order you to receive a mental

6   health assessment.  And if it's determined that you need

7   counseling or some type of treatment to help you, we'll

8   get that for you.  You'll have to pay a $10 copay there,

9   but that's also based on your ability to pay.  If you

10  cannot afford it, go to your counseling sessions anyway

11  and you won't have to pay.

12       I'm not going to order you to pay a fine.  I am going

13  to order you to cooperate in the collection of DNA and you

14  have to pay the $100 special penalty assessment which is

15  mandatory.

16       Now, Ms. Fowler, as far as where Ms. Baker serves her

17  time, do you have any recommendation?

18            MS. FOWLER:  She would like for you to recommend

19  Tallahassee, Florida.

20            THE COURT:  I'll recommend Tallahassee.

21       If you can think of a backup, just let us know in the

22  next couple of days before we prepare the judgment and

23  we'll have a backup in case you can't get Tallahassee.

24       Now, Ms. Baker, typically, you would have been taken

25  into custody a long time ago, but because of COVID, we

1   left a lot of people out and I found special

2   circumstances.

3        And just so all of you know, whenever somebody is

4   found guilty or pleads guilty to a drug offense in federal

5   court that carries with it up to ten years or more of

6   prison, I'm required to take them into custody.  So Ms.

7   Baker was -- should have been taken into custody way back

8   when she entered her plea of guilty, but it was during

9   COVID if I remember correctly, so I found special

10  circumstances and left a lot of people out because of the

11  COVID situation in the jails.

12       So, technically, I'm -- I should take you into

13  custody now, but I won't do it.  I'll leave you out on the

14  same bond that you're on.  Just understand that you still

15  have the same conditions, and if anything goes wrong,

16  we'll pick you up.

17       As far as a time to report, we have -- some of the

18  people lately I've been giving them to right after the

19  holiday so that you can at least get the holiday with your

20  family.

21       What is first the Monday in January?

22       Let's do January 2.  And that's -- what day?  That's

23  Monday.  Ma'am?

24            MS. BROWN:  That might be the actual day of the

25  holiday for the BOP, so if we could go to the 3rd.

1       THE COURT:  We'll do it.  We'll do January 3rd.

2  That gets you through the holiday, spend the holiday with

3  your family.  And you should have your designation by that

4  day, and you'll just self-report straight to prison. Okay?

5       You have 14 days in which to appeal.  If you cannot

6  afford the cost of the appeal, you can ask for leave to

7  appeal in forma pauperis.  If it's determine that you

8  cannot afford it, you'll be allowed to pay your filing fee

9  in installments or your filing fee will be waived.  If you

10  cannot afford a lawyer on appeal, we'll appoint one to

11  represent you.  But the main thing is, if you choose to

12  appeal, you have to file it within 14 days.

13       Do you understand?

14           THE DEFENDANT:  Yes, I understand.

15           THE COURT:  Is there anything else we need to

16  take up on this case?

17           MS. BROWN:  No, Your Honor.

18           MS. FOWLER:  No, Your Honor.

19           THE COURT:  Let's stand down and get ready for

20  our next one.

21       (Proceedings adjourned at 11:59 a.m.)

22                REPORTER'S CERTIFICATE
        I, Valarie D. Flora, FCRR, TX-CSR, AR-CCR, certify
23  that the foregoing is a correct transcript of proceedings
    in the above-entitled matter.
24      Dated this the 4th day of December, 2022.
    /s/ Valarie D. Flora, FCRR
25  -------------------------
    United States Court Reporter